S. Miles Dumville (VSB No. 15748)
REED SMITH LLP
Riverfront Plaza—West Tower
901 E. Byrd Street, Suite 1700
Richmond, VA 23219-4068
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | |
|---|---|
| In re:<br><br>HEALTH DIAGNOSTIC LABORATORY INC.<br> *et al.*<br><br><br>RICHARD ARROWSMITH, LIQUIDATING TRUSTEE OF THE HDL LIQUIDATING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>G. RUSSELL WANRICK, *et al.*<br><br>Defendants. | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered)<br><br><br>Adv. Proc. No. 16-03271-KRH |

**MEMORANDUM OF DEFENDANTS LEAH BOUTON
ET AL. IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO RULES 8, 9, 10, 20 AND 41, F. R. CIV. P.**

Defendant Leah Bouton and the additional Defendants listed on **Exhibit A** hereto (the "Bouton Defendants"), by counsel, submit this Memorandum in support of their Motion to Dismiss Pursuant to Rules 8, 9, 10, 20 and 41, F. R. Civ. P, made applicable to this proceeding by Rules 7008, 7009, 7010, 7020 and 7041, F. R. B. P.[1]

---

[1] References herein to the "Rules" or a "Rule" shall be to the Federal Rules of Civil Procedure.

- 1 -

## INTRODUCTION

Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust (the "Trustee"), has filed a 209-page, 76-count Complaint against over 100 defendants that violates virtually every Federal Rule of Civil Procedure governing pleadings filed in the federal courts, and is contrary to numerous decisions of the District Courts of the Eastern District of Virginia, and other federal courts, construing and applying those Rules.

First, contrary to Rule 8(a)(2), the Trustee's Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rather, the Trustee attempts to assert a myriad of claims against different groups of defendants *en masse* without properly segregating the claims, and in many instances without providing meaningful factual support for the claims. The confusion created by this approach to pleading is exacerbated by the Trustee's assertion of claims in counts that incorporate all of the allegations of the preceding counts in the Complaint, even though in most instances those prior allegations have nothing to do with the claims asserted in the counts that incorporate those preceding allegations. For example, in Counts 67-70 and 72-73, the Trustee incorporates all of the preceding 1,000+ paragraphs of the Complaint to support conclusory allegations of fraud, intentional interference with contracts, and conspiracy against the Bouton Defendants, even though almost all of the preceding allegations have nothing whatsoever to do with the Bouton Defendants. As a result, the Bouton Defendants cannot file a proper responsive pleading to the Trustee's allegations.

Second, the Trustee's allegations of fraud against the Bouton Defendants do not meet the particularity requirements of Rule 9(b). Indeed, the Trustee goes so far as to attempt to assert fraud claims against the Bouton Defendants that were allegedly assigned to the Trustee by thirty (30) creditors of the Debtors (denominated the "Assigning Creditors") without even identifying those creditors, much less stating the factual underpinnings of their separate and distinct fraud

claims. Instead, the Assigning Creditors are merely identified as creditors that paid monies to Health Diagnostic Laboratories, Inc. ("HDL"), or extended credit to HDL for goods and services. No specifics are alleged regarding when, where, how or in what manner these payments were made or the credit extended. *See* Complaint, ¶ 422, and Counts 67 and 68.

Third, by repeatedly combining separate claims based on separate transactions or occurrences in a single count, the Complaint violates Rule 10(b), which requires that each claim founded on a separate transaction or occurrence must be stated in a separate count.

Fourth, contrary to the requirements of Rule 20(a)(2), the Complaint joins claims against the Bouton Defendants with claims against numerous other defendants that do not arise out of the same transaction, occurrence, or series of transactions or occurrences, and which do not involve questions of law or fact common to all the defendants.

As a result, the Trustee has filed a "shotgun pleading" that improperly attempts to combine in a single pleading multiple different lawsuits against multiple different defendants. The courts of the Eastern District of Virginia have repeatedly rejected attempts like this to create one massive piece of litigation that cannot be tried in a single trial, that prejudices the rights of the defendants, that causes unnecessary delay and expense to all parties, and that wreaks havoc with the efficient and orderly administration of justice. In such instances, the District Courts have dismissed the complaint, and required the plaintiff to refile his claims as separate lawsuits that comply with the applicable Rules for properly pleading a case. The Court should do the same with the Trustee's fatally flawed Complaint.

### **ALLEGATIONS OF THE TRUSTEE'S FLAWED COMPLAINT**

The Trustee begins his *magnum opus* with a discussion of the meteoric rise of HDL, its business model, and its eventual financial collapse, and then recites a litany of "inappropriate and

self-dealing transactions" engaged in by HDL's management that resulted in the company's demise. Complaint, ¶¶ 1-36. After acknowledging that he is bringing "dozens of causes of actions against a wide range of defendants" (Complaint, p. 11, heading "G" (capitalization omitted)), the Trustee identifies each of the over 100 defendants against whom he is asserting his "dozens of cause of action." Complaint, ¶¶ 46-152. These defendants include former officers, directors and stockholders of HDL, and entities owned or controlled by them (Complaint, ¶¶ 46-63; 68-78); an unaffiliated corporation known as BlueWave Healthcare Consultants, Inc. ("BlueWave"), its officers, directors and stockholders (Complaint, ¶¶ 64-67); an additional seventeen corporations and limited liability companies allegedly owned or controlled by BlueWave's officers, directors and stockholders (Complaint, ¶¶ 79-80;113-128); thirty-two additional independent unaffiliated corporations and limited liability companies (the "BlueWave Transferee Defendants") that allegedly "marketed and sold HDL tests" (Complaint, ¶¶ 81-112)[2]; and a group of twenty-four individuals (the "BlueWave Sales Representative Defendants") who are alleged to have been independent contractors that were "major seller[s] of HDL tests to HCPs [health care providers] and doctors" (Complaint, ¶¶ 129-152). The Bouton Defendants are identified as members of this latter group, but are otherwise not mentioned by name anywhere else in the 209 page Complaint.[3]

The Trustee then proceeds to describe at least twenty-two (22) separate and distinct transactions, occurrences, or series of transactions or occurrences, on which his claims are based.

---

[2] Six of the thirty-two BlueWave Transferee Defendants are also separately grouped together in the Complaint and identified as the "Major Sales Contractor Defendants." Complaint, ¶ 155.

[3] The one exception is found in ¶¶ 193-194 of the Complaint, where the Trustee names Bouton Defendant Charles Maimone as having passed on to an HDL employee an email from a doctor asking that his processing and handling ("P&H") payments be sent to his home address rather than his office.

These separate and distinct transactions, occurrences or series of transactions or occurrences, are summarized on the attached **Exhibit B**.

Finally, beginning on page 92 of the Complaint, the Trustee sets out 76 separate counts alleging his "dozens of causes of actions against a wide range of defendants." Complaint, ¶¶ 428-1076. Of the 76 Counts, only six specifically assert a right to relief against the Bouton Defendants.[4] *See* Complaint, Counts 67-70, 72-73.

The following discussion shows why the Court should exercise its powers under Rule 41(b) to dismiss the Trustee's shotgun complaint due to its multiple failures to comply with the applicable Rules.

## ARGUMENT

### I. The Trustee's Complaint Is A Shotgun Pleading.

In *Turton v. Va. Dept. of Educ.*, No. 3:14cv446, 2014 WL 12539403 (E.D. Va. Sep. 23, 2014), the plaintiffs filed a 79-page, 27-count amended complaint against 40 defendants alleging claims for violations of the U. S. Constitution; violations of various federal and state statutes and regulations; negligence; gross negligence; breach of contract; assault; malicious prosecution; fraud; and conspiracy. The defendants were the Virginia Department of Education, four Virginia public school divisions and certain of their employees, and two attorneys who had represented two of the school divisions. The claims of the individual plaintiffs for abuses allegedly suffered at the hands of the separate groups of defendants at different times over a period of several years were set forth in separate counts, each of which incorporated all of the allegations of the preceding counts.

---

[4] In addition, the Trustee asserts in conclusory language claims for *assumpsit* and unjust enrichment against "All Defendants." Complaint, Counts 65-66. As discussed below, these Counts violate the requirements of Rules 10(b) and 20(b)(2).

The defendants moved to dismiss the amended complaint for failure to comply with the requirements of Rules 8(a)(2), 10(b) and 20(a)(2). In granting the defendants' motions, Judge Payne found that the amended complaint violated Rule 8(a)(2) because it was "the antithesis of 'a short and plain statement of the claim showing that the pleader is entitled to relief'" and that it also violated Rules 10(b) and 20(a)(2). He concluded:

> In sum, this Amended Complaint is the quintessential "shotgun pleading" that presents many different transactions, occurrences, and series of transactions or occurrences and that is presented in such a conclusory form that it is virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded, and even whether, or why, the Court has subject matter jurisdiction. All of these, of course, are required of any complaint filed in the federal court.

2014 WL 12539403, at *1-2 (citation omitted); *see also, Negron-Bennett v. McCandless,* No. 1:13cv387, 2013 WL 3873659, at *4 (E.D. Va. July 24, 2013), aff'd, 572 F. App'x 246 (4th Cir. 2014) (finding that a complaint incorporating in each count all of the complaint's preceding allegations, comprising at least 170 numbered paragraphs, was "a classic example of a 'shotgun pleading'" because it was "replete with factual allegations that could not possibly be material to each specific count, and that any allegations that are material are buried beneath numerous pages of rambling irrelevancies."); *Loney v. United States,* No. 3:11CV845, 2014 WL 6705443, at *1 (E.D. Va. Nov. 26, 2014) ("[A] suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions" is an improper "buckshot complaint." (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007))) .

The Trustee's Complaint aptly fits the definition of a "shotgun pleading" as described in *Turton, Negron-Bennett* and *Loney.* As shown on **Exhibit B**, the Complaint describes at least twenty-two separate and distinct transactions, occurrences or series of transactions or

occurrences, taking place at different times and in different locations over a period of six to seven years, including a litany of alleged breaches of fiduciary duties, negligence, gross negligence and waste of corporate assets committed by officers, directors and stockholders of HDL and Blue Wave; a variety of alleged fraudulent transfers involving a multitude of different transactions; and multiple alleged acts of common law fraud, interference with contract and civil conspiracy. These events involved many different parties, occurred at many different times and places, and in many distinct unrelated contexts. Some of the claims are those of the bankruptcy estate, while others are the purported claims of over thirty named and unnamed creditors of HDL that the Trustee claims were assigned to him.

While hardly any of the events described in the Complaint involve the Bouton Defendants, all of the alleged facts and conclusions of the Complaint are incorporated in the six counts asserted specifically against the Bouton Defendants, even though those allegations "could not possibly be material to each specific count" against the Bouton Defendants. *See Negron-Bennett,* at *4.

In sum, the Trustee's Complaint "raises a variety of claims against many defendants. The claims arise from separate events which involve interactions with Plaintiff. As such, this complaint comprises multiple law suits, rather than one suit." *Jackson v. Olsen,* No. 3:09cv43, 2010 WL 724023, at *7 (E.D. Va. Mar. 1, 2010) (internal brackets, quotation marks, and citation omitted); *see also Roberts v. Balasco (In re Ernie Haire Ford, Inc.),* 459 B.R. 824, 834 (Bankr. M.D. Fla. 2011).

As described in the following discussion, in attempting to combine multiple law suits in a single complaint, the Trustee has violated the fundamental requirements of the Federal Rules of Civil Procedure for filing a valid complaint.

- 7 -

## II. The Trustee's Complaint Does Not Comply With Rule 8(a)(2).

The foregoing analysis amply demonstrates that the six counts alleged against the Bouton Defendants do not constitute "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2). Instead, the Trustee's prolix and confusing allegations impose upon the Bouton Defendants and the Court "the task of fishing through the Complaint to reconcile its extensive factual allegations with the various causes of action," an endeavor that is considerably aggravated by the Trustee's incorporation of all of his prior allegations in each successive count of the Complaint. *Negron-Bennett,* at *5. For example, the Trustee's allegations about defendant Tipton Golias making investments in HDL that were disguised as loans (Complaint, ¶¶ 246-262) have no relevance to his conclusory allegations of fraud against the Bouton Defendants, yet the Golias investment/loan allegations are incorporated in the two fraud counts, along with all the other allegations of the preceding 1,000+ paragraphs of the Complaint. Trying to unravel and make sense of this linguistic morass is not a task that the Trustee is entitled to impose on the Bouton Defendants or the Court. *Id.*

## III. The Trustee's Complaint Does Not Comply With Rule 9(b).

It is axiomatic that "under the fraud provisions of Federal Rules of Civil Procedure, plaintiffs must make particular allegations of the time, place, and contents of the allegedly false statements, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Weill v. Dominion Resources, Inc.*, 875 F. Supp. 331, 338 (E.D. Va. 1994). In other words, the plaintiff must plead the who, what, when and how involved in the alleged fraud. *Id.*; *see also*, *Sweeny Co. v. Engineers-Constructors, Inc.*, 109 F.R.D. 358, 360 (E.D. Va. 1986) (the purposes of Rule 9(b) are not met unless the plaintiff alleges the "time, place, and content of the false misrepresentation, the fact misrepresented and what was gained or given up as a

consequence of the fraud," quoting 2A J. Moore, *Moore's Federal Practice,* ¶ 9.03 at 9–23–9–24 (1985)).

Seeking to prosecute claims allegedly assigned to him by Aetna, Inc., ("Aetna"), Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, "*Cigna*"), and the thirty unnamed Assigning Creditors, the Trustee alleges actual and constructive fraud against the Bouton Defendants and a number of other defendants in Counts 67 and 68 of his Complaint.[5] The Trustee alleges in conclusory fashion that unidentified members of the groups of defendants included in the two counts misrepresented that "the claims HDL presented to Aetna and Cigna were for medically necessary tests, that the amounts charged for the tests included a co-pay, co-insurance, or deductible amount that HDL intended to collect from patients, that HDL's business was conducted in accordance with the AKS [anti-kickback statute] and other healthcare law, and that the representations regarding HDL's financial condition were accurate." Complaint, ¶¶ 1018, 1023. The Trustee further alleges, again in wholly conclusory language, that the alleged misrepresentations induced the thirty unidentified Assigning Creditors to make payments to HDL, and in turn BlueWave, and to extend unsecured credit to HDL for goods and services the Assigning Creditors provided. Complaint, ¶¶ 1019, 1025. The time, place, amount and nature of those payments or extensions of credit are not specified.

These allegations do not come close to meeting the requirements of Rule 9(b). The Trustee fails to identify any particular individual who made and received specific misrepresentations, the content of each misrepresentation made and received by each specific

---

[5] The Trustee's attempt to assert claims against the Bouton Defendants that previously belonged to Aetna is inconsistent with his allegation elsewhere in the Complaint that Aetna only assigned its claims against "(i) former and current directors and officers of the Debtors (including Mallory) and (ii) BlueWave, Dent, and Johnson." Complaint, ¶ 423.

individual, and the time and place each specific misrepresentation was made. In fact, the Trustee goes so far as to allege in the two counts that misrepresentations were also made by so-called John Doe defendants, even though he cannot identify these individuals, much less state the time, place, content and recipient of the misrepresentations. Likewise, the Trustee fails to provide any specificity concerning what HDL gained and what the Assigning Creditors gave up as a result of the fraud. Insofar as the Bouton Defendants are concerned, there is no allegation that they received anything as a result of the alleged fraud.

These insufficient allegations are then incorporated in the remaining claims asserted by the Trustee against the Bouton Defendants in Counts 69, 70, 72 and 73, thereby infecting those counts with the Trustee's pleading deficiencies. As a result of this gross failure to comply with Rule 9(b), the Trustee's claims against the Bouton Defendants should be dismissed pursuant to Rule 41(b).

**IV.  The Trustee's Complaint Does Not Comply With Rule 10(b).**

Rule 10(b) states in relevant part: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense." The allegations made by the Trustee against the Bouton Defendants do not comply with this requirement.

Count 65 attempts to allege in conclusory language an *assumpsit* claim against "All Defendants." The Count states in pertinent part:

> The Defendants have been unjustly enriched at the expense of the Debtors and their creditors, including the Assigning Creditors, by receipt and subsequent transfers of the Shareholder Distributions, the BlueWave Payments, the D&O Compensation, the Rangarajan Buyout Payments, the Mallory Payment, and the Golias Double Payment.

Complaint, ¶ 1005.

Similarly, Count 66 attempts to assert a common law unjust enrichment claim against "All Defendants" by alleging:

> The Debtors and/or the Assigning Creditors conferred a benefit on the Defendants through, as applicable, the Shareholder Distributions, the BlueWave Payments, the D&O Compensation, the Rangarajan Buyout Payments, the Mallory Payment, and the Golias Double Payment and their subsequent transfers.

Complaint, ¶ 1009.

Setting aside the vague and conclusory nature of these allegations, the "Payments" referred to do not represent a single transaction or occurrence. Rather, these payments involved *inter alia* different individuals, different time frames, different locations, different factual settings, and different alleged motives of the individuals involved. *See* Complaint, ¶¶ 207-215 (Blue Wave Payments); 246-262 (Golias Double Payment); 364-370 (Shareholder Distributions); 371-384 (D&O Compensation); 385-387 (Rangarajan Buyout Payments); 388-390 (Mallory Payment). The Trustee's attempt to assert in a single count claims based on these multiple separate, distinct transactions and occurrences is contrary to Rule 10(b). Accordingly, Counts 65 and 66 should be dismissed.

The remaining counts specifically applicable to the Bouton Defendants – Counts 67, 68, 69, 70, 72 and 73 – suffer from the same deficiency.

In addition to failing to allege fraud with specificity, Counts 67 and 68 accumulate in each count multiple separate instances of various unidentified persons making unspecified fraudulent statements to various other unidentified individuals over a period of years, resulting in multiple separate, independent victims of the alleged fraud (the Assigning Creditors) making payments to HDL, or extending credit to HDL for goods and services. These separate instances of alleged fraud do not represent a single transaction or occurrence, and it is legally impossible for the Bouton defendants (each of whom is alleged to be an "independent contractor") to be

- 11 -

jointly and severally liable for the multiple separate acts of alleged fraud. The Trustee's failure to isolate these separate instances of fraud in separate counts violates the requirements of Rule 10(b).

Counts 69 and 70 allege the existence of multiple different contracts and contract expectancies between HDL and Aetna, Cigna and the unidentified thirty Assigning Creditors. Some of these contracts are for the payment of money, some are for the provision of goods and services, and some are for extensions of credit. Complaint, ¶¶ 1019, 1025, 1029, 1030, 1037. The two Counts go on to allege that at some unspecified times, in unspecified ways, various unspecified individual defendants intentionally interfered with these separate and distinct contracts and expectancies. Rule 10(b) requires these separate, distinct instances of alleged intentional interference to be pled in separate counts.

Counts 72 and 73 allege in conclusory language that a multitude of defendants, including the unidentified John Doe Defendants, conspired over a six to seven year period to commit the multiple separate instances of fraud and intentional interference alleged in Counts 67, 68, 69 and 70. In addition to failing to meet the specificity requirements for conspiracy claims applicable in this jurisdiction, these counts again conflagrate many separate transactions and occurrences into single counts.

Counts 67, 68, 69, 70, 72 and 73 should therefore be dismissed because of the Trustee's failure to comply with Rule 10(b).[6]

---

[6] As discussed in the following Section V, the Trustee's accumulation of the various unrelated transactions, occurrences, or series of transactions or occurrences described in the foregoing discussion also represents a misjoinder of the Bouton Defendants with the other defendants in this case and thus constitutes a violation of the requirements of Rule 20(a)(2).

**V.     The Trustee's Complaint Does Not Comply With Rule 20(a)(2).**

    **A.     The Trustee's Claims Do Not Arise Out Of The Same Transaction, Occurrence Or Series Of Transactions Or Occurrences, And Do Not Involve Questions Of Law Or Fact Common To All Defendants.**

Rule 20(a)(2) allows a plaintiff to join claims against multiple defendants only if two conditions are met: (1) that there is "any right to relief [] asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) that there is "any question of law or fact common to all defendants … in the action." Joinder of multiple defendants is only permitted if both of these requirements are satisfied. A failure to satisfy either makes joinder improper. *Bear Creek Techs., Inc. v. RCN Commc'ns*, No. 2:11cv103, 2011 WL 3626787, at *1 (E.D. Va. Aug. 17, 2011) ("'[C]ourts have uniformly held that parties are misjoined when they fail to satisfy either of the preconditions for permissive joinder of parties set forth in [Rule] 20a.'" *Id*. (quoting *Hanna v. Graven,* 262 F.Supp.2d 643,647 (E.D.Va. May 13, 2000)).

Thus, Rule 20 "does not authorize a plaintiff to add claims 'against different parties [that] present [ ] entirely different factual and legal issues.'" *Jackson,* 2010 WL 724023, at *7 (quoting *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 218 (E.D. Va. 2008)). "Under these rules, 'a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question.'" *Canada v. Ray*, No. 7:08cv00219, 2009 WL 2448557, at *2 (W.D. Va. Aug. 10, 2009) (quoting *Green v. Denning,* No. 06–3298, 2009 WL 484457 * 2 (D. Kan. Feb.26, 2009)). Simply put, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that these

complaints have produced but also to ensure that [plaintiffs] pay the required filing fees." *Loney v. Wilder*, No. 3:08cv820, 2011 WL 1827440, at *2 (E.D. Va. May 12, 2011).

The mishmash of events/claims recounted in the Trustee's Complaint clearly shows that the Complaint does not relate to a single transaction or occurrence or even a related series of transactions or occurrences. Nor does the Complaint present a question of law or fact common to all the defendants, despite the Trustee's vague attempt to conjure up joint and several liability among the defendants. This is apparent from a review of the list of twenty-two separate transactions, occurrences or series of transactions or occurrences alleged in the Complaint that are summarized on **Exhibit B**.

For example, Transaction/Occurrence No. 4 involves a lawsuit filed against HDL and defendants Warnick, Mallory, Dent and Johnson by Berkley Heart Labs. Resolution of this litigation resulted in HDL, Warnick and Mallory being required to pay $9 Million to Berkley. Even though HDL, Warnick and Mallory were jointly and severally liable for this amount, Warnick and Mallory caused HDL to pay the entire amount. The Trustee alleges that, as a result, Warnick and Mallory breached fiduciary duties owed to HDL and failed to exercise good faith business judgment. The Trustee does not, and cannot, claim that the Bouton Defendants were in any way involved in this transaction/occurrence. Moreover, the legal questions of whether the actions of Warnick and Mallory breached fiduciary duties or were a failure to exercise good faith business judgment have no application whatsoever to the Bouton Defendants. Furthermore, the Trustee makes no effort to explain how the Bouton Defendants can be held liable for the alleged breaches of duty committed by Warnick and Mallory. The Trustee has thus failed to satisfy either criteria for joinder under Rule 20(a)(2).

Transactions/Occurrences Nos. 8 and 10 are another example of the Trustee's assertion of claims that in no way involve the Bouton Defendants. Both involve decisions by the officers and directors of HDL to invest in other companies, namely Global Genomics Group, LLC ("G3") and C3Nexus, LLC ("C3"). The G3 transaction resulted in a loss to HDL of approximately $17 Million and the separate C3 transaction resulted in a loss to HDL of approximately $3 Million. The Trustee alleges that, in approving and implementing these transactions, the HDL officers and directors breached their fiduciary duties to HDL, were negligent and grossly negligent, and wasted corporate assets. The Bouton Defendants had no involvement in these transactions/occurrences, and the question of whether the actions of the HDL officers and directors breached various duties to HDL is not a question of law common to the Bouton Defendants. The Trustee has once again failed to satisfy either criteria for joinder required by Rule 20(a)(2).

A third example of the Trustee's misjoinder of the Bouton Defendants in his Complaint is Transaction/Occurrence No. 19, in which the Trustee alleges that the HDL board of directors breached fiduciary duties to HDL, and were guilty of negligence, gross negligence, and wasting corporate assets due to their failure to obtain a tolling agreement with the LeClairRyan law firm and some of its attorneys. The Bouton Defendants obviously had no involvement in this occurrence, and the issue of whether the HDL board breached duties to HDL under these circumstances is not a question of law common to the Bouton Defendants.

A fourth example of the Trustee's misjoinder of the Bouton Defendants is found in Counts 65 and 66 of the Complaint, in which the Trustee's asserts claims in *assumpsit* and unjust enrichment against "all defendants." In both counts, the Trustee alleges in conclusory terms that all of the 100+ defendants named in his Complaint unjustly benefited from various payments and

transfers of money made to a variety of individuals and entities at various times and places and in a number of different unconnected contexts. As discussed in greater detail on pages 10-11, above, these multiple payments and transfers do not come close to qualifying as the same transaction, occurrence, or series of transactions and occurrences. In fact, Counts 65 and 66 do not even identify what benefit the Bouton Defendants allegedly received from the various transactions and occurrences described in those counts.

A review of the other separate, distinct transactions/occurrences set out on **Exhibit B** simply reinforces the point that the Trustee has misjoined the Bouton Defendants in his Complaint.

### B. The Trustee's Conspiracy Allegations Do Not Cure The Improper Joinder Of The Bouton Defendants.

Any argument by the Trustee that his conspiracy claims in Counts 72 and 73 somehow alleviate his misjoinder of the Bouton Defendants is wholly without merit.

First, the conspiracy claims in these two counts exclude a large number of defendants, including twenty-six of the defendants in the group described as the "BlueWave Transferee Defendants" and certain HDL shareholders such as the "Golias Family Shareholders." *See* Complaint ¶¶ 1049-1062. Thus, the factual and legal claims asserted in Counts 72 and 73 are not common to all defendants.

Second, according to the Trustee's allegations, the conspiracies affected only the thirty unidentified Assigning Creditors. The alleged conspiracies purportedly involved the making of fraudulent misrepresentations to the Assigning Creditors concerning HDL's business practices, resulting in their extending unsecured credit and making payments to HDL in the millions of dollars. Complaint, ¶¶ 1049-1052; 1055-1060. Claims by the Assigning Creditors to recover specific monies paid or loaned to HDL are factually and legally distinct from the claims of the

Trustee in other counts based on transactions/occurrences that directly affected only HDL and its creditors generally by reducing the pool of assets available to pay creditor claims.

Third, the Trustee's conspiracy claims amount to no more than a recitation of legal conclusions. Similar attempts by plaintiffs to avoid the requirements of Rule 20(a)(2) have been uniformly rejected by the courts. *See e.g., Negron-Bennett*, 2013 WL 5552236, at *4–5, aff'd, 572 F. App'x 246; *Loney, supra,* 2014 WL 6705443, at *3; *Jackson, supra,* 2010 WL 724023, at *3 ("[A] Plaintiff cannot satisfy the requirements of Rule 20(a) with conclusory allegations of a conspiracy."); *see also, Alston v. Town of Brookline, Massachusetts*, No. 15-13987-GAO, 2016 WL 5745091, at *13 (D. Mass. Sept. 30, 2016) ("joinder [is] inappropriate, even in the face of conspiracy allegations, when Rule 20 requirements are not met." (citing *Abraham v. Am. Home Mortgage Servicing, Inc.*, 947 F. Supp. 2d 222, 230 (E.D.N.Y. 2013) (standing alone, conspiracy allegation cannot create common transactions or occurrences under Rule 20, "nor does it obviate the need for separate proof as to each individual claim") (quoting *Richards v. Deutsche Bank Nat'l Trust Co.*, 2012 U.S. Dist. LEXIS 115302, CV 12-4786, at *2 (CD. Cal. Aug. 15, 2012)); *Pac. Century Int'l Ltd. v. Does 1-101*, No. C-11-02533-DMR, 2011 WL 2690142, at *4 (N.D. Cal. July 8, 2011) (severing defendants even in light of specific conspiracy claims, where plaintiff could not meet Rule 20 requirements); and *Insolia v. Philip Morris Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999) (severing plaintiffs where a conspiracy charge was "the only thread holding together plaintiffs' argument")).

The court's opinion in *Abraham* is particularly instructive regarding the Trustee's conspiracy allegations. In that case, several hundred present or former homeowners alleged that the defendants had committed fraud in connection with mortgage loans the defendants made to

- 17 -

the plaintiffs. Despite allegations that the defendants had all conspired with each other to defraud the plaintiffs, the court dismissed the complaint under Rule 20(a) due to misjoinder.

> Plaintiffs' conspiracy allegations are based on underlying acts of alleged fraud. Thus, in order to state a conspiracy claim that is plausible on its face and that would be sufficient to permit joinder based solely on allegations of conspiracy, Plaintiffs would have to meet the heightened pleading requirements for fraud-based claims under Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). This requirement applies to claims of fraud, intentional misrepresentation, negligent misrepresentation, constructive fraud, and unjust enrichment.

947 F. Supp. 2d 222, at 230 (citations omitted).

Insofar as the Bouton Defendants are concerned, the only allegations connecting them to the purported conspiracies are the conclusory allegations of fraud contained in prior Counts 67 and 68. Those factually unsupported fraud claims and the Trustee's other conclusory conspiracy allegations are insufficient to cure the Complaint's misjoinder of the Bouton Defendants.

**II.     Dismissal Of The Trustee's Complaint Rather Than Severance Of The Trustee's Claims Is The Appropriate Remedy To Address The Trustee's Failure To Comply With Rules 8, 9, 10 And 20.**

Rule 21, F. R. Civ. P, permits a court to sever misjoined claims. This is usually done by dismissing all except the first-named defendant or the first cause of action alleged in the complaint, and requiring the plaintiff, if he so chooses, to file new lawsuits against the remaining defendants that comply with Rule 20 and the other Rules governing pleadings. *See e.g., Jackson, supra,* 2010 WL 724023, at *8-9. But where, as here, the claims made in the complaint are so convoluted and intermeshed that it is impossible to logically sever them, dismissal of the entire complaint under Rule 41(b) is the appropriate sanction.[7] *See Turton, supra,* 2014 WL 12539403, at *2; *Negron-Bennett, supra,* 2013 WL 5552236, at *5 (plaintiff's pleading deficiencies made it

---

[7] Rule 41(b), F. R. Civ. P., provides that the court may order an involuntary dismissal of an action based on a plaintiff's failure to comply with the Rules.

- 18 -

"impractical to attempt to sever the Amended Complaint into discrete groups of reasonably related claims and allow them to proceed separately."); *Roberts*, 459 B.R. at 834.  The Court should not waste its time trying to slice and dice the mishmash of claims asserted in the Trustee's Complaint in an effort to sever the claims and allow them to proceed as separate actions.  Dismissal with a requirement that, if he chooses to do so, the Trustee refile his claims as separate lawsuits, is the appropriate course of action in this case.  *Turton, supra; Negron-Bennett, supra.; Roberts, supra.*

## CONCLUSION

The Federal Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."  Rule 1, F. R. Civ. P.  The Trustee's fatally flawed Complaint flies in the face of this admonishment.  It should accordingly be dismissed.

Dated: November 21, 2016

Respectfully submitted,

*/s/ S. Miles Dumville*
S. Miles Dumville (VSB No. 15748)
REED SMITH LLP
Riverfront Plaza—West Tower
901 E. Byrd Street, Suite 1700
Richmond, VA 23219-4068
(804) 344-3400
Fax:  (804) 344-3410
mdumville@reedsmith.com

*Counsel for the Bouton Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of November, 2016, a true and correct copy of the foregoing was served electronically using the Court's CM/ECF system on all registered users of the CM/ECF system who have filed a notice of appearance in this matter, including Debtors' counsel and the Office of the United States Trustee.

*/s/ S. Miles Dumville*
S. Miles Dumville (VSB No. 15748)
REED SMITH LLP
Riverfront Plaza—West Tower
901 E. Byrd Street, Suite 1700
Richmond, VA 23219-4068
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
mdumville@reedsmith.com