**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone: (215) 575-7000
Facsimile: (215) 575-7200
Jesse N. Silverman (VSB No. 46456)
jsilverman@dilworthlaw.com
Joshua D. Wolson (*pro hac vice*)
jwolson@dilworthlaw.com
Jennifer L. Maleski (*pro hac vice*)
jmaleski@dilworthlaw.com

*Attorneys for BlueWave Healthcare Consultants, Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(RICHMOND DIVISION)**

| | |
|---|---|
| In re:<br><br>HEALTH DIAGNOSTIC LABORATORY INC. *et. al.*,[1]<br><br>        Debtors. | Chapter 11<br><br>Case No. 15-32919 (KRH)<br><br>(Jointly Administered) |
| RICHARD ARROWSMITH, LIQUIDATING TRUSTEE OF THE HDL LIQUIDATING TRUST,<br><br>        Plaintiff,<br><br>  vs.<br><br>G. RUSSELL WARNICK, LATONYA S. MALLORY, JOSEPH P. MCCONNELL, SATYANARAIN RANGARAJAN, ROBERT BRADFORD JOHNSON, FLOYD CALHOUN DENT, III, *et al.*,<br>        Defendants. | Adv. Proc. No. 16-03271 (KRH) |

**MEMORANDUM OF DEFENDANTS BLUEWAVE HEALTHCARE CONSULTANTS, *INC*. ET AL. IN SUPPORT OF THEIR MOTION TO DISMISS**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Health Diagnostic Laboratory, *Inc.*  (0119), Central Medical Laboratory, *LLC*  (2728), *and Integrated Health Leaders*, *LLC*  (2434).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

BACKGROUND ..................................................................................................................... 2

    A.    HDL's Lab Testing Services.................................................................................. 2

    B.    Bluewave Provides Marketing Services To HDL Pursuant To A Negotiated Agreement Between Bluewave And HDL........................................................... 2

    C.    The Shareholder Distributions. ........................................................................ 3

    D.    The Department Of Justice's Investigation Of HDL Resulted In HDL  Declaring Bankruptcy........................................................................................................ 3

    E.    The Trustee's Claims Against The Bluewave Defendants. ................................. 4

SUBSTANTIVE FAILURES IN THE TRUSTEE'S ALLEGATIONS WARRANT  DISMISSAL. ................................................................ 8

    A.    The Trustee's Actual Fraudulent Conveyance Claims Fail. ................................. 8

        1.    The Trustee fails to allege sufficiently that HDL defrauded its  creditors.10

        2.    The Trustee failed to allege fraudulent intent plausibly. ......................... 11

    B.    The Trustee's Constructive Fraudulent Conveyance Claims Fail. ...................... 17

        1.    The allegations in the Complaint establish that HDL made payments to the Bluewave Defendants in exchange for reasonably equivalent value.. 17

        2.    Under Virginia Law, it is clear that HDL made payments to Bluewave  in exchange for consideration that would be deemed valuable in law.......... 19

    C.    Many Of The Trustee's Avoidance Actions Fail Because The Trustee Has Not Alleged The Existence Of Any Actual Creditor Holding A Valid Claim. ........... 20

    D.    The Trustee's Preference Actions Do Not Plead Essential Elements.................... 21

        1.    The Trustee has not pled the existence of an antecedent debt to support his claims in Count 51. .................................................................................. 21

        2.    The Trustee has not pled facts sufficient for an allegation of "insider status" in Count 52................................................................................... 22

E.    The Trustee's Claims Including Unnamed Assigning Creditors Must Be
Dismissed. ........................................................................................................ 24

1.    The Trustee's claims including unnamed Assigning Creditors do not
satisfy Rule 8 ............................................................................................. 24

2.    The Trustee's common law fraud claims including unnamed creditors
additionally fail under Rule 9. ................................................................. 24

F.    The Trustee's Statutory Business Conspiracy Claims Fail.   25

G.    The Trustee's Tortious Interference Claims Fail. .................................................. 26

PROCEDURAL FLAWS IN THE TRUSTEE'S ALLEGATIONS
ALSO DOOM MANY OF HIS CLAIMS. ....................................................................... 27

A.    The Trustee Has Engaged In Improper Shotgun Pleading .................................... 27

B.    It Is Not Sufficient For The Trustee Simply To Incorporate By Reference  Other
Pleadings From Separate Cases. ........................................................................... 30

C.    There Cannot Be A State Law Claim Against The Bluewave Defendants  Absent
Some Contact With That State ............................................................................... 31

D.    The Trustee's Actual Fraud Claims Fail For Engaging In Improper Group
Pleading ................................................................................................................. 32

E.    The Trustee's Conspiracy Claims Are Barred By The Statute Of Limitations. ... 33

# TABLE OF AUTHORITIES

**Page**

## Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  301 F.R.D. 487 (C.D. Cal. 2014) ............................................................................ 30

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 8, 9, 31

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*,
  261 F.Supp.2d 483 (E.D. Va. 2003) ...................................................................... 26

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................. 8, 9, 24

*BFP v. Resolution Trust Corp.*,
  511 U.S. 531 (1994) ...................................................................................... 18

*Caperton v. A.T. Massey Coal Co., Inc.*,
  740 S.E.2d 1 (Va. 2013) .................................................................................. 25

*Clarke v. E.I. Dupont DeNemours & Co. Inc.*,
  515 F. App'x 201 (4th Cir. 2013) ........................................................................ 31

Cohen v. Un–Ltd. Holdings, Inc. (*In re Nelco, Ltd.*), 264 B.R. 790 (Bankr. E.D. Va.
  1999) ...................................................................................................... 18

*Conley v. Gibson*,
  355 U.S. 41 (1957) ...................................................................................... 8, 24

*Copeland v. Bieber*,
  No. 2:13CV246, 2013 WL 12145005 (E.D. Va. Dec. 17, 2013) ............................................ 15

*C–T of Virginia v. Euroshoe Associates*,
  762 F. Supp. 675 (W.D. Va. 1991), *aff'd*, 953 F.2d 637 (4th Cir. 1992)) .............................. 20

*Davis v. Bifani*,
  No. 07CV00122MEHBNB, 2007 WL 1216518 (D. Colo. Apr. 24, 2007) ...................................... 30

*Detrick v. Panalpina, Inc.*,
  108 F.3d 529 (4th Cir. 1997) ............................................................................ 34

*Eleson v. Lizarraga*,
  No. 215CV0216GEBEFBP, 2016 WL 80950 (E.D. Cal. Jan. 7, 2016) ...................................... 30

*Eshbaugh v. Amoco Oil Corp.*,
  360 S.E.2d 350 (Va. 1987) ................................................................................ 34

*Feeley v. Total Realty Mgmt.*,
  660 F.Supp.2d 700 (E.D. Va. 2009) ...................................................................... 32

*Girgis v. Salient Sols., Inc.*,
  No. 1:11-CV-1287, 2012 WL 2792157 (E.D. Va. July 9, 2012) ............................................ 32

*Gov't Employees Ins. Co. v. Google, Inc.*,
    330 F. Supp. 2d 700 (E.D. Va. 2004) ...................................................................... 26, 27

*Harrison v. Westinghouse Savannah River Co.*,
    176 F.3d 776 (4th Cir. 1999) ...................................................................................... 25

*Hutcheson v. Savings Bank of Richmond*,
    129 Va. 281, 105 S.E. 677 (1921) .............................................................................. 14

*In re Actrade Fin. Techs. Ltd.*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ....................................................................... 11

*In re Adler, Coleman Clearing Corp.*,
    263 B.R. 406, 447 (S.D.N.Y. 2001) ........................................................................... 12

*In re Amerlink, Ltd.*,
    No. 09-01055-8-JRL, 2011 WL 864953 (Bankr. E.D.N.C. Mar. 11, 2011) ...................... 21, 22

*In re Anderson & Strudwick*, Inc.,
    No. 14-32679-KLP, 2015 WL 1651146 (Bankr. E.D. Va. Apr. 8, 2015) ................................ 7

*In re Andrew Velez Const., Inc.*,
    373 B.R. 262 (Bankr. S.D.N.Y. 2007) ....................................................................... 12

*In re Brannan*,
    No. 06-32392-DOT, 2008 WL 1752206, (Bankr. E.D. Va. Apr. 14, 2008) ........................... 18

*In re D'Angelo*,
    491 B.R. 395 (E.D. Pa.  2013) .............................................................................. 20, 21

*In re Ducate*,
    369 B.R. 251, 258 (Bankr. D.S.C. 2007) .................................................................... 17

*In re Dyson*,
    348 B.R. 314 (Bankr. E.D. Va. 2006) ........................................................................ 21

*In re El-Atari*,
    No. 09-14950-BFK, 2012 WL 404947, (Bankr. E.D. Va. Feb. 8, 2012) ............................. 18

*In re First Union Corp. Sec. Litig.*,
    128 F.Supp.2d 871 (W.D. N.C. 2001) ..................................................................... 8, 33

*In re James River Coal Co.*,
    360 B.R. 139, 162 (Bankr. E.D. Va. 2007) ............................................................... 9, 32

*In re Malone*,
    No. 04-41183-DOT, 2005 WL 3782498 (Bankr. E.D. Va. July 29, 2005) ........................... 15

*In re Marketxt Holdings Corp.*,
    361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007) ................................................................ 12

*In re McFarland*,
    No. 11-10218, 2013 WL 5442406 (Bankr. S.D. Ga. Sept. 30, 2013),
    *aff'd*, No. 11-1021 .................................................................................................. 14

*In re Meadowbrook Estates*,
    246 B.R. 898, 903-04 (Bankr. E.D. Cal. 2000) ........................................................... 20

*In re Morris Commc'ns NC, Inc.*,
  914 F.2d 458 (4th Cir. 1990) ....................................................................... 18

*In re Nelco, Ltd.*,
  264 B.R. 790 (Bankr. E.D. Va. 1999).......................................................... 19

In Re PEC Sols. Sec. Litigation,
  No. 03-CV-331, 2004 WL 1854202 (E.D. Va. May 25, 2004) .................. 8

*In re Pfister*,
  No. ADV 10-80162-HB, 2012 WL 1144540 (Bankr. D.S.C. Apr. 4, 2012),
  *subsequently aff'd*, 749 F.3d 294 (4th Cir. 2014) ..................................... 9

*IIn re Porter*,
  37 B.R. 56 (Bankr. E.D. Va. 1984)............................................................... 14

*In re Practical Inv. Corp.*,
  95 B.R. 935 (Bankr. E.D. Va. 1989).................................................... 22, 23

*In re Sherman*,
  67 F.3d 1348, 1354 (8th Cir. 1995) ............................................................. 14

*In re Strickland*,
  230 B.R. 276 (Bankr. E.D. Va. 1999).......................................................... 22

*In re Wellington Apartment, LLC*,
  350 B.R. 213, 245 (Bankr. E.D. Va. 2006).................................................. 20

*In re Wintz Cos.*,
  230 B.R. 848 (8th Cir. BAP 1999) ............................................................... 20

*Int'l Surplus Lines Ins. Co. v. Mash & McLennan, Inc.*,
  838 F.2d 124 (4th Cir. 1988) ........................................................................ 34

*Jackson v. Mishkin* (*In re Adler, Coleman Clearing Corp.*),
  263 B.R. 406 (S.D.N.Y. 2001)............................................................... 12, 13

*Jones v. Shooshan*,
  855 F. Supp. 2d 594 (E.D. Va. 2012) .......................................................... 34

*Kassin v. Select Grp., LLC*,
  No. 1:16-CV-1263-GBL-TCB, 2016 WL 7331556 (E.D. Va. Dec. 16, 2016) ..................... 25

*LandAmerica Fin. Grp., Inc. v. S. Cal. Edison Co.*,
  525 B.R. 308 (E.D. Va. 2015) ...................................................................... 18

*Masco Contractor Services East, Inc. v. Beals*,
  279 F.Supp.2d 699 (E.D. Va. 2003) ............................................................ 26

*McCarthy v. Giron*,
  No. 1:13-CV-01559-GBL, 2014 WL 2696660 (E.D. Va. June 6, 2014)................................ 31

*Neilson v. Union Bank of Cal., N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) ...................................................... 20

*Palaxar Group v. Williams*,
  2014 WL 5059286 (M.D. Fla. Oct. 2, 2014) ........................................ 33, 34

v

*Quillen v. Int'l Playtex Inc.*,
   789 F.2d 1041 (4th Cir. 1986) .............................................................. 31

*Reid v. Madison*,
   455 F. Supp. 1066 (E.D. Va. 1978) ...................................................... 33

*Schafer v. Citibank, N.A.*,
   No. 1:10-CV-10 GBL, 2010 WL 9034653 (E.D. Va. Aug. 3, 2010) ...................................... 15

*Terry v. June*,
   420 F. Supp.2d 493 (W.D. Va. 2006) .................................................... 31

*Tex. Water Supply Corp. v. R.F.C.*,
   204 F.2d 190 (5th Cir. 1953) ................................................................ 30

*Wolf v. Richmond Cnty. Hosp. Auth.*,
   745 F.2d 904 (4th Cir. 1984) ................................................................ 16

**Statutory Authorities**

11 U.S.C. § 544 ...................................................................................... 9

11 U.S.C. § 548 ................................................................................. 9, 18

128 U.S.C. § 3304 ................................................................................ 9

**Rules and Regulations**

Fed. R. Civ. P. 8 ............................................................................. 1, 7

Fed. R. Civ. P. 9(b) ...................................................................... 1, 32

Fed. R. Civ. P. 12(b)(6) ..................................................................... 7

In his 209-page Complaint, Richard Arrowsmith, Liquidating Trustee of the HDL Liquidating Trust (the "Trustee") asserts 76 Counts marred with both substantive and procedural errors that are fatal to his claims. Substantively, the Trustee fails to state plausible claims under Federal Rules of Civil Procedure 8 and 9(b) – often entirely omitting allegations necessary to state a claim. In the instances in which he does conclusorily plead the requisite claim elements, the Trustee's claims suffer from similar defects that are repeated throughout the Complaint. For example, many of the Trustee's claims are based on the allegation that moving defendants Floyd Calhoun Dent, III, Robert Bradford Johnson, and their company, Bluewave Healthcare Consultants, Inc., conspired with members of HDL's board of directors.[2] This allegation, however, is based on little more than what the Trustee himself characterizes as a "joke" between former HDL employees.

Procedurally, the Trustee's convoluted Complaint engages in improper group pleading, incorporating at least 427 paragraphs into each of its 76 Counts that are often each alleged against over 100 defendants. The Trustee's shotgun pleading approach does not put the Bluewave Defendants on notice of the claims asserted against them in violation of Rule 8. This problem is amplified by the Trustee's incorporation by reference of an entire complaint, including 100s of additional paragraphs of allegations, from *separate* lawsuits. Besides the immense confusion created by the Trustee's Complaint, some claims are facially barred by the statute of limitations. For these reasons, and the reasons articulated below, the Bluewave Defendants respectfully request that the Court grant their Motion to Dismiss.

---

[2]     Bluewave Healthcare Consultants, *Inc.* , Floyd Calhoun Dent, III, Robert Bradford Johnson together with Lakelin Pines *LLC* , CAE Properties *LLC* , Blue Eagle Farm, *LLC* , Blue Eagle Farming *LLC* , Blue Smash Investments, *LLC* , Eagle Ray Investments *LLC* , Forse Investments, *LLC* , Forse Medical *Inc.* , HJ Farming, *LLC* , War-Horse Properties, LLLP, Cobalt Healthcare Consultants *Inc.* , Hisway of South Carolina, *Inc.* , Royal Blue Medical *Inc.* , Aroc Enterprises *LLC* , Riverland Pines *LLC* , Crosspoint Properties *LLC* , Helm-Station Investments LLLP, and Trini "D" Island *LLC*  are collectively referred to as the **"Bluewave Defendants."**

## BACKGROUND

### A.      HDL's Lab Testing Services.

Health Diagnostic Laboratory, *Inc.* (**"HDL"**) is a clinical laboratory that performs diagnostic tests on patients' blood samples testing for cardiovascular disease, disabilities, and other diseases.  [Compl. at ¶ 2.]  HDL was formed in 2008 by LaTonya S. Mallory (**"Mallory"**), George Russell Warnick (**"Warnick"**), and Joseph P. McConnell (**"McConnell"**).  [*Id.* at ¶¶ 2, 165.]  Health care providers (**"HCPs"**) used HDL's laboratories although it did not have contracts with most private insurers, such as Assigning Creditors Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (collectively, **"Cigna"**) and Aetna, *Inc.* (**"Aetna"**).  [*Id.* at ¶¶ 3, 157.]

### B.      Bluewave Provides Marketing Services To HDL Pursuant To A Negotiated Agreement Between Bluewave And HDL.

Defendant Bluewave Healthcare Consultants, *Inc.* (**"Bluewave"**) is an Alabama corporation that has been owned and operated by Floyd Calhoun Dent, III (**"Dent"**) and Robert Bradford Johnson (**"Johnson"**) since early 2010.  [*Id.* at ¶¶ 64, 67, 210.]  HDL employed Bluewave to market HDL's laboratory services to HCPs pursuant to an agreement between them executed on April 5, 2010 (the **"Bluewave Agreement"**).  [*Id.* at ¶¶ 3, 9. 210.]  It took the parties nearly five months (from December 9, 2009 until April 5, 2010) to negotiate the terms of the Bluewave Agreement.  [*Id.* at ¶¶ 207-210.]  Both sides were represented by counsel during those negotiations.  [*Id.* at ¶ 209.]

Under the Bluewave Agreement, Bluewave was to receive a commission of 13.8% of revenue from sales generated by Bluewave's marketing for the period beginning April 1, 2010 through September 30, 2011; 19.8% for the following 18 months; and 16.8% for the remainder of the Bluewave Agreement, in addition to a monthly base fee of $53,750 in year one; $43,000 in

year two; $32,250 in year three; $21,500 in year four; and $10,750 in year five.  [*Id.* at ¶¶ 211, 212.]  Johnson and Dent also received a *de minimis* amount of HDL's stock – 1.5630% each as part of the Bluewave Agreement.  [*Id.* at ¶¶ 65, 66.]  Bluewave's marketing campaign resulted in substantial revenues and profits for HDL.  [*Id.* at ¶ 5.]  After paying Bluewave's commission and other compensation, HDL retained the remainder of the revenue.

### C.    The Shareholder Distributions.

The Trustee alleges that between April 2011 and May 2015, "HDL made millions of dollars in distributions to the Shareholder Defendants on account of their stock ownership."[3]  [*Id.* at ¶ 364.]  Exhibit B to the Complaint is allegedly a "schedule showing the dates, amounts, and recipients of the Shareholder Distributions . . . ."  [*Id.* at ¶ 365.]  The Trustee further alleges that in December of 2012, the HDL Board of Directors approved discretionary stock distributions to the Shareholder Defendants.  [*Id.* at ¶¶ 367-370.]  Dent and Johnson are alleged to have received approximately $1,700,000 each on account of their respective 1.5630% interests.  [*Id.* at Exh. B.]  Importantly, all of these distributions were made prior to the Department of Justice's (**"DOJ"**) subpoena of HDL in 2013, which caused HDL's business to fail.  [*Id.* at ¶¶ 23, 28.]  The Complaint contains no allegation that HDL was unable to pay its creditors prior to the failure of its business, and nothing suggests that the routine shareholder distributions were intended to defraud HDL's creditors.

### D.    The Department Of Justice's Investigation Of HDL Resulted In HDL Declaring Bankruptcy.

Up until the DOJ began its investigation, HDL was profitable and paid its creditors.  [*Id.* at ¶¶ 28, 218.]  The investigation, which resulted in the DOJ issuing a subpoena to HDL on

---

[3]        As defined in the Complaint, "Shareholder Defendants" includes moving Bluewave Defendants Dent and Johnson, as well as the Mallory Defendants, the McConnell Defendants, the Warnick Defendants, the Golias Family Shareholders, Galen, Bartlett, Petersen, Mayes, Tessler, Oates, and Rangarajan.

January 7, 2013, had a devastating impact on HDL's business. [*Id.* at ¶¶ 23, 28-32.] HDL's average monthly volume decreased 22% in the second half of 2014. By the fourth quarter of 2014, net revenues were down by more than 47%. [*Id.* at ¶ 32.]

On April 9, 2015, HDL entered into a settlement with the DOJ (the **"DOJ Settlement"**), agreeing to pay the federal government and several participating states a total of $47 million in fixed payments plus interest over a five-year period, increasing to $100 million upon the occurrence of certain triggering events. [*Id.* at ¶ 34.] Pursuant to the DOJ Settlement, HDL made scheduled payments of $973,192.12 on April 30, 2015, and $881,955.36 on August 11, 2015, but defaulted on further scheduled payments. [*Id.* at ¶ 34.] The United States also received $4.5 million from HDL after exercising set-off rights on November 30, 2015. [*Id.*] Only a year and a half after the DOJ subpoena, HDL filed a voluntary petition pursuant to chapter 11 of Title 11 of the United States Code in this Court on June 7, 2015. [*Id.* at ¶¶ 1, 36.] Allegedly, a total of $94,144,852.52 plus interest remains due under the DOJ Settlement, as reflected in the DOJ's proof of claim in the HDL bankruptcy case, Claim No. 1335. [*Id.* at ¶ 34.]

E.      **The Trustee's Claims Against The Bluewave Defendants.**

The Trustee alleges 76 causes of action against the defendants.[4] [*Id.* at ¶ 38.] These causes of action include: avoidance of various transfers and obligations under federal and state fraudulent transfer laws; avoidance of preferential transfers; breaches of fiduciary duty and related torts; conspiracy; recharacterization as equity of certain advances made and recovery of the associated payments as fraudulent transfers; unlawful distributions, corporate waste, negligence, violation of trust fund doctrine; unjust enrichment; fraud and intentional interference

---

[4]      Claims 1-12, 37-53, 54-55, 58-60, 65-74, and 76 are each asserted against one or more of the Bluewave Defendants.

with contracts and business relationships against creditors; and objection to and equitable subordination of the defendants' claims against the bankruptcy estate.  [*Id.*]

The Trustee alleges that HDL's "former officers and directors designed and carried out improper, illegal and fraudulent business practices in breach of their fiduciary duties."  [*Id.* at ¶ 1.]  Further, the Trustee alleges that the Bluewave Defendants aided and abetted these breaches and received hundreds of millions of dollars in avoidable transfers.  [*Id.*]  In asserting his clams, the Trustee repeatedly relies on allegations that the requisite fraudulent intent should be "imputed to HDL from the dominion and control of HDL by Mallory, McConnell, Warnick, and other members of the HDL Board of Directors, conspiring with BlueWave, Dent, and Johnson."[5] [*Id.* at ¶¶ 430, 450, 470, 487, 508, 529, 551, 571, 591, 608, 648, 668, 688, 776, 796, 815, 832, 852, 873, 890.]

None of the Trustee's allegations, however, focuses on HDL's alleged intent to defraud its *creditors* – the requisite intent under the avoidance statutes.  Nor does the Trustee allege any facts that are legally sufficient to support his claims that any of the Bluewave Defendants exercised any dominion or control over HDL.  For example, the Trustee alleges that "BlueWave, Johnson, and Dent had such a close relationship with Mallory, and through Mallory with HDL, that BlueWave, Johnson, and Dent were able to exercise undue influence and control over HDL, and induce HDL's assent to the improper BlueWave Agreement."  [*Id.* ¶ at 218.]  There are only two factual assertions to support such a "close relationship."  First, Mallory had previously worked with Dent and Johnson at Berkeley Heartlab, *Inc.* (**"Berkeley"**).  [*Id.* ¶ at 2, 238.]  Second, the Trustee claims:

> [p]art of their undue influence and close relationship came from the enormous revenues BlueWave was poised to, and later did, improperly

---

[5] In some instances, the Trustee alleges that Bluewave, Dent, and Johnson have conspired with the D&O Defendants.

> generate for HDL and the personal gain of the conspirators. HDL
> employees joked that BlueWave's Dent and Johnson really ran HDL
> because Mallory always had to discuss issues with them before making
> decisions.

[*Id*. at ¶ at 218.]  Aside from referring to an admitted "joke" made by HDL's employees, the

Trustee does not allege any facts to support his otherwise conclusory allegations regarding

Bluewave's influence on HDL.

It is also unclear from the factual allegations how the Bluewave Agreement was a vehicle

to defraud HDL's *creditors*.  While the Trustee alleges that the Bluewave Defendants knew or

should have known since October 2009, that they were engaging in an illegal kickback scheme

as part of their services to HDL, these allegations do not evince any intent to defraud HDL's

*creditors*.  For example, the Trustee alleges that:

> the BlueWave Defendants knew, or should have known, that the
> BlueWave Agreement violated the federal [Anti-Kickback Statute
> ("AKS")] or posed a grave risk of being aggressively challenged by the
> government as such a violation because it: (i) provided significant
> financial incentives that increased the risk of, and ultimately resulted in,
> abusive marketing and billing practices, such as [process and handling
> ("P&H")] payments to maximize revenue; (ii) provided significant
> opportunities to unduly influence referral sources through active
> marketing and direct contact with physicians who ordered HDL's products
> and services; (iii) failed to provide safeguards against fraud and abuse; and
> (iv) created a significant risk of, and ultimately resulted in, overutilization
> of HDL's products and services.

[*Id.* ¶¶ at 177, 219.]

Similarly, the Trustee alleges that Bluewave, Dent, and Johnson controlled HDL.

> Reflecting the improper influence and control BlueWave, Dent, and
> Johnson exercised over HDL and its policies, Section 3(e) of the
> BlueWave Agreement expressly required HDL to "provide zero balance
> billing in the Territory for Medicare, PPOs, POSs and Medicaid" except as
> mutually agreed by the parties. Section 3(f) of the BlueWave Agreement
> had a further provision that HDL would review zero balance billing for
> HMOs, and HDL extended the zero balance billing policy to HMOs.

6

[*Id.* ¶ at 226.]  This allegation does not show intent to defraud HDL's *creditors*.

Rather than alleging facts showing HDL's intent to defraud its creditors, the Trustee sets forth three "illicit practices" that allegedly caused "significant harm to HDL and its creditors." [*Id.* at ¶ 7.]  First, the Trustee alleges that "[t]o induce referrals to HDL, HDL paid P&H fees of $17 or more to HCPs, in addition to and far in excess of the $3 draw fee permitted under Medicare."  [*Id.* at ¶ 8.]  The Trustee alleges that this practice violated the AKS and that HDL "paid at least $46 million to HCPs in P&H fees."  [*Id.*]  Second, the Trustee alleges that HDL entered into the Bluewave Agreement, which he again claims violated the AKS due to its "unreasonable and grossly excessive commission percentage."  [*Id.* at ¶ 9.]  Finally, the Trustee alleges that "HDL routinely did not collect co-payments, co-insurance payments, and deductibles due from patients for HDL's blood testing services in violation of the AKS and the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a ('CMP')."  [*Id.* at ¶ 10.]  Together, these allegations are referred to as the "HDL Practices."  While these allegations may be sufficient for some cause of action against HDL, they are insufficient to show that the Bluewave Defendants have intentionally defrauded HDL's creditors.

## ARGUMENT

The Trustee's claims suffer from both substantive and procedural defects and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a complaint fails to state a claim upon which relief can be granted when it fails to satisfy the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7008.  *See In re Anderson & Strudwick, Inc.*, No. 14-32679-KLP, 2015 WL 1651146, at *4 (Bankr. E.D. Va. Apr. 8, 2015). The purpose behind Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  In order to withstand a motion to dismiss

for failure to state a claim, a complaint must contain "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556).

Further, for claims of fraud, the Complaint must satisfy Rule 9(b)'s requirement that the

who, what, where, why, and when of the fraud be pleaded with specificity.  *See In Re PEC Sols.*

*Sec. Litig.*, No. 03-CV-331, 2004 WL 1854202, at *4 (E.D. Va. May 25, 2004), *aff'd sub nom. In*

*re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir. 2005) (citing *In re First Union Corp. Sec.*

*Litig.*, 128 F.Supp.2d 871, 886 (W.D. N.C. 2001)).  Because the Trustee cannot meet these

pleading standards, the Court should dismiss the claims against the Bluewave Defendants.

### SUBSTANTIVE FAILURES IN THE TRUSTEE'S ALLEGATIONS WARRANT  DISMISSAL.

#### A.    The Trustee's Actual Fraudulent Conveyance Claims Fail.

The Court should dismiss the Trustee's actual fraudulent conveyance claims under

sections 548(a) and 544(b) of the Bankruptcy Code because the Trustee: (1) fails to sufficiently

identify how HDL defrauded its *creditors*, and (2) fails to allege HDL's fraudulent intent

sufficiently – either circumstantially through the "badges of fraud" or through his improper

attempts to impute the intent of certain transferees to HDL.[6]

Section 548(a) of the Bankruptcy Code provides that a trustee may avoid a transfer of an

interest of a debtor where the debtor "made such transfer or incurred such obligation **with actual**

**intent to hinder, delay, or defraud** any entity to which the debtor was or became, on or after the

---

[6]        These claims are found in Counts 1, 3, 5, 7, 9, 11, 13, 37, 39, 41, 43, 45, 47, and 49 of the Complaint.

date that such transfer was made or such obligation was incurred, indebted."   11 U.S.C. §

548(a)(1)(A) (emphasis added).   Section 544(b) of the Bankruptcy Code states that "the trustee

may avoid any transfer of an interest of the debtor in property or any obligation incurred by the

debtor *that is voidable* under applicable law by a creditor holding an unsecured claim."   11

U.S.C. § 544(b) (emphasis added).

Here, the Trustee asserts the transfers and obligations are voidable under 28 U.S.C. §

3304, Virginia Code Annotated §§ 55-80, Texas Business and Commercial Code §§ 24.001 *et

seq.*, West Virginia Code §§ 40-1 a-1 *et seq.*, Revised Code of Washington § 19.40.011 *et seq.*,

Minnesota Statutes §§ 513.41 *et seq.*, South Carolina Code § 27-23-10, New York Debtor and

Creditor Law § 276, Georgia Code §§ 18-2-70 *et seq.*, and Alabama Code §§ 8-9 A-1 *et seq.*[7]

But the actual fraud sections of these statutes all require a showing that a debtor made a transfer

*with intent to hinder, delay, or defraud a creditor* of HDL.[8]   To satisfy the pleading

requirements of *Iqbal* and *Twombly*, as well as Rule 9(b), the Complaint must "detail[] the

transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the

defendants in the transfers."   *In re James River Coal Co.*, 360 B.R. 139, 162 (Bankr. E.D. Va.

2007).   As explained below, the Trustee fails to make such an allegation, let alone do so

plausibly.

---

[7]     The Bluewave Defendants do not agree that all of these laws are applicable to transfers received by the
Bluewave Defendants but will address them for purposes of this Motion only.

[8]     *See, e.g.*, *In re Pfister, No. ADV 10-80162-HB*, 2012 WL 1144540, at *5 (Bankr. D.S.C. Apr. 4, 2012),
subsequently *aff'd*, 749 F.3d 294 (4th Cir. 2014) ("A transfer made by the debtor is actually fraudulent under [28 U
.S.C. § 3304(b)(1)(A)] 'if the debtor makes the transfer . . . with actual intent to hinder, delay, or defraud a creditor .
. .'"); Va. Code Ann. §§ 55-80 ("Every, gift, conveyance . . . given with intent to delay, hinder or defraud creditors .
. . ."); Texas Bus. & Com. Code § 24.005 ("A transfer made or obligation incurred by a debtor is fraudulent as to a
creditor . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the
debtor."); W.V. Code §§ 40-1 a-4; Revised Code of Wa. § 19.40.041(a)(1); Minn.  Statutes §§ 513.41(16)(i); S.C.
Code § 27-23-10; N.Y. Debtor and Creditor Law § 276; Ga. Code §§ 18-2-74(a)(1); Ala. Code §§ 8-9 A-4(a).

1. **The Trustee fails to allege sufficiently that HDL defrauded its creditors.**

The Complaint does not contain factual allegations from which the Court can infer a plausible claim that any transfer by HDL was made with actual intent to hinder, delay, or defraud *creditors*. While the Trustee baldly asserts that certain shareholder distributions [Compl. at ¶ 365], as well as payments made pursuant to the Bluewave Agreement [*Id*. at ¶¶ 797, 816, 833, 853, 874, 891], were distributed to avoid payments to creditors, the Trustee fails to explain how these distributions defrauded creditors when creditors were routinely being paid by HDL prior to the collapse of its business. Instead, the Trustee sets forth the HDL Practices that allegedly caused "significant harm to HDL and its creditors." [*Id*. at ¶ 7.] In general, these HDL practices included improper inducement of referrals, the allegedly illegal Bluewave Agreement, and the failure to collect co-payments and deductibles.[9]

While these allegations might be sufficient to state other claims against HDL (e.g., violations of the AKS), they do not permit an inference that any monetary transfer by HDL was intended to avoid payment to its creditors. *See In re James River Coal Co.*, 360 B.R. at 162. Indeed, the Complaint includes no allegation that any creditors were not being paid when the Bluewave Agreement was executed on April 5, 2010, or in those years prior to the DOJ's subpoena. [Compl. at ¶¶ 3, 9, 210.] It was not until the DOJ's subpoena that HDL's business spiraled downward – ultimately resulting in HDL filing for Chapter 11. [*Id*. at ¶¶ 28-32, 36.] Prior to this event, the allegations in the Complaint show that HDL was profitable, paying its debts, and ultimately making shareholder distributions.

It is further unclear from the factual allegations how the Bluewave Agreement was a vehicle to defraud HDL's creditors. Although the Trustee alleges generally that the Bluewave

---

[9]     The HDL Practices are described in further detail on page 7.

Defendants knew or should have known they were engaging in an illegal kickback scheme, that fact alone does not evince any intent by HDL to defraud its *creditors*.  Because the Trustee fails to allege the facts showing why the shareholder distributions or payments made pursuant to the Bluewave Agreement were fraudulent as to HDL's *creditors*, the actual fraudulent conveyance claims must fail.

### 2.      The Trustee failed to allege fraudulent intent plausibly.

The Trustee cannot allege the requisite level of fraudulent intent for his actual fraudulent conveyance claims – either through attempts to impute the transferees' intent to HDL or circumstantially through the "badges of fraud."  This is especially true under South Carolina law, which requires the Trustee to prove that the grantor's intent is imputable to the grantee.

### a.      There is no dominion or control over HDL.

The Trustee contends that the requisite fraudulent intent should be imputed to HDL (the grantor/transferor) "from the dominion and control of HDL by Mallory, McConnell, Warnick, and other members of the HDL Board of Directors, conspiring with BlueWave, Dent, and Johnson."  [Compl. at ¶¶  430, 450, 470, 487, 508, 529, 551, 571, 591, 608, 648, 668, 688, 776, 796, 815, 832, 852, 873, 890.]   This conclusory allegation is insufficient for a plausible allegation of dominion or control over HDL.

In general, only the intent of the transferor/debtor (i.e., HDL) is relevant for purposes of pleading a claim for actual fraudulent conveyance.  *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.").   In extraordinary circumstances, however, courts may impute the fraudulent intent of the transferee to the transferor "where the transferee controls the transferor."  *In re Marketxt Holdings Corp.*, 361

11

B.R. 369, 396 (Bankr. S.D.N.Y. 2007) ("[I]ntent of the transferee is imputed to the transferor

only where the transferee is in a position to control the debtor's disposition of his property.")

(citing *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 443 (S.D.N.Y.

2001)).  Fraudulent intent under such a "dominion and control" theory may be found under the

following circumstances:

> (1) where the person or entity exercising control over the disposition of the
> debtor's property stands in a position to do so by reason of a relationship
> of ownership, executive office or other insider role;
> (2) the application of agency principles dictates the result;
> (3) the controlling person is considered to stand in a fiduciary capacity or
> hold a position of trust in the transferor entity; and
> (4) the rule imputes the fraudulent intent in order to recognize and
> discourage the misuse of the corporate form and insider status as
> instruments to commit fraud by means of transferring property between
> affiliated entities . . . .

*In re Andrew Velez Const., Inc.*, 373 B.R. 262, 269-70 (Bankr. S.D.N.Y. 2007) (citing *In re*

*Adler, Coleman Clearing Corp.*, 263 B.R. 406, 447 (S.D.N.Y. 2001) (internal citations omitted)).

Here, none of the factual allegations permits an inference that there was a conspiracy

between any Bluewave Defendants and the HDL Board of Directors sufficient to plead dominion

and control, and therefore impute fraudulent intent to HDL.  Ignoring all of the conclusory

allegations, as is proper when deciding a motion to dismiss, the Trustee is left with only three

possible factual assertions regarding such a conspiracy.  First, the Trustee alleges that Johnson

and Dent had such a close relationship with Mallory because they had previously worked

together at Berkeley.  [Compl. at ¶¶ at 2, 166, 238.]  The Trustee alleges "through Mallory with

HDL, that BlueWave, Johnson, and Dent were able to exercise undue influence and control over

HDL, and induce HDL's assent to the improper BlueWave Agreement."   [*Id*. at ¶ at 218.]

Second, the Trustee alleges that:

12

> Part of their undue influence and close relationship came from the
> enormous revenues BlueWave was poised to, and later did, improperly
> generate for HDL and the personal gain of the conspirators.   HDL
> employees joked that BlueWave's Dent and Johnson really ran HDL
> because Mallory always had to discuss issues with them before making
> decisions.

[*Id*.]  Finally, the Trustee alleges that Johnson and Dent each received a *de minimis* amount of

HDL's stock – 1.5630% – in the Bluewave Agreement.  [*Id.* at ¶¶ 65, 66.]

These allegations are insufficient to plead dominion and control by the HDL Board of

Directors conspiring with Bluewave Defendants.  Just because Johnson and Dent were former

colleagues of Mallory is not enough to plausibly allege that they conspired together to control

HDL.  Likewise, the fact that Bluewave helped HDL make a lot of money and some employees

*joked* about them controlling the company is insufficient.  Finally, the fact that under the

Bluewave Agreement Dent and Johnson owned just over 3% of the company combined is hardly

enough to suggest a conspiracy with the HDL Board of Directors such that they would exercise

dominion and control over HDL.  It took the parties, both of whom were represented by

independent legal counsel, nearly five months (from December 9, 2009 until April 5, 2010) to

negotiate the terms of the Bluewave Agreement for Johnson and Dent to receive such a minor

ownership stake.  [*Id.* at ¶¶ 207-210.]  This fact alone belies the Trustee's argument that Dent

and Johnson exerted dominion and control over HDL.

It is clear from these factual allegations that none of the Bluewave Defendants were

owners, executive officers, or insiders at HDL, nor were they agents of HDL.  They did not stand

in a fiduciary capacity or hold a position of trust in HDL, nor were Bluewave and HDL related

entities.  Without more basis in fact, the conspiracy allegations are insufficient to impute any

alleged fraudulent intent of the Bluewave Defendants onto HDL via a theory of "dominion and

control."

> b.  **The Trustee's "badges of fraud" allegations are insufficient to plead fraudulent intent by HDL.**

Next, the Trustee alleges that HDL's fraudulent intent may be proven circumstantially through the "badges of fraud," but again the Trustee's allegations of are insufficient.  A non-exhaustive list of the recognized "badges of fraud" includes:

> (1) retention of an interest in the transferred property by the transferor;
> (2) transfer between family members for allegedly antecedent debt;
> (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer;
> (4) lack of or gross inadequacy of consideration for the conveyance;
> (5) retention or possession of the property by transferor; and
> (6) fraudulent incurrence of indebtedness after the conveyance.

*In re Porter*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984) (citing *See Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 105 S.E. 677 (1921)).  While the presence of only "'one specific badge will not be sufficient to establish fraudulent intent, the confluence of several can constitute conclusive evidence of an actual intent to defraud.'"  *In re McFarland*, No. 11-10218, 2013 WL 5442406, at *12 (Bankr. S.D. Ga. Sept. 30, 2013), *aff'd,* No. 11-10218, 2014 WL 3925279 (S.D. Ga. Aug. 8, 2014), *aff'd*, 619 F. App'x 962 (11th Cir. 2015) (quoting *In re Sherman*, 67 F.3d 1348, 1354 (8th Cir. 1995)) (internal quotation marks omitted).

Here, in Counts 37, 39, 41, 43, 45, 47, and 49 against the Bluewave Defendants, the Trustee alleges that the following four badges of fraud apply:

> (i) the transfers were made initially to BlueWave, Dent, and Johnson, who conspired with the insiders, directors, and officers of HDL to exercise dominion and control over HDL;
> (ii) the transfers of the BlueWave Payments were made at the same time substantial new liabilities and debts were being incurred through continuation of the improper P&H Program, the BlueWave Agreement itself, and the Patient Responsibility Collection Practice;
> (iii) given the enormous liabilities that the use of BlueWave as a percentage-based commission sales agent created for HDL, HDL received no value or consideration in exchange for the transfers of the BlueWave Payments; and

14

(iv) HDL was or became insolvent at the time of the BlueWave Payments.[10]

[Compl. at ¶¶ 778, 798, 817, 834, 854, 875, 892.]

As explained above, the Trustee fails to allege facts to support the first "badge of fraud" because none of the Bluewave Defendants (including shareholders Dent and Johnson) conspired with the HDL Board such that they could be said to have exercised dominion and control over HDL.

The Trustee's allegations regarding the second "badge of fraud" are also insufficient. The Bluewave Payments were routine business expenses that were agreed upon in the arm's length Bluewave Agreement years before this action was filed and while HDL was still solvent. *In re Malone*, No. 04-41183-DOT, 2005 WL 3782498, at *2 (Bankr. E.D. Va. July 29, 2005) (finding ordinary expenses to be insufficient to show "inten[t] to hinder, delay or defraud [] creditors"). Moreover, as explained above, the Bluewave Payments did not prevent HDL from paying its debts as they came due until the DOJ subpoena caused the business to collapse. Indeed, the Bluewave Payments were for Bluewave's valuable marketing services, which helped HDL generate "enormous revenues" and allowed it to pay its creditors. [Compl. at ¶¶ 5, 11, 14, 218.] Similarly, the third alleged "badge of fraud" – that HDL received no consideration from the Bluewave Defendants or the Shareholder Defendants in exchange for the distributions and payments – is contradicted by the Complaint. *See Schafer v. Citibank, N.A.*, No. 1:10-CV-10 GBL, 2010 WL 9034653, at *8 (E.D. Va. Aug. 3, 2010), *aff'd*, 447 F. App'x 466 (4th Cir. 2011) (dismissing claim where allegations in Complaint were contradicted); *see also Copeland v.*

---

[10]   The alleged "badges of fraud" in the Trustee's claims against the Shareholder Defendants (Counts 1, 3, 5, 7, 9, and 11) are substantially similar to those against the Bluewave Defendants with the exception that they involve the Shareholder Distributions rather than the Bluewave Payments and the third badge of fraud against the Bluewave Defendants includes the additional allegation that HDL received no value "given the enormous liabilities that the use of BlueWave as a percentage based commission sales agent created for HDL." [Compl. at ¶¶ 432, 452, 472, 489, 510, 531.] These badges of fraud fail to establish fraudulent intent for the same reasons described herein.

*Bieber*, No. 2:13CV246, 2013 WL 12145005, at *2 (E.D. Va. Dec. 17, 2013) ("[T]he allegations of the complaint... must be taken as true' unless the uncontroverted evidence contradicts them.") (quoting *Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984)). The Complaint frequently discusses how Bluewave and Dent and Johnson (both Bluewave Defendants and Shareholder Defendants) helped HDL generate enormous revenues. [Compl. at ¶¶ 5, 11, 14, 218.]

Finally, the Trustee asserts HDL was or became insolvent at the time of the Bluewave Payments.  Indeed, the Trustee claims that HDL has not been solvent since being formed in October 2009, despite generating enormous revenues. [*Id*. at ¶¶ 6, 341-342.]  The Trustee's allegation in support of this is that, although HDL's audited balance sheet showed assets exceeded liabilities by a significant amount, these were simply inaccurate. [*Id*. at ¶¶ 345-350.] This conclusory dismissal of facts that obviously undermine his claim is insufficient pleading. *See Schafer*, 2010 WL 9034653, at *8; *see also Copeland*, 2013 WL 12145005, at *2.  The allegation of insolvency is further contradicted by the fact that HDL was paying its creditors up until the DOJ investigation.  Importantly, even if HDL was insolvent at the time of the Bluewave Payments or Shareholder Distributions, this single factor is insufficient for an allegation of intent via the badges of fraud.  *In re McFarland*, 2013 WL 5442406, at *12

Without identifying a creditor that was actually and intentionally defrauded, or sufficiently alleging that any transfers were made to avoid paying any creditors, these claims must fail.

> c.     **The Trustee's claims under South Carolina law fail for additional reasons.**

In addition to the pleading deficiencies discussed above, the Trustee's actual fraud claims arising under South Carolina law also fail because they do not allege that HDL's intent is

16

imputable to the Bluewave Defendants.[11]   Under South Carolina law, "[i]f the transfer was made

for valuable consideration, it can be avoided if 'the plaintiff establishes that (1) the transfer was

made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was

indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee.'" *In

re Amelung*, 436 B.R. 806, 809 (Bankr. D.S.C. 2010) (quoting *In re Ducate,* 369 B.R. 251, 258

(Bankr. D.S.C. 2007)).

Here, it is clear that the Bluewave Payments and Shareholder Distributions were made for

valuable consideration – namely, Bluewave's marketing services, which generated enormous

revenues for HDL.   Even assuming that the Trustee has plausibly alleged the first two elements

(he has not), the South Carolina claims fail because he does not even attempt to allege that the

grantor's intent is imputable to the grantee (i.e., HDL's intent to Johnson and Dent).   The Trustee

does not separately make any allegations regarding the fraudulent intent of the transferees.   He

simply focuses on the fraudulent intent of HDL.   Without an allegation regarding this claim

element, the actual fraud claims under South Carolina law must fail.

### B.     The Trustee's Constructive Fraudulent Conveyance Claims Fail.

Many of the Trustee's constructive fraudulent conveyance claims are not plausible

because the Complaint itself establishes that Bluewave received payments in exchange for

reasonably equivalent value.   Therefore, the Court should dismiss Counts 38, 40, 44, 46, 48, and

50.

### 1.     The allegations in the Complaint establish that HDL made payments to the Bluewave Defendants in exchange for reasonably equivalent value.

The Trustee's constructive fraudulent conveyance claims under Section 548(a)(1)(B) of

the Bankruptcy Code (and equivalent state laws) also fail.   Section "548(a)(1)(B) authorizes

---

[11]       These claims are found in Counts 9 and 45 of the Complaint.

avoidance of a transfer that was constructively fraudulent, *i.e.,* if the debtor received less than reasonably equivalent value in the exchange and the debtor was either insolvent or made insolvent by the transfer."[12]  *In re Brannan*, No. 06-32392-DOT, 2008 WL 1752206, at *7 (Bankr. E.D. Va. Apr. 14, 2008), *amended in part*, No. 06-32392-DOT, 2008 WL 4526217 (Bankr. E.D. Va. Sept. 30, 2008).

As discussed above, the Trustee fails to properly allege that HDL was insolvent or made insolvent by any transfer.  Nor did he adequately plead that HDL received less than reasonably equivalent value.  To determine whether reasonably equivalent value was received, the Court must perform a two-step analysis: "(1) did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended?"[13] *LandAmerica Fin. Grp., Inc. v. S. Cal. Edison Co.*, 525 B.R. 308, 319 (E.D. Va. 2015) (citing *Cohen v. Un–Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 813 (Bankr. E.D. Va. 1999)).

Further, the debtor need not "receive dollar-for-dollar value for what was given."  *In re El-Atari*, No. 09-14950-BFK, 2012 WL 404947, at *3 (Bankr. E.D. Va. Feb. 8, 2012) (citing *Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1336 (11th Cir. 2007)) (citations omitted). "There is no set percentage, or mathematical formula, for what 'reasonably equivalent' means under the Code." *Id.* (quoting *In re Morris Commc'ns NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990)).  Rather, "'reasonably equivalent' means 'approximately equivalent,' or 'roughly equivalent.'" *Id.* (quoting *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 540 n.4 (1994)); *see*

---

[12]      The states of Texas, Alabama, West Virginia, and Washington all have adopted the Uniform Fraudulent Transfer Act and thus have laws equivalent to Section 548(a)(1)(B) of the Bankruptcy Code.

[13]      "Value is defined as 'property, or satisfaction or securing of a present or antecedent debt of the debtor.'" *LandAmerica Fin. Grp.*, 525 B.R. at 314 (quoting 11 U.S.C. § 548(d)(2)(A)).

*also In re El-Atari*, 2012 WL 404947, at *4 (dismissing 548(a)(1)(B) claim where "[t]here [was]

no suggestion [] that the Debtor was paying for anything speculative").

Here, step one is satisfied as HDL received substantial value from Bluewave's marketing

services.  *See In re Nelco, Ltd.*, 264 B.R. 790, 813 (Bankr. E.D. Va. 1999) (finding that debtor

received value from services).  That is, HDL received a satisfaction of its liability to Bluewave

under the Bluewave Agreement.  Further, step two is satisfied as there is no doubt that HDL's

payments were reasonably equivalent to the value that HDL received from Bluewave.

Bluewave's marketing campaign was enormously successful and resulted in revenues and profits

for HDL.  [Compl. at ¶ 5.]  After paying Bluewave's commission and other compensation, the

remainder of the revenue was retained by HDL.  Indeed, the Trustee asserts that "[p]art of their

undue influence and close relationship came from the ***enormous revenues BlueWave was poised***

***to, and later did, improperly generate for HDL*** and the personal gain of the conspirators."

[Compl. at ¶ at 218] (emphasis added).  Because the Trustee's own allegations show that HDL

profited enormously from Bluewave's marketing efforts, he cannot plausibly allege that HDL did

not receive reasonably equivalent value for the Bluewave Payments or the Bluewave

Obligations.  Therefore, the Court should dismiss the Trustee's Section 548(a)(1)(B) claims

under Counts 38, 40, 44, 46, and 48.

### 2.    Under Virginia Law, it is clear that HDL made payments to Bluewave in exchange for consideration that would be deemed valuable in law.

The Trustee's constructive fraudulent conveyance claims in Counts 42 and 50 are even

more deficient, as it is well-established that Virginia law only requires consideration to be

deemed valuable in law.  Virginia law states that a transfer "which is not upon consideration

deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered

insolvent, shall be void as to creditors."  Va.Code Ann. § 55–81.  Under this more lenient

standard, "something of value must be gained." *In re Wellington Apartment, LLC*, 350 B.R. 213, 245 (Bankr. E.D. Va. 2006) (citing *C–T of Virginia v. Euroshoe Associates,* 762 F. Supp. 675 (W.D. Va. 1991), *aff'd*, 953 F.2d 637 (4th Cir. 1992)).   However, "the consideration **does not** have to be reasonably equivalent to what is being given up."   *Id.* (emphasis added).   It is clear that Bluewave's marketing efforts that resulted in HDL receiving enormous profits satisfies this low threshold, and the Court should dismiss Counts 42 and 50 of the Complaint.

**C.**    **Many Of The Trustee's Avoidance Actions Fail Because The Trustee Has Not      Alleged The Existence Of Any Actual Creditor Holding A Valid Claim.**

The Court should dismiss Counts 1, 5-7, 9, 11-12, 37, 41-43, 45,  and 49-50 for failing to identify the existence of *any* creditor, a requirement for any claim under Section 544(b)(1).   To state a fraudulent conveyance claim under Section 544(b)(1), the Trustee must have alleged that a creditor existed at the time the alleged transfer was made.   While some courts do not require a Trustee to identify a specific creditor by name, "Federal courts applying fraudulent transfer law at the pleading stage generally require that the complaint allege the *existence* of an actual creditor holding an allowable unsecured claim who could avoid a transfer under applicable state law in the absence of a bankruptcy proceeding."   *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1146-47 (C.D. Cal. 2003) (citing *XL Sports, Ltd. v. Lawler*, 49 Fed. Appx. 13, 23, n.9, 2002 WL 31260355, *9, n.9 (6th Cir. Oct. 8, 2002)); *In re Wintz Cos.,* 230 B.R. 848, 859 (8th Cir. BAP 1999); *In re Meadowbrook Estates*, 246 B.R. 898, 903-04 (Bankr. E.D. Cal. 2000)); *see also In re D'Angelo*, 491 B.R. 395, 405 (E.D. Pa.  2013) ("where debtors fail to allege in the complaint the existence of an unsecured creditor, courts will dismiss claims under § 544(b)").   Because the Trustee has failed to even generically identify a creditor in certain Counts under Section 544(b)(1), the Bluewave Defendants respectfully request that the Court dismiss Counts 1, 5-7, 9, 11-12, 37, 41-43, 45, 49 and 50.

**D.      The Trustee's Preference Actions Do Not Plead Essential Elements.**

To plead an action for avoidable preference under Section 547(b), the Trustee must plausibly allege "a transfer of an interest of the debtor in property (1) to or for the benefit of a creditor, (2) on account of an antecedent debt, (3) made while the debtor was insolvent, (4) made on or within 90 days before the date of the filing of the petition, and (5) that enables the creditor to receive more than the creditor would receive if the transfer had not been made and the creditor received payment under a chapter 7 liquidation." *In re Dyson*, 348 B.R. 314, 317 (Bankr. E.D. Va. 2006).  The 90 day look-back period is extended to one year if the creditor is an insider. *Id*. at n.3 (citing § 547(b)(4)(B)).

Here, Count 51 of the Complaint fails as the Trustee did not plead the existence of an antecedent debt.  Count 52 also fails because the Trustee cannot plausibly allege that any of the Bluewave Defendants are "insiders."

**1.      The Trustee has not pled the existence of an antecedent debt to support his claims in Count 51.**

Count 51 fails because the Trustee only conclusorily alleges that the "Transfers were for or on account of an antecedent debt owed by the Debtors to the D&O Defendants, the Galen Defendants, Bartlett, the Shareholder Defendants, Helena Laboratories, and the Doe Defendants before the 90 Day Preferential Transfer were made."  [Compl. at ¶ 903.]  However, "[t]o comply with the heightened pleading standards for § 547 claims, the complaint must include (a) an ***identification of the nature and amount of each antecedent debt*** and (b) an identification of each alleged preferential transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) amount of the transfer." *In re Amerlink, Ltd.*, No. 09-01055-8-JRL, 2011 WL 864953, at *2 (Bankr. E.D.N.C. Mar. 11, 2011) (emphasis added).  The Trustee's conclusory allegation fails to provide the Bluewave Defendants with notice as to what antecedent debt the

Trustee is referring. *See id.* at 3 ("Mere conclusory statements that the transfers were made on account of an antecedent debt owed by the transferor are insufficient."). Without more, the Bluewave Defendants are left guessing the nature of the claim asserted against them.

> **2.      The Trustee has not pled facts sufficient for an allegation of "insider status" in Count 52.**

In Count 52, the Trustee seeks the recovery of preferential transfers to certain Bluewave Defendants that allegedly occurred during a period between "ninety days and one year before the Petition Date." [Compl. at ¶ 910.] But to extend the look-back period from 90 days to a year, the Trustee was required to allege plausibly that the Bluewave Defendants were HDL "insiders." *See In re Dyson*, 348 B.R. at 317. He has failed to do so.

The only allegation in Count 52 is that "the Bluewave Defendants . . . were insiders of the Debtors within the meaning of sections 101(31)(B) and 101(31)(E) of the Bankruptcy Code. . . ." [Compl. at ¶ 913.] This conclusory allegation does not satisfy Rule 8. Section 101(31)(B) of the Bankruptcy Code defines the term "insider" when the debtor is a corporation to include the: "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor." Section 101(31)(E) further defines "insider" to include an "affiliate, or insider of an affiliate as if such affiliate were the debtor." While Section 101(31) does not provide an exhaustive list, it is clear under Virginia law that an insider "must have considerable control or a high likelihood of control over a debtor. Mere financial power over the debtor, however, does not necessarily impute insider status." *In re Strickland*, 230 B.R. 276, 285 (Bankr. E.D. Va. 1999) (citing *In re Practical Inv. Corp.*, 95 B.R. 935, 941 (Bankr. E.D. Va. 1989)).

Here, there are at most three factual assertions interspersed throughout the entirety of the

Complaint that even remotely relate to allegations of "insider" status: (1) that Johnson and Dent had such a close relationship with Mallory because they had all previously worked together at Berkeley [Compl. at ¶¶ at 2, 166, 238]; (2) that the "close relationship came from the enormous revenues BlueWave was poised to, and later did, improperly generate for HDL . . . [and] HDL employees joked that BlueWave's Dent and Johnson really ran HDL because Mallory always had to discuss issues with them before making decisions" [*id*. at ¶ at 218]; and (3) that Johnson and Dent each received a *de minimis* amount of HDL's stock – 1.5630% – in the Bluewave Agreement [*id.* at ¶¶ 65, 66]. These allegations are obviously insufficient to plead that any of the Bluewave Defendants are directors, officers, partners, relatives, or affiliates of the debtor as required under Section 101(31).

Further, the Trustee has not plausibly alleged that the any of the Bluewave Defendants exhibited control or a high likelihood of control over HDL. Just because Johnson and Dent were former colleagues of Mallory is not enough to plausibly allege that they controlled or were highly likely to control HDL. In fact, this Court has found "the fact that [the transferee] was dating the Debtor's mother at the time when the Loan was repaid [was] not enough to qualify [the transferee] as an insider." *In re Strickland*, 230 B.R. at 286. Clearly, being a former colleague is not as close a relationship.

Likewise, the fact that Bluewave helped HDL make a lot of money, that some employees *joked* about Dent and Johnson controlling the company, and that Dent and Johnson owned just over 3% of HDL is insufficient. It is clear that "[m]ere financial power over the debtor . . . does not necessarily impute insider status." *Id*. at 285. Employee jokes and a *de minimis* ownership stake cannot be a sufficient allegation of financial power over HDL. The fact that it took the parties, both of whom were represented by independent legal counsel, nearly five months (from

23

December 9, 2009 until April 5, 2010) to negotiate the terms of the Bluewave Agreement demonstrates that the relationship was at arm's length.   [Compl. at ¶¶ 207-210.]   For these reasons, the Court should dismiss Count 52.

### E.   The Trustee's Claims Including Unnamed Assigning Creditors Must Be Dismissed.

The Court should dismiss Counts 55, 58, 59, 60, 66-70, 72, and 73 because they include assertions pertaining to unnamed creditors, and thus fail to provide the Bluewave Defendants with the requisite notice required by Rule 8.   Further, the Trustee's claims of common law fraud (Counts 67 and 68) are even more deficient, as they fail to meet the more stringent pleading standard of Rule 9(b).   The Complaint defines "Assigning Creditors" as "30 creditors, in addition to Aetna and Cigna."   [Compl. at ¶ 422.]   Such a vague identification cannot satisfy Rule 8 as it fails to give the Bluewave Defendants fair notice of what the Trustee is claiming, and certainly cannot satisfy the particularity pleading requirements of Rule 9(b).   The Court should dismiss these claims.

### 1.   The Trustee's claims including unnamed Assigning Creditors do not satisfy Rule 8.

The purpose behind Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).   By including the claims of 30 unnamed creditors, the Trustee fails to give the Bluewave Defendants notice as to who is asserting a claim against them.   For this reason, the Court should dismiss Counts 55, 58, 59, 60, 66-70, 72, and 73.

### 2.   The Trustee's common law fraud claims including unnamed creditors additionally fail under Rule 9.

The Trustee's common law fraud claims are even more deficient because they must satisfy the stringent pleading standard of Rule 9(b).   In Virginia, to allege common law fraud, "a

plaintiff must allege four elements: (1) a false representation of a material fact; (2) made intentionally, in the case of actual fraud, or negligently, in the case of constructive fraud; (3) reliance on that false representation to plaintiff's detriment; and (4) resulting damage." *Kassin v. Select Grp., LLC*, No. 1:16-CV-1263-GBL-TCB, 2016 WL 7331556, at *5 (E.D. Va. Dec. 16, 2016) (citing *Caperton v. A.T. Massey Coal Co., Inc.*, 740 S.E.2d 1, 9 (Va. 2013)). Rule 9(b) also requires "a plaintiff to allege fraud with particularity." *Id.* (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).[14]

At a minimum, the Trustee's failure to identify 30 creditors is fatal because he does not allege elements 3 and 4 of common law fraud. In regard to these elements, the Trustee only conclusorily alleges that "[i]n justifiable reliance on the misrepresentations by . . . the BlueWave Defendants . . . the Assigning Creditors made such payments to HDL . . ." [*Id.* at ¶¶ 1019, 1025], and "[a]s a result of the justifiable reliance by the Assigning Creditors on these misrepresentations . . . Plaintiff is entitled to recover the damages suffered by the Assigning Creditors in an amount to be proved at trial." [*Id.* at ¶¶ 1021,1027.] But without knowing the identity of the other 30 creditors, there is no way for the Bluewave Defendants to determine any reliance on an alleged false representation to plaintiff's detriment and resulting damage. This cannot satisfy Rule 9(b), and the Court should dismiss Counts 67 and 68 to the extent they rely on the claims of the 30 unnamed Assigning Creditors. *See*, *e.g.*, *Kassin*, 2016 WL 7331556, at *5 (dismissing common law fraud claim that failed to sufficiently allege reliance).

### F.      The Trustee's Statutory Business Conspiracy Claims Fail.

The Trustee's statutory business conspiracy claims are not pled with the requisite level of

---

[14]      According to the Fourth Circuit, "Rule 9(b)'s heightened pleading standard for fraud serves to: (1) ensure that defendants have sufficient information to formulate a defense by putting it on notice of the conduct complained of; (2) protect defendants from frivolous suits; (3) eliminate fraud actions in which all the facts are learned after discovery; and (4) protect defendants from harm to their goodwill and reputation." *Kassin*, 2016 WL 7331556, at *3.

particularity and must be dismissed.[15]   A business conspiracy cause of action under Virginia

Code § 18.2-499 "arises when two or more persons 'combine, associate, agree, mutually

undertake or concert together for the purpose of willfully and maliciously injuring another in his

reputation, trade, business, or profession by any means whatsoever.'   However, business

conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory

language.'"   *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004)

(quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F.Supp.2d 483, 499 (E.D.

Va. 2003)).

Here, the Trustee alleges that the Bluewave Defendants' unlawful acts including

"entering into the BlueWave Agreement . . ." were "undertaken willfully, intentionally,

purposefully and without lawful justification, [and] have injured and continue to injure the

Assigning Creditors' businesses."   [Compl. at ¶¶ 972, 1057.]   This conclusory allegation of an

injury to 30 unnamed Assigning Creditors is insufficient.   *See Gov't Employees Ins. Co.*, 330 F.

Supp. 2d   at 706 (dismissing statutory conspiracy claim where alleged facts were not

"sufficiently specific to support the conclusory language that the parties entered into an

agreement with the purpose of injuring GEICO in its business.").   Without more of a basis in

fact, the Trustee cannot claim that the Bluewave Defendants entering into the Bluewave

Agreement was for the purpose of injuring the Assigning Creditors.

### G.     The Trustee's Tortious Interference Claims Fail.

The Trustee's tortious interference claims are also insufficient.[16]   For a tortious

interference claim under Virginia law, a plaintiff must plead interference with a "particular

party's *specific, existing* contract or business expectancy."   *Masco Contractor Services East, Inc.*

---

[15]     These claims are found in Counts 60 and 73 of the Complaint.
[16]     These clams are found in Counts 69, 70, and 71 of the Complaint.

*v. Beals*, 279 F.Supp.2d 699, 710 (E.D. Va. 2003) (emphasis in original).   A "general expectancy" of business will not suffice.  *See Gov't Employees Ins. Co.*, 330 F. Supp. 2d at 705-706 (dismissing allegations because they were "too broad and conclusory to plead a specific, existing contract or expectancy with a specific party").

Here, the Trustee's claims fail because he does not identify any specific existing contract or business relationship with which the Bluewave Defendants have allegedly interfered.  Rather, the Trustee only generally avers interference with Aetna and Cigna contractual agreements and with contracts or business expectancies of other unnamed Assigning Creditors.  [Compl. at ¶¶ 1029, 1030, 1037, 1038, 1047.]  Because such a general allegation is insufficient, the Court should dismiss Counts 69, 70, and 71.

## PROCEDURAL FLAWS IN THE TRUSTEE'S ALLEGATIONS ALSO DOOM MANY OF HIS CLAIMS.

Initially, the Trustee engages in improper shotgun pleading.  The 209 page Complaint incorporates at least 427 paragraphs into each of its 76 Counts – each of which includes little more than conclusory allegations.  This violates Rule 8 by failing to put the Bluewave Defendants on fair notice of the claims asserted against them.  Things get worse, however, when the Trustee seeks to incorporate by reference 100s of additional paragraphs from *separate* lawsuits, and then groups his allegations against numerous (sometimes more than 100) defendants without specifying which allegations are against any particular defendant.  Many of the Trustee's avoidance claims fail as they do not even attempt to allege the existence of a creditor – a prerequisite for the cause of action.  Finally, at least the Trustee's common law fraud claims are barred by the statute of limitations and must be dismissed.

### A.    The Trustee Has Engaged In Improper Shotgun Pleading.

Rule 8(a)(2) requires the Trustee to set forth "a short and plain statement of the claim

27

showing that the pleader is entitled to relief."   Further, Rule 10(b) requires the Trustee, for purposes of clarity, to state each "separate transaction or occurrence" in a separate count.  The Trustee's use of incorporation by reference, however, makes it impossible to decipher which factual assertions relate to each particular claim and defendant.  The Eastern District of Virginia does not permit such scattershot pleadings.

In *Turton v. Virginia Department of Educuation.*, the district court dismissed plaintiffs' 79 page complaint, which included 27 counts against 40 defendants, finding that it violated Rule 8(a)(2) as it was "the antithesis of 'a short and plain statement of the claim showing that the pleader is entitled to relief'" and was "the quintessential 'shotgun pleading' that presents many different transactions, occurrences, and series of transactions or occurrences and that is presented in such a conclusory form that it is virtually impossible to ascertain what claims are asserted against which defendants and on what legal basis the respective claims are founded . . . ."  No. 3:14cv446, 2014 WL 12539403 (E.D. Va. Sep. 23, 2014).   Similarly, in *Negron-Bennett v. McCandless*, the district court dismissed a complaint that incorporated in each count all of the preceding 170 paragraphs because it was "a classic example of a 'shotgun pleading' . . . . replete with factual allegations that could not possibly be material to each specific count, and that any allegations that are material are buried beneath numerous pages of rambling irrelevancies." No. 1:13cv387, 2013 WL 3873659, at *4 (E.D. Va. July 24, 2013), *aff'd*, 572 F. App'x 246 (4th Cir. 2014).

Here, the Trustee's shotgun pleading is even more convoluted than those in *Turton* and *Negron-Bennett*.  For example, Count 76 incorporates 1073 paragraphs by reference and is asserted against at least 20 named defendants, including individuals, companies, and trustees, as

well as against 50 John Doe defendants.  Other than the incorporated paragraphs, the entirety of

the allegations under the actual Count are wholly conclusory:

> 1074. Plaintiff repeats and realleges its allegations set forth in the above paragraphs.
>
> 1075. The wrongdoing and inequitable conduct of each Defendant as described above injured unsecured and other creditors and necessitates that the Defendant Claims be subordinated to the claims of all other creditors of the Debtors pursuant to Bankruptcy Code section 510(c) and the equitable powers of the Court.
>
> 1076. As a result of the Defendants' breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, receipt of fraudulent and preferential transfers, inequitable conduct, conspiracy, and other wrongdoing, pursuant to Bankruptcy Code section 510(c), the Court should equitably subordinate each of the Defendant Claims in their entirety, including without limitation, each of the Defendant Claims seeking contribution or indemnity from any of the Debtors, until all other claims against the Debtors have been satisfied in full.

[Compl. at ¶¶ 1074-1076.]  As in most of the Counts, the Trustee makes no attempt to link any of

the factual allegations in the preceding 195 pages of the Complaint to any particular defendant or

transaction or occurrence.

Other Counts, such as Counts 65-66, are asserted against all of the defendants, including

over 100 diverse parties.  As highlighted in the co-defendants' motion to dismiss, the Complaint

describes "at least twenty-two separate and distinct transactions, occurrences or series of

transactions or occurrences" and violates Rule 10(b) by incorporating them into each Count.

[Dkt. No. 33 at 6-8; Dkt. No. 33-2.]  These transactions or occurrences took place at different

places, at different times, and involve numerous different claims, including breaches of fiduciary

duties, negligence, gross negligence and waste of corporate assets committed by officers,

directors and stockholders of HDL (many of which have nothing to do with the Bluewave

Defendants), a variety of alleged fraudulent transfers, and multiple alleged acts of common law

fraud, interference with contract and civil conspiracy.  Because of these deficiencies, it "is essentially impossible to separate the legally significant from the legally insignificant facts in this factual background and then to match them with claims purportedly made in the Complaint," and, therefore, the Court should dismiss the Complaint in its entirety.  *Negron-Bennett*, 2013 WL 3873659, at *4.

**B.      It Is Not Sufficient For The Trustee Simply To Incorporate By Reference Other Pleadings From Separate Cases.**

To make matters worse, in Count 71 the Trustee incorporates by reference the entirety of the Amended Aetna Complaint.  [Compl. at ¶ 1045.]  Courts, however, routinely prohibit this sort of wholesale incorporation of pleadings from separate actions because they violate Rules 8 and 10.  *See Davis v. Bifani*, No. 07CV00122MEHBNB, 2007 WL 1216518, at *1 (D. Colo. Apr. 24, 2007) ("the Court does not believe that it is proper to incorporate by reference wholesale the allegations in a complaint in a completely separate action, even if that action is between the same parties"); *see also Eleson v. Lizarraga*, No. 215CV0216GEBEFBP, 2016 WL 80950, at *1-2 (E.D. Cal. Jan. 7, 2016) (dismissing plaintiff's complaint for violating Rule 8 because incorporating filings in a separate lawsuit did not "set forth his averments in a simple, concise, and direct manner"); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 301 F.R.D. 487, 492–93 (C.D. Cal. 2014) ("courts typically hold that Rule 10(c) does not allow a party to adopt pleadings from a wholly separate action, even if that action is between the same parties"); *Tex. Water Supply Corp. v. R.F.C.*, 204 F.2d 190, 196–97 (5th Cir. 1953) ("Rule 10(c) . . . permits references to pleadings and exhibits in the same case, but there is no rule permitting the adoption of a cross-claim in a separate action in a different court by mere reference.").

Allowing the Trustee to incorporate an entirely separate complaint unduly complicates this matter and creates procedural problems.  The Amended Aetna Complaint, which was filed

more than a year ago, includes 88 paragraphs of allegations.  Further, it references the *Qui Tam*

Complaint, which includes another 244 paragraphs.  This totals 332 paragraphs in addition to the

1042 paragraphs that the Complaint also incorporates from its preceding allegations.  This is an

obvious Rule 8 violation.  There is nothing short or plain about a claim that incorporates 1374

paragraphs extending across multiple separate lawsuits.  In fact, it raises procedural concerns

regarding how the Bluewave Defendants can even answer and amend their responses since the

Amended Aetna Complaint is a fluid document.  For these reasons, the Court should dismiss the

Complaint.

### C.     There Cannot Be A State Law Claim Against The Bluewave Defendants Absent Some Contact With That State.

At least Counts 5, 6, 7, 8, 9, 10, 12, 42, 43, 44, 45, 46, 49, 50, and 73 fail because they do

not allege any facts that could allow each Bluewave Defendant to determine any connection

between them and any particular state.  This is important so that the Bluewave Defendants can

know which state's law applies to each claim asserted against them.  *See Clarke v. E.I. Dupont*

*de Nemours & Co.*, No. 3:12-CV-00711-JAG, 2012 WL 8499878, at *2 (E.D. Va. Oct. 22,

2012), *aff'd sub nom. Clarke v. E.I. Dupont DeNemours & Co. Inc.*, 515 F. App'x 201 (4th Cir.

2013) (holding that *Iqbal* requires a plaintiff to clearly identify his legal claim and the basis

under law for that claim).  In Virginia, choice of law principles dictate that, "for the tort of

fraudulent conveyance courts apply the substantive law of the place of the wrong, a principle

known as *lex loci delicti.*"  *McCarthy v. Giron*, No. 1:13-CV-01559-GBL, 2014 WL 2696660, at

*10-11 (E.D. Va. June 6, 2014) (citing *Terry v. June*, 420 F. Supp.2d 493, 503 (W.D. Va. 2006)).

Further, "[t]he place of the wrong for choice of law purposes is the place where the last event

necessary to make an actor liable for an alleged tort takes place."  *Id.* (quoting *Quillen v. Int'l*

*Playtex Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986)).

31

Here, the Trustee's best attempt at alleging a connection between a Bluewave Defendant and a particular state falls short.   The Trustee alleges that "[c]ertain of the Shareholder Distributions were transferred to bank accounts in Texas, Georgia, Alabama, Washington and/or Minnesota."   [Compl. at ¶ 502.][17]   But this bare "and/or" contention does not give notice to any individual Bluewave Defendant of their alleged connection to a particular state.   Instead, the Bluewave Defendants and the Court are left to guess which of them are alleged to have bank accounts in particular states and therefore have that particular state's law apply.   For this reason, the Court should dismiss Counts 5, 6, 7, 8, 9, 10, 12, 42, 43, 44, 45, 46, 49, 50, and 73.

**D.     The Trustee's Actual Fraud Claims Fail For Engaging In Improper Group Pleading.**

The Trustee's fraudulent conveyance claims based on actual fraud, including at least Counts 1, 3, 5, 7, 9, 11, 37, 39, 41, 43, and 45, all fail due to improper group pleading.   Claims for fraudulent conveyance based on actual fraud must comply with Rule 9(b).   *See In re Anderson & Strudwick*, No. 14-32679-KLP, 2015 WL 1651146, at *10 (Bankr. E.D. Va. Apr. 8, 2015) (quoting *In re James River Coal Co.*, 360 B.R. 139, 162 (Bankr. E.D. Va. 2007)) ("[I]f a fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers, it has been pled with sufficient particularity to satisfy [Rule 9(b)].").

Group pleading against defendants "collectively do not satisfy the particularity require of Federal Rule of Civil Procedure 9(b)."   *Girgis v. Salient Sols., Inc.*, No. 1:11-CV-1287, 2012 WL 2792157, at *12 (E.D. Va. July 9, 2012) (citing *Feeley v. Total Realty Mgmt.*, 660 F.Supp.2d 700, 705 (E.D. Va. 2009)).   Pleading against multiple defendants cannot satisfy Rule 9(b)'s requirement that the who, what, where, why, and when of the fraud be specified.   *See In Re PEC*

---

[17]         The Trustee makes similar allegations in Paragraphs 491, 502, 512, 523, 546, 836, 847, and 856.

32

*Sols. Sec. Litig.*, No. 03-CV-331, 2004 WL 1854202, at *4 (E.D. Va. May 25, 2004), *aff'd sub nom. In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir. 2005) (citing *In re First Union Corp. Sec. Litig.*, 128 F.Supp.2d 871, 886 (W.D. N.C. 2001)).

Here, all of the Trustee's actual fraud claims are asserted against more than 20 named defendants and in some instances over 50 named defendants, as well as against 50 John Doe defendants. A representative sample of the Trustee's allegations of fraud is as follows:

> At least four "badges of fraud" apply to the transfers of the BlueWave Payments to the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants: (i) the transfers were made initially to BlueWave, Dent, and Johnson, who conspired with the insiders, directors, and officers of HDL to exercise dominion and control over HDL; (ii) the transfers of the BlueWave Payments were made at the same time substantial new liabilities and debts were being incurred through continuation of the improper P&H Program, the BlueWave Agreement itself, and the Patient Responsibility Collection Practice; (iii) given the enormous liabilities that the use of BlueWave as a percentage-based commission sales agent created for HDL, HDL received no value or consideration in exchange for the transfers of the BlueWave Payments; and (iv) HDL was or became insolvent at the time of the BlueWave Payments.

[Compl. at ¶ 422.] This allegation is made against more than 50 named defendants and 50 John Doe defendants. It is impossible for the Bluewave Defendants to untangle the Trustee's group pleading and determine the fraudulent acts of which they are each accused. For this reason, the Court should dismiss Counts 1, 3, 5, 7, 9, 11, 37, 39, 41, 43, and 45.

## E.   The Trustee's Conspiracy Claims Are Barred By The Statute Of Limitations.

The Trustee's common law and statutory conspiracy claims are barred by the applicable

statutes of limitations.[18]   The statute of limitations for conspiracy is five years.[19]   *Palaxar Group*

*v. Williams*, 2014 WL 5059286, at \*8 (M.D. Fla. Oct. 2, 2014) (citing *Detrick v. Panalpina, Inc.*,

108 F.3d 529, 543 (4th Cir. 1997)).   In Virginia, the statute of limitations for a civil cause of

action for conspiracy accrues when a plaintiff "first suffer[s] any damages resulting from the acts

committed in furtherance of the conspiracy."   *Jones v. Shooshan*, 855 F. Supp. 2d 594, 602 (E.D.

Va. 2012) (quoting *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997)).   The Virginia

Supreme Court has explained that a cause of action for conspiracy under the Virginia statute

begins to run when a business incurs "*some*, if not all, the damages resulting from the alleged

conspiracy.   A right of action accrues when *any* damage, however slight, is sustained."

*Eshbaugh v. Amoco Oil Corp.*, 360 S.E.2d 350, 351 (Va. 1987) (emphasis in original).

The Trustee asserts that it was the defendants' concerted actions "that caused catastrophic

injury and damage to the Debtors' businesses," [Compl. at ¶¶ 964, 970] and this conspiracy

began "with the formation of HDL" and consisted of a "continued and persistent course of

conduct."   [*Id.*]   HDL is alleged to have been formed in late 2008.   [*Id.* at ¶ 2.]   Therefore, the

statute of limitations expired in late 2013.   This case was not filed until September 16, 2016.

Plaintiff cannot escape the time bar merely because the alleged conspiracy continued into the

limitations period.   *See Palaxar Group*, 2014 WL 5059286, at \*8 ("In Virginia, only the slightest

injury is required to start the running of the limitations period . . . It is of no consequence that the

amount of damages was not ascertainable until a later date.") (quoting *Int'l Surplus Lines Ins.*

---

[18]       These claims are found in at least Counts 59, 60, 72, and 73.

[19]       "It is elemental that the statute of limitations applicable to state law claims before a Federal court under the
doctrine of pendent jurisdiction is the limitations period of the state in which the court sits."   *Reid v. Madison*, 455 F.
Supp. 1066, 1068 (E.D. Va. 1978).

*Co. v. Mash & McLennan, Inc.*, 838 F.2d 124, 129 (4th Cir. 1988)).  Therefore, the Court should dismiss Counts 59, 60, and 72.

<u>**CONCLUSION**</u>

For the above stated reasons, the Bluewave Defendants respectfully request the Court dismiss the Trustee's Complaint pursuant to Rule 12(b)(6), with prejudice, and that it grant such other relief as is equitable and just.

Respectfully submitted,

/s/ Jesse N. Silverman
Dated: January 13, 2017         Jesse N. Silverman (VA I.D. 46456)
                                Joshua D. Wolson
                                Jennifer L. Maleski
                                **DILWORTH PAXSON LLP**
                                1500 Market Street, Suite 3500E
                                Philadelphia, PA 19102

                                *Attorneys for Bluewave Healthcare*
                                *Consultants, Inc., et al.*

35

## CERTIFICATE OF SERVICE

The undersigned counsel for *Bluewave Healthcare Consultants, Inc.*, *et al.* hereby certifies that on January 13, 2017, the foregoing document was served upon the Service List, as defined in the Court's *Order Establishing Certain Post-Confirmation Notice, Case Management, and Administrative Procedures* [Docket No. 1261], via e-mail or first class mail if no e-mail addresses was available.


/s/ Jesse N. Silverman
Jesse N. Silverman