IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN RE: | HEALTH DIAGNOSTIC LABORATORY, INC., *et al*., | Case No. 15-32919 Chapter 11 (Jointly Administered) |
| | Debtors. | |

_____

RICHARD ARROWSMITH, as Liquidating
Trustee of the HDL Liquidating Trust,

      Plaintiff,

v.

                                        APN No. 16-03271

LATONYA S. MALLORY, *et al.*,

      Defendants.

_____

## **MEMORANDUM OPINION**

Before the Court in this adversary proceeding are thirteen motions[1] filed by various

individual Defendants and groups of Defendants seeking to dismiss (the "Motions to Dismiss")

---

[1] The Motions to Dismiss under consideration are: Motion of Defendants Leah Bouton *et al.* to Dismiss Complaint Pursuant to Rules 8, 9, 10, 20, and 41, Fed. R. Civ. P., *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Nov. 21, 2016), ECF No. 32; Defendants Advanced Medical Sales LLC, *et. al.'s* Motion to Dismiss Pursuant to Rules 8, 9, 10, 20, and 41, Fed. R. Civ. P., *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Nov. 22, 2016), ECF No. 35; Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants Patrick W. Colberg, Nicole Finn, Leigha Stream, EELLS Consulting, Inc. and Medcentric, LLC, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Dec. 16, 2016), ECF No. 75; Bouton Motion to Dismiss, *In re Health Diagnostic Laboratory, Inc*., No. 16-03271 (Bankr. E.D. Va. Dec. 16, 2016), ECF No. 78; JP Cornwell, Inc. and Jeffrey "Boomer" Cornwell's Motion to Dismiss Adversary Proceeding Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or Alternatively Motion to Sever Pursuant to Rule 21 of the Federal Rules of Civil Procedure, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 100; Scott Mallory's Motion to Dismiss, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 102; Motion to

the Complaint (the "Complaint")[2] of Richard Arrowsmith in his capacity as Liquidating Trustee

of the HDL Liquidating Trust (the "Liquidating Trustee").[3]   The Motions to Dismiss are brought

pursuant to Rules 7008, 7009, 7012, and 7041 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rule(s)").   The issues presented by the Motions to Dismiss are whether the

Liquidating Trustee's lengthy Complaint (i) provides fair notice of the claims being brought

against each of the 103 named Defendants, (ii) pleads fraud with sufficient particularity, (iii)

states sufficient facts to present plausible claims for which relief can be granted, and (iv)

complies generally with the Bankruptcy Rules.   A hearing on the Motions to Dismiss was held

on June 8, 2017 (the "Hearing"), at which time the Court took the matter under advisement.   For

the reasons set forth below, the Court will deny the Motions to Dismiss in part and grant the

Motions to Dismiss in part.

---

Dismiss of Defendants BlueWave Healthcare Consultants, Inc. *et. al.* Pursuant to Rule 12(b)(6), *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 103; G. Russell Warnick's Motion to Dismiss and Memorandum of Law in Support, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 106; Latonya S. Mallory's Motion to Dismiss, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 108; Karl F. Warnick and Kristan Warnick in their capacity as Trustees of the Warnick Family 2012 Irrevocable Trust, the Warnick Family LLC and Warnick Management, LLC's Motion to Dismiss, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 110; Motion of Janet Mallory Curtin, in her capacity as Trustee of the Latonya Mallory 2012 Irrevocable Trust to Dismiss Complaint, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Jan. 13, 2017), ECF No. 114; Motion of Defendants Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, Tipton Golias in his capacity as Trustee of the Wyndell L. Golias Voting Trust, Robert S. Galen, Noel D. Bartlett, Jr., Eric Petersen, David Mayes, John Tessler, and Pamela Oates to Dismiss in Part, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Mar. 1, 2017), ECF No. 178; Motion of Defendants Galen Associates, Inc. and Helena Laboratories Corporation to Dismiss All Counts Against Them, *In re Health Diagnostic Laboratory, Inc.*, No. 16-03271 (Bankr. E.D. Va. Mar. 15, 2017), ECF No. 195.

[2] The Complaint asserts 76 causes of action against 103 named defendants.   The Complaint, spanning nearly 1100 paragraphs and more than 300 pages with exhibits, alleges that the defendants conspired to operate a fraudulent and illegal business model.

[3] The confirmed Modified Second Amended Plan of Liquidation of the Debtors appointed Richard Arrowsmith as the Liquidating Trustee of the HDL Liquidating Trust in the jointly administered chapter 11 cases of Health Diagnostic Laboratory, Inc., Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC.   The Liquidating Trustee is the successor for all purposes of the Debtors.

**The Bankruptcy Case**

On June 7, 2015 (the "Petition Date"), Health Diagnostic Laboratory, Inc., Central Medical Laboratory, LLC, and Integrated Health Leaders, LLC ("HDL" or the "Debtors") commenced bankruptcy cases (the "Bankruptcy Cases") by each filing a separate voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")[4] in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court").[5] On June 16, 2015, the United States Trustee for the Eastern District of Virginia appointed the statutory committee of unsecured creditors (the "Committee").

HDL operated an accredited, full service clinical laboratory that provided testing of biomarkers for the indication of risk for cardiovascular disease, diabetes, and other illnesses. HDL's testing services offered physicians the ability to detect major health issues in patients before potentially life-threatening events occurred. HDL processed lab tests it received from physicians all around the country.

On September 17, 2015, the Court entered an Order (I) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interest, (III) Authorizing the Assumption and Sale and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief (the "Sale Order"). The Sale Order authorized the sale of substantially all of the Debtors' assets to True Health Diagnostics,

---

[4] *See* 11 U.S.C. §§ 1101–1174. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

[5] On June 9, 2015, the Court entered an order authorizing the joint administration of the Bankruptcy Cases.

LLC ("True Health") under the terms of an Asset Purchase Agreement ("APA"). The transaction under the APA closed on September 29, 2015 (the "Closing Date").[6]

The Court confirmed the Debtors' Modified Second Amended Plan of Liquidation (the "Plan") by an order entered May 12, 2016 (the "Confirmation Order").[7] The HDL Liquidating Trust was formed in accordance with the terms of the Plan on the Effective Date.[8] Pursuant to the Plan, 11 U.S.C. § 1123, and the trust agreement executed to implement the Plan, the HDL Liquidating Trust is the successor of the Debtors and the Committee.[9] In addition, a number of creditors transferred their own creditor causes of action to the HDL Liquidating Trust in accordance with the Plan.[10] The Liquidating Trustee commenced this adversary proceeding on September 16, 2016.

### Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. The causes of action asserted for (i) the avoidance of fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) & (B)[11] and 11

---

[6] Section 3.1 of the APA provided for a Seller's Release in favor of True Health and certain of its employees named therein who were employees of True Health as of the filing of the Complaint. A number of defendants claim that they are beneficiaries of the release, which provides them with a complete defense to the Complaint.

[7] *See In re Health Diagnostic Laboratory, Inc., et al.*, Case No. 15-32919-KRH (Bankr. E.D. Va. Aug. 17, 2016), EFC No. 1095.

[8] The Plan became effective on May 12, 2016 (the "Effective Date"). *See* Notice of Confirmation of Chapter 11 Plan at 1, *In re Health Diagnostic Laboratories, Inc.*, No. 15-32919 (Bankr. E.D. Va. May 14, 2016) ECF No. 1106.

[9] Section 6.5(a)(12) of the Plan grants the Liquidating Trustee the power and charges the Liquidating Trustee with the duty of pursuing claims of the Debtors, the estates and the Creditors' Committee defined in section 1.76 of the Plan.

[10] Certain creditor causes of action were transferred to the Liquidating Trust pursuant to section 1.16 of the Plan. The assigning creditors include Aetna and Cigna along with twenty-eight other creditors with claims totaling $4,049,114.47

[11] Counts 1, 2, 13, 14, 35, 37, and 38.

U.S.C. § 544(b)[12] (ii) the avoidance of employment contracts under 11 U.S.C. § 548(a)(1)(B)(ii)(IV),[13] (iii) the recharacterization of loans and shareholder infusions,[14] (iv) the avoidance of preferential transfers under 11 U.S.C. § 547,[15] (v) objection to proofs of claim under 11 U.S.C. §§ 502, 503, and 507,[16] and (vi) equitable subordination under 11 U.S.C. § 510(c)[17] are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), (H) and (O). To the extent that the causes of action asserted for (i) breach of fiduciary duty,[18] (ii) violation of the trust fund doctrine,[19] (iii) aiding and abetting breach of fiduciary duty,[20] (iv) conspiracy,[21] (v) unlawful distributions,[22] (vi) corporate waste,[23] (vii) negligence and gross negligence,[24] (viii) assumpsit and unjust enrichment,[25] (ix) fraud and constructive fraud,[26] (x) tortious interference with contract,[27] and (xi) declaratory relief[28] may be non-core proceedings as described in 28

---

[12] Counts 3-12, 15-20, 30-33, 36, and 39-50.

[13] Counts 21 and 22.

[14] Counts 29 and 34.

[15] Counts 51 and 52.

[16] Count 75.

[17] Count 76.

[18] Counts 53, 54, 56, and 57.

[19] Count 55.

[20] Count 58.

[21] Counts 59, 60, 72 and 73.

[22] Count 61.

[23] Count 62.

[24] Counts 63 and 64.

[25] Counts 65 and 66.

[26] Counts 67 and 68.

[27] Counts 69, 70, and 71.

U.S.C. § 157(b)(2) because they arise under applicable nonbankruptcy law, such proceedings are "related to" the bankruptcy case and the Court may issue proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1).  *See* Memorandum Opinion, *Arrowsmith v. Mallory, et al. (In re Health Diagnostic Laborartory, Inc.)*, No. 3:17-cv-399-HEH, 3:17-cv-400-HEH, 3:17-cv-409-HEH (E.D. Va. July 19, 2017) ECF No. 8.

The test for determining post-confirmation "related to" jurisdiction is whether a claim has a "close nexus" to the bankruptcy plan or proceeding such that it affects an integral aspect of the bankruptcy process.  *Valley Historic Ltd. P'ship of N.Y.*, 486 F.3d 831, 836-37 (quoting *In re Resorts Int's Inc.,* 372 F.3d 154, 167 (3d Cir. 2004)) ("[M]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.").  Matters that are integrated into a debtor's plan as a means of recovery for the debtor's creditors are such matters, even if they are referenced in the plan generally rather than specifically. *See Air Cargo, Inc. Litig. Tr. v. i2 Techs., Inc. (In re Air Cargo, Inc.)*, 401 B.R. 178 (Bankr. D. Md. 2008) (holding that adjudication of the lawsuit brought by the litigation trustee to recover funds for satisfaction of creditor claims necessarily affects the implementation, consummation, execution and administration of the plan, even though the assignment of the claims to the litigation trust was general rather than specific); *In re Railworks Corp.*, 325 B.R. 709 (Bankr. D. Md. 2005).

All of the claims asserted by the Liquidating Trustee that arise under applicable nonbankruptcy law including those alleged for assumpsit and unjust enrichment,[29] for fraud and

---

[28] Count 74.

[29] Counts 65 and 66.

constructive fraud against the assigning creditors,[30] for tortious interference with contracts and

contract expectancy of assigning creditors,[31] and for common law and statutory conspiracy

asserted by assigning creditors[32] are an integral part of the Plan.  The prosecution of those

claims by the Liquidating Trustee affects the implementation, consummation, execution and

administration of the Plan.[33]  *See Lain v. Erickson*, No. WDQ-11-3736, 2013 WL 6490263 (D.

Md. Dec. 9, 2013) (finding the court had subject matter jurisdiction over liquidating trustee's

recovery of a state law claim because the claim was provided for in the plan, was being

prosecuted by a trust created by the plan, would bring recovery to the debtors' creditors if

successful, and the claim arose pre-petition); *see also Bos. Reg'l Med. Ctr., Inc. v. Reynolds (In*

*re Bos. Reg'l Med. Ctr., Inc.),* 410 F.3d 100, 106 (1st Cir. 2005) (explaining that the rationale

for distinguishing between plans of reorganization and liquidation is that a reorganized debtor

maintains a tangential relationship with the bankruptcy proceedings, while a liquidating debtor

exists for the singular purpose of executing an order of the bankruptcy court, and any litigation

involving such debtor relates much more directly to a proceeding under Title 11).  All of the

claims asserted in the Complaint under applicable nonbankruptcy law arose pre-petition, are

significant assets of the Debtors' estate, and are brought by the Liquidating Trustee.  As there

exists a close nexus between those claims and the Plan and the Bankruptcy Cases, the Court has

"related to" subject matter jurisdiction over the claims.

Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

---

[30] Counts 67 and 68.

[31] Counts 69 and 70.

[32] Counts 71 and 72.

[33] The Plan and Confirmation Order provide that the Liquidating Trustee be given sole authority and responsibility to prosecute the Litigation Claims, and define, in pertinent part, that such Litigation Claims include "claims for overpayments, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract, and civil conspiracy, whether under federal law or the laws of any state . . . ."  *See* Plan, Sections 6.4, 6.5.

**The Parties**

*The Plaintiff*

Plaintiff, Richard Arrowsmith, is the Liquidating Trustee of the HDL Liquidating Trust. In such capacity, he has asserted claims that were held by the Debtors. Those claims became property of the Debtors' bankruptcy estate under 11 U.S.C. § 541 on the Petition Date. The claims now belong to the HDL Liquidating Trust as the Debtors' successor-in-interest under the confirmed Plan. The Liquidating Trustee has also asserted claims that were held by creditors of the Debtors that were assigned to the HDL Liquidating Trust in accordance with the Plan.

*The Shareholder Defendants*

LaTonya S. Mallory ("Mallory") was a co-founder of HDL. She owned 8.9048% of HDL's stock as of the Petition Date. Mallory served as Chief Executive Officer of HDL from its formation in 2008 through September 2014. She served as chairman of the HDL Board of Directors from HDL's formation in 2008 through the end of 2014. Scott Mallory, the husband of Mallory, owned 6.0021% of HDL's stock as of the Petition Date. The Complaint refers to Mallory and Scott Mallory as the Mallory Defendants (the "Mallory Defendants").

G. Russel Warnick ("Warnick") was a co-founder of HDL. Warnick owned 7.6236% of HDL's stock as of the Petition Date. He served as Chief Scientific Officer of HDL since November 2009. Warnick served as a director of HDL beginning in 2011 and continuing through the bankruptcy case. Karl F. Warnick, Kristan Warnick, and Warnick, in their capacities as Trustees of The Warnick Family 2012 Irrevocable Trust, owned 7.2834% of HDL's stock. The Complaint refers to Warnick, and Karl F. Warnick, Kristan Warnick, and

Warnick in their capacities as Trustees of The Warnick Family 2012 Irrevocable Trust, as the Warnick Defendants (the "Warnick Defendants").[34]

Tipton Golias was HDL's largest stockholder.  He owned 38.4795% of HDL's stock as of the Petition Date.  Joseph Golias, Donald Golias, Karla Falgout, and Tipton Golias, in his capacity as Trustee of The Wyndell L. Golias Voting Trust were also shareholders of HDL.  The Complaint refers to Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, and Tipton Golias, in his capacity as Trustee of The Wyndell L. Golias Voting Trust, as the Golias Family Shareholders (the "Golias Family Shareholders").  The Golias Family Shareholders collectively owned more than half of HDL's stock.

Robert S. Galen ("Galen") owned 1.0420% of HDL's stock as of the Petition Date and served as a director on the HDL Board of Directors beginning in early October 2014 and continuing through the bankruptcy case.  Galen served as a consulting Medical Director of Helena Laboratories.  Galen Associates, Inc. ("Galen Associates") is a Delaware corporation owned by Galen.  The Complaint refers to Galen and Galen Associates as the Galen Defendants (the "Galen Defendants").

Noel D. Bartlett, Jr.[35] ("Bartlett") is the Chief Financial Officer of Helena Laboratories Corporation ("Helena Laboratories").  David Mayes ("Mayes") is the brother-in-law of Tipton Golias.  He is also an employee of Helena Laboratories.  Bartlett and Mayes each owned 0.2605% of HDL's stock as of the Petition Date.

---

[34] The Complaint refers to Mallory, McConnell (defined below), and Warnick as the D&O Defendants (the "D&O Defendants").

[35] Bartlett owned 0.2605% of HDL's stock as of the Petition Date and served as a member of the HDL Board of Directors beginning in early October 2014 and continuing through the bankruptcy case.

Eric Petersen ("Petersen") and John Tessler ("Tessler") were employees of Helena Laboratories. They each owned 0.2605% of HDL's stock as of the Petition Date.

Pamela Oates ("Oates") was an employee of Helena Laboratories. She owned 0.0532% of HDL's stock as of the Petition Date.

Floyd Calhoun Dent, III ("Dent") and Robert Bradford Johnson ("Johnson") are the co-founders of BlueWave Healthcare Consultants, Inc. ("BlueWave"). Dent and Johnson each owned 1.5630% of HDL's stock as of the Petition Date.[36]

### Defendant Helena Laboratories Corporation

Helena Laboratories is a Texas corporation founded by Tipton Golias. Helena Laboratories is owned by Tipton Golias, who serves as the Chairman of its board of directors and as its Chief Executive Officer. Helena Laboratories is alleged to be an affiliate of HDL.

### The BlueWave Defendants

BlueWave is an Alabama corporation co-founded by Dent and Johnson ("Johnson"). BlueWave served as the sales agent and marketing consultant for HDL. The Complaint refers to BlueWave, Dent, and Johnson as the BlueWave Defendants (the "BlueWave Defendants").

### The BlueWave Sales Representative Defendants

Leah Bouton ("Bouton"), Thomas Carnaggio ("Carnaggio"), Kevin Carrier ("Carrier"), Jerry Carroll ("Carroll"), John Coffman ("Coffman"), Patrick Colberg ("Colberg"), Jeffrey "Boomer" Cornwell ("Cornwell"), Kristin Dukes ("Dukes"), Jason Dupin ("Dupin"), Seneca Garrett ("Garrett"), Leigha Greenwood ("Greenwood"), Erika Guest ("Guest"), Julie Harding ("Harding"), Robert B. "Burt" Lively ("Lively"), Heather Lockhardt ("Lockhardt"), Courtney

---

[36] The Complaint refers to the Mallory Defendants, the McConnell Defendants, the Warnick Defendants, the Golias Family Shareholders, Dent, Johnson, Galen, Bartlett, Petersen, Mayes, Tessler, Oates, and Rangarajan as the Shareholder Defendants (the "Shareholder Defendants").

Love ("Love"), Charles Maimone ("Maimone"), Kyle Martel ("Martel"), David Pember ("Pember"), Lee Roberts ("Roberts"), Michael H. Samadani ("Samadani"), Jennifer Speer ("Speer"), Nicole Tice ("Tice"), and Robert E. Younger ("Younger") were independent sales representatives for BlueWave that marketed and sold HDL tests to health care providers and doctors.

The Complaint refers to Bouton, Carnaggio, Carrier, Carroll, Coffman, Colberg, Cornwell, Dukes, Dupin, Garrett, Greenwood, Guest, Harding, Lively, Lockhardt, Love, Maimone, Martel, Pember, Roberts, Samadani, Speer, Tice, and Younger as the BlueWave Sales Representative Defendants (the "BlueWave Sales Representative Defendants").

*Major Sales Contractor Defendants*

HisWay Of South Carolina, Inc. ("HisWay"), Royal Blue Medical Inc. ("Royal Blue"), and RBLIV Consulting, Inc. ("RBLIV") are South Carolina corporations.  Dent is the owner of HisWay.  Johnson is the owner of Royal Blue.

Southhill Consulting Group, Inc., formerly known as The Med Group of Georgia, Inc., is a Georgia corporation ("Southhill").  Southeast Healthcare Consultants LLC is a South Carolina limited liability company ("Southeast").   JP Cornwell Inc. is a Texas corporation ("JP Cornwell").

The Complaint refers to HisWay, Royal Blue, RBLIV, Southhill, Southeast, and JP Cornwell as the Major Sales Contractor Defendants ("Major Sales Contractor Defendants"). Each of the Major Sales Contractor Defendants is alleged to have been an independent contractor for BlueWave and a major seller of HDL tests to health care providers and doctors.

11

*The Blue Wave Transferee Defendants*

Remember Pember Inc. is an Alabama corporation ("Remember Pember").  MRT Health

Consultants Inc. is an Alabama corporation ("MRT").  Disease Testing & Management LLC is a

Florida limited liability company ("DDT&M").  Coffman Enterprises Inc. is a Texas corporation

("Coffman Enterprises").   Christo Consulting Corp. is a Texas corporation ("Christo

Consulting").   Lockhardt Consulting Inc. is a Texas corporation ("Lockhardt Consulting").

Medcentric LLC is a Nevada limited liability company ("Medcentric").  Med-Con-EC LLC is a

North Carolina limited liability company ("Med-Con-EC").   Meade Medical Group, LLC is a

Kentucky limited liability company ("Meade Medical").  Labyrinth LLC is a Maryland limited

liability company ("Labyrinth").   JBH Marketing, Inc. is a Washington corporation ("JBH

Marketing").   Advanced Medical Consulting LLC is a Missouri limited liability company

("Advanced Medical Consulting").

Paramount Medical Consultants Inc. is an Idaho corporation ("Paramount Medical").

Advanced Medical Sales, L.L.C. is a Michigan limited liability company ("Advanced Medical

Sales").  Quasi Maturi LLC is a New Jersey limited liability company ("Quasi Maturi").  Ocean

Diagnostics & Consulting, LLC is a Florida limited liability company ("Ocean Diagnostics").

M. Looney Consulting Inc. is a Texas corporation ("M. Looney").  Southern Coast Consultants,

LLC is a North Carolina limited liability company ("Southern Coast Consultants").  El Medical

Consulting Inc. is an Illinois corporation ("El Medical Consulting").

DX Sales, LLC is an Indiana limited liability company ("DX Sales").  Metta Consulting

Inc. is a California corporation ("Metta Consulting").  WCBLUE Lab LLC is a California

limited liability company ("WCBLUE").  Beyond Medicine LLC is a Missouri limited liability

company ("Beyond Medicine").  MML Equipment Inc. is an Oklahoma corporation ("MML

Equipment"). Bio-Matrix Healthcare Consultants, LLC is a South Carolina limited liability company ("Bio-Matrix Healthcare"). Nibar Health Consultants, Inc. is an Arizona corporation ("Nibar"). Infinity Medical Consulting LLC is a Nevada limited liability company ("Infinity"). EELLS Consulting Inc. is a Colorado corporation ("EELLS"). Cobalt Healthcare Consultants Inc. is an Alabama corporation ("Cobalt").

AROC Enterprises LLC is a South Carolina limited liability company ("AROC"). Crosspoint Properties LLC is a South Carolina limited liability company ("Crosspoint"). Helm-Station Investments LLLP is a Nevada limited liability limited partnership ("Helm-Station"). Dent is a member of AROC, Crosspoint, and Helm-Station.

Riverland Pines LLC is a South Carolina limited liability company ("Riverland Pines"). Lakelin Pines LLC is a South Carolina limited liability company ("Lakelin Pines"). Trini "D" Island LLC is a South Carolina limited liability company ("Trini D"). Dent's wife, Christina Dent, is a member of Riverland Pines, Lakelin Pines, and Trini D.

CAE Properties LLC is a South Carolina limited liability company ("CAE"). Dent's father, Floyd C. Dent, Jr., is a member of CAE.

Blue Eagle Farm, LLC is an Alabama limited liability company ("Blue Eagle Farm"). Blue Eagle Farming LLC is an Alabama limited liability company ("Blue Eagle Farming"). Forse Medical Inc. is an Alabama corporation ("Forse Medical"). Forse Investments, LLC is an Alabama limited liability company ("Forse Investments"). Eagle Ray Investments LLC is an Alabama limited liability company ("Eagle Ray"). War-Horse Properties, LLLP, is a Nevada limited liability limited partnership ("War-Horse"). H J Farming, LLC is an Alabama limited liability company ("H J Farming"). Blue Smash Investments, LLC is an Alabama limited liability company ("Blue Smash"). Johnson is member of Blue Eagle Farm, Blue Eagle

13

Farming, Forse Investments, Eagle Ray, War-Horse, H J Farming, and Blue Smash. Johnson is an officer and/or director of Forse Medical.[37]

*The Mallory Trust and the Warnick Entity Defendants*

Janet Mallory Curtin is the Trustee of The LaTonya Mallory 2012 Irrevocable Trust (the "Mallory Trust"). The Mallory Trust is alleged to be an immediate or mediate transferee of payments made by HDL to the Mallory Defendants.

The Warnick Family, LLC and Warnick Management, LLC are Virginia limited liability companies. They are each alleged to be an immediate or mediate transferee of payments made by HDL to the Warnick Defendants. The Complaint refers to the Warnick Family, LLC and Warnick Management, LLC as the Warnick Entity Defendants (the "Warnick Entity Defendants").

*The Settling Defendants*

Joseph P. McConnell ("McConnell") was a co-founder of HDL and owned 12.8336% of HDL's stock as of the Petition Date. McConnell served as Chief Medical Officer of HDL. He took over from Mallory as Chief Executive Officer in September 2014. McConnell served as a director of HDL beginning in June 2009 and continuing through the bankruptcy case. Paula Sue Bowman, in her capacity as Trustee of The Joseph P. McConnell 2012 Irrevocable Trust, owned 2.0734% of HDL's stock as of or shortly after the Petition Date. The Complaint refers to

---

[37] The Complaint refers to Remember Pember, MRT, DDT&M, Coffman Enterprises, Christo Consulting, Lockhardt Consulting, Medcentric, Med-Con-EC, Meade Medical, Labyrinth, JBH Marketing, Advanced Medical Consulting, Paramount Medical, Advanced Medical Sales, Quasi Maturi, Ocean Diagnostics, M. Looney, Southern Coast Consultants, El Medical Consulting, DX Sales, Metta Consulting, WCBLUE, Beyond Medicine, MML Equipment, Bio-Matrix Healthcare, Nibar, Infinity, EELLS, Cobalt, AROC, Riverland Pines, Crosspoint, Helm-Station, Lakelin Pines, Trini D, CAE, Blue Eagle Farm, Blue Eagle Farming, Forse Medical, Forse Investments, Eagle Ray, War-Horse, H J Farming, Blue Smash, together with the Major Contractor Defendants, as the BlueWave Transferee Defendants ("BlueWave Transferee Defendants").

14

McConnell and Paula Sue Bowman, in her capacity as Trustee of The Joseph P. McConnell 2012 Irrevocable Trust, as the McConnell Defendants (the "McConnell Defendants").

Satyanarain Rangarajan ("Rangarajan") was a co-founder and Chief Operating Officer of HDL. He had owned 5.1% of HDL's stock, but HDL repurchased his stock in 2013. Dennis M. Ryan ("Ryan") became HDL's executive vice president on or about March 31, 2012.

The McConnell Defendants, Rangarajan, and Ryan have settled with the Liquidating Trustee and are no longer parties to this case. *See* Memorandum Opinion, *Warnick, et al. v. Arrowsmith*, No. 3:16-CV-876, 3:16-CV-877 (E.D. Va. July 14, 2017), ECF No. 44.

### *The Doe Defendants*

The Liquidating Trustee also names individuals of whom he is unaware,[38] but who have received a payment made by HDL to BlueWave as an immediate or mediate transferee (the "Doe Defendants").

### **Factual Allegations**

The Liquidating Trustee is seeking to recover losses caused to the Debtors and their creditors as a result of certain illegal and fraudulent business practices in which he alleges HDL engaged. The Liquidating Trustee's overarching allegation is that from the inception of HDL certain former officers, directors, and shareholders, with the assistance of the co-founders of BlueWave, intentionally and knowingly pursued a business model that was fraudulent and illegal. The Liquidating Trustee contends that the BlueWave Defendants, the Major Sales Contractor Defendants, and the BlueWave Sales Representative Defendants were instrumental in carrying out the fraudulent HDL scheme by marketing and inducing health care providers to choose HDL's laboratory and testing services. The Liquidating Trustee seeks to recover all transfers of money that were obtained by HDL through its alleged fraudulent business model to

---

[38] The Liquidating Trustee is unaware of their true names or capacities.

the named Defendants.  The Liquidating Trustee also seeks recovery for various breach of

fiduciary duty claims, common law causes of action, and statutory causes of action.

The Liquidating Trustee alleges that HDL relied on three improper and illegal business

practices (collectively, the "Illegal Business Practices").  First, HDL paid processing and

handling fees of $17 or more to health care providers, which exceed the $3 maximum fee

allowed under Medicare (the "P&H Program").  The Liquidating Trustee asserts that the P&H

Program violated the federal Anti-Kickback statute, 42 U.S.C. § 1320(a)-7(b)(1)(A) (the

"AKS"), and other state anti-kickback statutes.  Second, HDL entered into a sales agreement

with BlueWave that paid a percentage-based commission of HDL's sale revenue (the

"BlueWave Agreement").  The Liquidating Trustee asserts that this Illegal Business Practice

also violated the AKS.  Finally, the Liquidating Trustee asserts that HDL established an Illegal

Business Practice of not collecting co-payments, co-insurance payments, and deductibles from

patients for HDL's testing in violation of the AKS and Civil Monetary Penalties Law, 42 U.S.C.

§ 1320a-7a (the "Patient Responsibility Collection Practice").

The Liquidating Trustee further asserts that the officers, directors, and many of the

shareholders were aware that HDL's Illegal Business Practices violated federal and state law,

but ignored all warnings.  The Liquidating Trustee also asserts that BlueWave was the

instrumentality that HDL used to expand its alleged fraudulent business.  The Liquidating

Trustee contends that each of the named Defendants were connected to and instrumental in

perpetuating HDL's alleged fraud.

The Liquidating Trustee seeks to recover transfers made to the various Defendants.  In

particular, he seeks to recover: approximately $123.2 million in distributions to or for the benefit

of the Shareholder Defendants from April 2011 to May 2015 (the "Shareholder Distributions");

16

approximately $25 million that was paid to directors and officers ("D&O Compensation"); and $6,898,661 that was paid in 2010, $21,005,337 that was paid in 2011, $71,974,994 that was paid in 2012, $66,294,464 that was paid in 2013, and $53,976,744 that was paid in 2014 to BlueWave (collectively, the "BlueWave Payments") pursuant to the BlueWave Agreement.  The Liquidating Trustee further asserts that each of the Defendants in this action were either the direct, immediate, or mediate transferees of money tainted by HDL's fraudulent Illegal Business Practices.

The Liquidating Trustee further asserts that at all relevant times, HDL was insolvent, undercapitalized, and had incurred debts that it lacked the ability to pay.  The Liquidating Trustee asserts that as a result of the Illegal Business Practices, HDL was incurring significant civil liabilities for violations of state and federal law and incurred liabilities to various creditors. The Liquidating Trustee alleges that HDL failed to properly account for these liabilities on its financial statements which made it misleadingly appear that HDL was a solvent company.

### Motions to Dismiss for Failure to Comply with Bankruptcy Rules

Some of the Defendants seek to dismiss the Complaint under Bankruptcy Rule 7041 for failing to comply with the Bankruptcy Rules.  These Defendants argue that the Liquidating Trustee failed to comply with Bankruptcy Rules 7008, 7009, 7010(b), and 7020(a) and, accordingly, the Complaint should be involuntarily dismissed under Bankruptcy Rule 7041(b).

The Court has examined each count in the Complaint.  While the Complaint may be complex and lengthy, the Court finds that the Liquidating Trustee has clearly described the conduct of each different Defendant against whom he seeks relief.  Overall, the Complaint provides a very detailed factual recitation.  Every count clearly and adequately presents the causes of action asserted.  The Complaint describes the alleged conspiracy in its first 39

paragraphs.  The Complaint lays out the Illegal Business Practices that are alleged to have been improper.  The Complaint describes how the U.S. Department of Justice investigation, the alleged self-dealing and the alleged fraudulent transfers led to the financial demise of HDL.  Many individuals are alleged to have been involved in the implementation of HDL's Illegal Business Practices.

The Complaint alleges that the fraudulent business model started at the top with HDL's officers and directors and was carried out by the BlueWave Defendants, the Major Contractor Defendants and the Blue Wave Sales Representatives Defendants who pushed and sold HDL products and services to healthcare providers.  While the underlying acts of the various Defendants may have differed, they are all alleged to be linked.  Together the Defendants are alleged to have furthered the HDL fraudulent scheme.  The Complaint describes the role each Defendant played in the alleged Illegal Business Practices.

Bankruptcy Rule 7010[39] states that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).  The Court notes at the outset that very language of the rule makes the rule permissive rather than mandatory.  The Court finds that the Complaint satisfies the permissive requirements of Bankruptcy Rule 7010(b).

Bankruptcy Rule 7020,[40] permits joinder of defendants in one action "if there is asserted against them . . . any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."  The Supreme Court strongly encourages the joinder of

---

[39] Bankruptcy Rule 7010 incorporates Civil Rule 10(b).

[40] Bankruptcy Rule 7020 incorporates Civil Rule 20(a).

claims, parties and remedies." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (embracing the broadest possible scope of action consistent with fairness to the parties). The Fourth Circuit has held that "Rule 20 grants courts wide discretion concerning the permissive joinder of parties." *Aleman v. Chugach Support Servs. Inc.,* 485 F.3d 206, 218 n.5 (4th Cir. 2007).

Some of the Defendants argue that the Complaint violates Bankruptcy Rule 7020(a) because the Liquidating Trustee is suing on a multitude of transactions and occurrences that are not related to one another. The Court is satisfied that the detailed factual allegations set forth in the Complaint adequately describe how the various Defendants participated in the alleged fraudulent scheme. The Complaint is necessarily lengthy because the fraudulent scheme was complex. The Court finds that the Complaint complies with Bankruptcy Rule 7020(a).

The various factors that a court may consider when evaluating compliance with Bankruptcy Rule 7008(a)[41] include the length and complexity of the complaint, whether the complaint was clear enough to enable the defendants to know how to defend themselves, and whether the parties are represented by counsel. *See Sewarz v. Long, 407 Fed. App'x. 718*, 718-19 (4th Cir. 2011) (setting forth factors for determining whether a complaint complies with Rule 8(a)).

In analyzing the factors, the Court is satisfied that the Complaint meets the requirements of Bankruptcy Rule 7008(a). The Liquidating Trustee alleges that all the various Defendants are cogs in the HDL conspiracy wheel. The Liquidating Trustee specifies in each count who is being sued, for what they are being sued, and the facts that support the causes of action. All of the Defendants are represented by able counsel. The Court is satisfied that this is sufficient to meet the requirements of Bankruptcy Rule 7008(a).

---

[41] Bankruptcy Rule 7008 incorporates Civil Rule 8(a).

Bankruptcy Rule 7009(b)[42] states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Courts relax the standards of Bankruptcy Rule 7009(b) when evaluating the procedural compliance of a complaint filed by an estate representative such as a bankruptcy trustee.  *See In re Collins*, 540 B.R. 54, 59 (Bankr. E.D.N.Y. 2015); *see also In re Barton-Cotton, Inc.*, 2012 Bankr. LEXIS 3114, 2012 WL 2803742, at *3 (Bankr. D. Md. 2012) ("Bankruptcy courts have consistently held that the heightened pleading requirements of Rule 9(b) should be relaxed in cases brought by a third party trustee because of the trustee's inevitable lack of knowledge concerning acts of fraud previously committed against the debtor, a third party.") (quoting *Schwartz v. Kursman (In re Harry Levin, Inc.)*, 175 B.R. 560, 568-68 (Bankr. E.D. Pa. 1994)).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  Indeed, "[t]he purpose of Rule 9(b) is not to create a checklist of information that is required in every case, but, instead, is to be applied on a case-by-case basis in a manner that ensures that 'the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial. . . .'" *Ivey v. First Citizens Bank & Trust Co. (In re Whitley),* No. 12-02028, 2013 WL 486782, *13 (Bankr. M.D.N.C. 2013) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)); *Schnelling v. Crawford (In re James River Coal Co.)*, 360 B.R. 139, 162 (Bankr. E.D. Va. 2007).  The Complaint sets forth sufficient allegations of fact to make the Defendants aware of the particular circumstances that comprise the causes of action for actual

---

[42] Bankruptcy Rule 7009 incorporates Civil Rule 9(b).

and constructive fraud and for the avoidance and recovery of the alleged fraudulent transfers that enable them to prepare a defense for trial.  The Court finds that the Complaint complies with Bankruptcy Rule 7009.  As the Court finds that the Complaint complies with Bankruptcy Rules 7008, 7009, 7010(b), and 7020(a), involuntary dismissal under Bankruptcy Rule 7041 is improper.

### Motions to Dismiss for Failure to State a Claim for Relief

The Defendants uniformly contend that all or a portion of the Complaint should be dismissed under Bankruptcy Rule 7012(b)[43] for failure to state a claim for which relief can be granted.  A complaint must contain a "short and plain statement [for each] of the claim[s asserted] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A party seeking to dismiss a complaint under Bankruptcy Rule 7012(b)(6) has the burden of proving that the factual allegations in the complaint fail to state a claim for relief.  *See Peyton v. Robinson (In re Robinson),* 346 B.R. 172 (E.D. Va. 2006).  "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of a defense." *Lewis v. Beach,* 3:10CV731, 2012 WL 3069409, at *3 (E.D. Va. July 27, 2012) (quoting *Republican Party of N.C .v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1356 (1990)).

For a complaint to survive a Bankruptcy Rule 7012(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When ruling on a motion to dismiss "a judge must accept as true all of the factual allegations contained in the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v.*

---

[43] Bankruptcy Rule 7012 incorporates Civil Rule 12(b).

*Pardus*, 551 U.S. 89, 94 (2007)).  However, a court "need not accept the legal conclusions drawn

from the facts." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180

(4th Cir. 2000) (citing *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991)).  In ruling on a

motion to dismiss, a court can consider documents attached to the motion to dismiss and the

complaint "so long as they are integral to the complaint and authentic."  *Philips v. Pitt Cty.

Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d

523, 526 n.1 (4th Cir. 2006)).

        The Court "must not dismiss a complaint 'unless it appears to a certainty that the plaintiff

would not be entitled to relief under any legal theory which might plausibly be suggested by the

facts alleged." *Harrison v. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (quoting *Canty v.

City of Richmond, Va. Police Dep't*, 383 F. Supp. 1396, 1399 (E.D. Va. 1974)).  In considering

the Motions to Dismiss under Bankruptcy Rule 7012(b)(6), the Court must not only take as true

the factual allegations in the Liquidating Trustee's Complaint but it must also view the

Complaint in the light most favorable to the Plaintiff.  *Bass v. E.I. DuPont de Nemours & Co.,*

324 F. 3d 761, 764 (4th Cir. 2003).

        Various Defendants have advanced a number of affirmative defenses in support of their

Bankruptcy Rule 7012(b)(6) Motions to Dismiss.  The Court can entertain an affirmative defense

in the context of a motion to dismiss only if the defense clearly appears upon the face of the

Complaint.

>       A motion under Rule 12(b)(6) is intended to test the legal adequacy of the
> complaint, and not to address the merits of any affirmative defenses.  In the
> limited circumstances where the allegations of the complaint give rise to an
> affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it
> clearly appears on the face of the complaint. *McCalden v. California Library
> Ass'n*, 955 F.2d 1214, 1219 (9th Cir.), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2306,
> 119 L.Ed.2d 227 (1992); 5A Charles A. Wright & Arthur R. Miller, *Federal
> Practice and Procedure* § 1357, at 348–49 (2d ed. 1990) ("The complaint also is

> subject to dismissal under Rule 12(b)(6) when its allegations indicate the existence of an affirmative defense, but the defense clearly must appear on the face of the pleading." (footnotes omitted)).   Because neither of the asserted defenses appears on the face of the complaint, it is inappropriate to address them in the current posture of the case.   These defenses are more properly reserved for consideration on a motion for summary judgment.

*Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993). Courts have held that statutes of limitations, exculpation,[44] and release[45] are all affirmative defenses.  *See Grunley Walsh U.S., LLC v. Raap,* 386 Fed. Appx. 455, 460 (4th Cir. 2010) ("'[R]elease' is unquestionably a different affirmative defense . . . ."); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 (4th Cir. 2006) ("[T]he statute of limitations is an affirmative defense . . . ."); *In re LandAmerica Fin. Group, Inc.,* 470 B.R. 759, 785 (Bankr. E.D. Va. 2012) (recognizing that the Virginia exculpation statute can be used as an affirmative defense).   The Court does not find that any of these affirmative defenses have been pled on the face of the Complaint, and accordingly, the Court will not consider them in the context of the Motions to Dismiss.

*Causes of Action under the Bankruptcy Code*

The Liquidating Trustee asserts causes of action under 11 U.S.C. § 548(a)(1)(A) for the avoidance of intentional fraudulent conveyances in Count 1 (avoidance of distributions made to

---

[44] The Complaint alleges that the D&O Defendants engaged in willful misconduct.  While the D&O Defendants may be able to assert the exculpation statute as an affirmative defense, such a defense will not apply to willful conduct. *See DCG&T ex rel. Battaglia v. Knight,* 68 F. Supp. 3d 579 (E.D. Va. 2014); *Matson v. Alpert (In re LandAmerica Fin. Grp., Inc.)*, 470 B.R. 759, 786-87 (Bankr. E.D. Va. 2012).

[45] Some of the Defendants claim entitlement to the sellers' release that True Health received in the APA as a "Buyer Released Party."  *See supra* note 6.  The applicability of this affirmative defense is very fact intensive.  Defendants asserting this affirmative defense will be required to prove not only that they were named as a "Buyer Released Party" in the APA, but also that they were employed by True Health at the time the Complaint was filed.  Assertion of this affirmative defense also ignores that the Liquidating Trustee is not only bringing claims that belonged to the seller in his capacity as successor to HDL but also bringing claims that were assigned to the Liquidating Trust by individual creditors.   The injunction included in the Court's Sale Order approving the APA applied only to successors-in-interest of HDL.  The Sale Order could not be interpreted otherwise as 11 U.S.C. § 524 prohibits a court from granting nondebtor third party releases outside of a properly confirmed plan.  *See Behrmann v. Nat'l Heritage Found., Inc.*, 663 F.3d 704 (4th Cir. 2011).

the to Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe

Defendants), Count 13 (avoidance of compensation paid to Mallory, the Mallory Trust, Warnick,

the Warnick Entity Defendants, and the Doe Defendants), and Count 37 (avoidance of the

transfers of the BlueWave Payments by HDL to the BlueWave Defendants, the BlueWave

Transferee Defendants, and the Doe Defendants).

Subsection 548(a)(1)(A) provides for the avoidance of transfers made with the actual

intent to hinder, delay or defraud any entity to which the debtor was or became indebted.  In

order to establish a *prima facie* case under 11 U.S.C. § 548(a)(1)(A), a plaintiff must show that

the debtor made a transfer[46] of an interest of the debtor in property[47] "with actual intent to

hinder, delay, or defraud . . ." creditors.  11 U.S.C. § 548(a)(1)(A).  A plaintiff may establish the

existence of intent "by showing the presence of so-called 'badges of fraud,' those circumstances

surrounding an allegedly fraudulent transfer that are indicative of a debtor's state of mind."

*Huennekens v. The Gilcom Corp. of Va., et al. (In re Sun Sport, Inc.)*, 206 B.R. 88, 110-12

(Bankr. E.D. Va. 2000).  The "badges of fraud" include:

> (1) A relationship between the debtor and the transferee; (2) Lack of consideration
> for the conveyance; (3) Debtor's insolvency or indebtedness; (4) Transfers of
> debtor's entire estate; (5) Reservation of benefits, control, or dominion by the
> debtor; (6) Secrecy or concealment of the transaction; and (7) Pendency or threat
> of litigation at the time of transfer.

*In re Bowen*, 2015 WL 775053, at *3 (Bankr. E.D. Va. Feb. 24, 2015) (citations omitted).  "The

presence of just one of the above listed factors can warrant a court's conclusion that a transfer

---

[46] The term "transfer" is broadly defined in the Bankruptcy Code to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).

[47] "Interest of the debtor in property" is not defined in the Bankruptcy Code, but it has been interpreted to mean "property belongs to the debtor . . . if the transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors."  *See In re Health Diagnostics Laboratory, Inc.,* 2017 WL 1194647, at *8 (Bankr. E.D. Va. Mar. 30, 2017) (citing *In re Merchants Grain by & Through Mahern*, 93 F.3d 1347, 1352 (7th Cir. 1996) (internal quotation omitted)).

was fraudulently made, and, certainly, the presence of several factors 'can lead inescapably to the conclusion that the debtor possessed the requisite intent.'" *Id.* (citation omitted). Fraudulent intent of an officer or director may be imputed to the debtor for purposes of recovering an intentional fraudulent transfer. *See Schnelling v. Crawford, et al. (In re James River Coal Co.)*, 360 B.R. 139, 161 (Bankr. E.D. Va. 2007).

In Count 1, the Liquidating Trustee alleges that the Shareholder Distributions to the Shareholder Defendants and the Doe Defendants constituted transfers of an interest in property of HDL, as money was transferred from HDL's bank accounts to the Shareholder Defendants. The Liquidating Trustee identifies in Exhibit B of the Complaint each of the Shareholder Distributions that he seeks to avoid by payee, date, amount, method of payment, and bank reference numbers.

The Complaint contains factual allegations that plausibly describe four badges of fraud. The Liquidating Trustee alleges that:

> (i) the transfers were to "insiders," including officers, directors, and affiliates of HDL, who exercised dominion and control over HDL; (ii) the transfers of the Shareholder Distributions were made at the same time substantial new liabilities and debts were being incurred through continuation of the improper P&H Program, the BlueWave Agreement, and the Patient Responsibility Collection Practice; (iii) HDL received no value or consideration in exchange for the transfers of the Shareholder Distributions; and (iv) HDL was or became insolvent at the time of the Shareholder Distributions.

Compl. at ¶¶ 92, 93, 432. The Liquidating Trustee alleges that the Mallory Defendants, the Warnick Defendants, Dent, and Johnson were all insiders of HDL due to the close relationships these defendants shared since the formation of HDL.[48] The Liquidating Trustee alleges that

---

[48] The Bankruptcy Code defines the term "insider" at 11 U.S.C. § 101(31). The definition indicates that statutory list is not intended to be exhaustive. A person may be considered to be an insider if there is a closeness of the relationship between the debtor and the transferee and if the transactions between the transferee and the debtor were not conducted at arm's length. *See Hirsch v. Va. Tarricone (In re A. Tarricone, Inc.)*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002).

HDL was incurring substantial new liabilities at the time the Shareholder Distributions were made as a result of the civil liabilities that were accruing as a consequence of HDL's Illegal Practices. The Liquidating Trustee further alleges that HDL received no value or consideration in exchange for the transfers of the Shareholder Distributions. Finally, the Liquidating Trustee alleges in great detail that due to the Illegal Payment Practices, HDL was insolvent, undercapitalized, and was incurring or should have known it was incurring debts that it would be unable to pay. *See* Compl. at ¶¶ 11-16, 341-57. At this juncture, the Court does not access the underlying merit of the factual allegations, but must accept the allegations as true.

In Count 13, the Liquidating Trustee alleges that the D&O Compensation represented transfers of an interest in HDL property, as HDL paid money from its bank accounts to Mallory, Warnick, and Doe Defendants. The Liquidating Trustee identifies in Exhibit C of the Complaint the D&O Compensation that he seeks to avoid by payee, date, amount, method of payment, and bank reference numbers. The Liquidating Trustee alleges that:

> (i) the transfers were to "insiders," including officers, directors, and affiliates of HDL, who exercised dominion and control over HDL; (ii) the transfers of the D&O Compensation were made at the same time substantial new liabilities and debts were being incurred through continuation of the improper P&H Program, the BlueWave Agreement, and the Patient Responsibility Collection Practice; (iii) given the enormous liabilities created for HDL through the conduct of the officers paid the D&O Compensation, HDL received no value or consideration in exchange for the transfers of the D&O Compensation; and (iv) HDL was or became insolvent at the time of each of the transfers of the D&O Compensation.

Compl. at ¶ 553.

In Count 37, the Liquidating Trustee alleges that the BlueWave Payments represented transfers of an interest in HDL property, as HDL transferred money from its bank accounts to the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants. The Liquidating Trustee identifies in Exhibit A of the Complaint the BlueWave Payments that he

seeks to avoid by payee, date, amount, method of payment, and bank reference numbers.  The

Liquidating Trustee alleges that:

> (i) the transfers were made initially to BlueWave, Dent, and Johnson, who
> conspired with the insiders, directors, and officers of HDL to exercise dominion
> and control over HDL; (ii) the transfers of the BlueWave Payments were made at
> the same time substantial new liabilities and debts were being incurred through
> continuation of the improper P&H Program, the BlueWave Agreement itself, and
> the Patient Responsibility Collection Practice; (iii) given the enormous liabilities
> that the use of BlueWave as a percentage-based commission sales agent created
> for HDL, HDL received no value or consideration in exchange for the transfers of
> the BlueWave Payments; and (iv) HDL was or became insolvent at the time of the
> BlueWave Payments.

Compl. at ¶ 778.  Here, the Liquidating Trustee alleges that HDL received little or no value from

the BlueWave Agreement because it was an illegal agreement that significantly contributed to

the liability HDL incurred as a consequence of HDL's Illegal Practices.  The Court finds that the

badges of fraud were plausibly pled for each of Counts 1, 13, and 37.  Accordingly, the Court

finds that the Liquidating Trustee has alleged sufficient facts to properly plead Counts 1, 13, and

37.

The Liquidating Trustee asserts causes of action under 11 U.S.C. § 548(a)(1)(B) for the

avoidance of constructive fraudulent conveyances in Count 2 (avoidance of distributions to

Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe

Defendants), Count 14 (avoidance of compensation to insider defendants Mallory, the Mallory

Trust, Warnick, the Warnick Entity Defendants, and the Doe Defendants, Count 35 (avoidance

of the Mallory Payment to Mallory and the Mallory Trust), and Count 38 (avoidance of the

transfer of the BlueWave Payments to the BlueWave Defendants, the BlueWave Transferee

Defendants, and the Doe Defendants (collectively, the "Constructive Fraudulent Conveyance

Counts").

In order to make out a *prima facie* case under 11 U.S.C. § 548(a)(1)(B) and avoid a transfer of an interest of the debtor in property on account of a constructive fraudulent conveyance, a plaintiff must show that: (1) the debtor received less than a reasonably equivalent value in exchange for such transfer; and (2) the debtor was insolvent[49] at the time of the transfer or became insolvent as a result of the transfer; the debtor was undercapitalized; the debtor intended to incur debts that would be beyond the debtor's ability to pay as such debts matured; or the debtor made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business. *See* 11 U.S.C. 548(a)(1)(B). "The elements of § 548(a)(1)(B) of the Bankruptcy Code involve questions of fact that may not be resolved through a motion to dismiss." *Schnelling v. Crawford, et al. (In re James River Coal Co.)*, 360 B.R. 139, 165 (Bankr. E.D. Va. 2007) (citations omitted).

Even assuming that claims asserted under § 548(a)(1)(B) of the Bankruptcy Code are subject to a Bankruptcy Rule 7012(b)(6) analysis, the Court finds that the Liquidating Trustee has met his pleading burden for the Constructive Fraudulent Conveyance Counts. The Liquidating Trustee has pled sufficient facts to plausibly allege that HDL received less than

---

[49] "Courts generally rely upon the Bankruptcy Code's definition of insolvency for the purposes of [S]ection 548(a)(1)(B)." *In re Ryan*, 472 B.R. 714, 727 (Bankr. E.D. Va. 2012) (citing *In re Bay Vista of Va., Inc.*, 428 B.R. 197, 225 (Bankr. E.D. Va. 2010)).

"Insolvent," as to a corporation, is defined as:

> financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
>
> **(i)** property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> **(ii)** property that may be exempted from property of the estate under section 522 of this title . . . .

11 U.S.C. § 101(32)(A)(i)-(ii).

"reasonably equivalent value" for its transfers.  *See* Compl. at ¶¶ 207-21, 364, 371-384, 388-90.

Additionally, the Trustee has pled the remaining elements of § 548 of the Bankruptcy Code by

alleging that the Debtors were insolvent, undercapitalized, and that Defendants intended to incur

obligations beyond the Debtors' ability to pay once the debts matured.  *See* Compl. at ¶¶ 11-16,

347-57.

The Warnick Entity Defendants and the Mallory Trust assert that Count 2 and Count 14

must be dismissed as to these entities because the Liquidating Trustee failed to identify the time

and circumstance under which the Warnick Defendants or the Mallory Defendants made

transfers to the respective entities.  The Warnick Entity Defendants and Mallory Trust argue that

the Liquidating Trustee simply makes conclusory statements that the entities were the alter egos

of other Defendants and that the entities were "immediate or mediate" transferees.[50]  The

argument lacks merit.  The Liquidating Trustee needs only to provide a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The

implication of the Liquidating Trustee's statement that the Warnick Entity Defendants and the

Mallory Trust were "immediate or mediate" transferees is sufficient to put the parties on notice

that the Liquidating Trustee seeks to recover payments that were made from the Warnick

Defendants and the Mallory Defendants.  The Court is satisfied that the Liquidating Trustee has

met his burden with respect to Count 2 and Count 14 as applied to the Warnick Entity

Defendants and the Mallory Trust.

The Golias Defendants assert that as a matter of law the Liquidating Trustee cannot avoid

transfers for distributions that were made to satisfy HDL's pass-thru tax liability.  The Golias

Defendants assert that courts have held there is "reasonably equivalent exchange of value" when

---

[50] To the extent a transfer is avoided under chapter 5 of the Bankruptcy Code, the Liquidating Trustee is permitted to
seek recovery of the property transferred from the initial transferee or any immediate or mediate transferee of such
initial transferee.  11 U.S.C. § 550(a).

a company pays tax liability when the company is a Sub-chapter S company. *See In re Northlake Foods, Inc.,* 715 F.3d 1251 (11th Cir. 2013). The Liquidating Trustee argues that cases cited by the Golias Defendants are not applicable, as those cases do not involve payments made directly to a shareholder for taxes or to taxing authorities for the benefit of a shareholder for taxes payable on account of an illegal or fraudulent scheme. There is no law in the Fourth Circuit holding that the payment of taxes for shareholders in a Sub-chapter S corporation provides the debtor with reasonably equivalent value. Accordingly, the Court will not rule as a matter of law that HDL received "reasonably equivalent value" for the payments made for taxes payable on account of an illegal or fraudulent scheme. "Reasonably equivalent value" is a question of fact and it is not appropriate for the Court to determine the element at this point. *See generally In re Lindell*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) ("Whether a transfer is made for reasonably equivalent value is a question of fact.") (internal quotation and citation omitted).

The Liquidating Trustee asserts actions for the avoidance of insider employment contracts in Count 21 (avoidance of transfers to insiders under employment contracts outside the ordinary course of business against Mallory, the Mallory Trust, Warnick, the Warnick Entity Defendants, and the Doe Defendants), and Count 22 (avoidance of the Mallory Separation Amount Obligation).

Section 548 of the Bankruptcy Code allows a trustee to avoid transfers when the debtor "received unreasonably equivalent value in exchange for such transfer or obligation . . ." and "made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. §§ 548(a)(1)(B)(i); (a)(1)(B)(ii)(IV). "The term 'ordinary course of business' protects 'recurring, customary credit transactions that are incurred and paid in the ordinary course of

business of the debtor and the debtor's transferee.'" *In re TSIC, Inc.*, 428 B.R. 103, 115 (Bankr. D. Del. 2010). The elements of § 548(a)(1)(B) of the Bankruptcy Code involve the resolution of factual issues that may not be resolved through a motion to dismiss. *Schnelling v. Crawford, et al. (In re James River Coal Co.)*, 360 B.R. at 165 (citations omitted).

Even assuming that claims asserted under § 548(a)(1)(B) of the Bankruptcy Code are subject to a Bankruptcy Rule 7012(b)(6) analysis, the Court finds that the Liquidating Trustee has met his pleading burden for Count 21 and Count 22. The Liquidating Trustee alleges that HDL transferred the D&O Compensation and the monies paid to Mallory under the separation agreement dated January 1, 2015 (the "Mallory Separation Amount"). *See* Compl. at ¶¶ 371-84, 388-90. The Liquidating Trustee asserts that HDL received less than reasonably equivalent value because the Defendants in these counts helped to perpetuate the illegal activity of HDL. Finally, the Liquidating Trustee asserts that the D&O Compensation and the Mallory Separation Amount were paid pursuant to employment contracts that were not in the ordinary course of business. *See id.* Accordingly, the Court is satisfied that the Liquidating Trustee has met his pleading burden with respect to Count 21 and Count 22.

The Liquidating Trustee asserts causes of action for intentional fraudulent conveyances under the laws of various states in Count 5 (avoidance of Shareholder Distributions under Va. Code § 55-80 against the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants), Count 7 (avoidance of Shareholder Distributions under Texas Bus. & Com. Code §§ 24.001 *et. seq*., Georgia Code §§ 18-2-70 *et seq.*, Alabama Code §§ 8-9A-1 *et seq.*, West Virginia Code §§ 40-1A-1 *et seq*., Revised Code of Washington § 19.40.011 *et seq*., and Minnesota Statutes §§ 513.41 *et seq*. against the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants),

Count 9 (avoidance of Shareholder Distributions under S.C. Code § 27-23-10 against the

Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe

Defendants), Count 11 (avoidance of Shareholder Distributions under New York Debtor and

Creditor Law §§ 273 and 274), Count 17 (avoidance of transfers of compensation to insiders

under Va. Code § 55-80 against Mallory, the Mallory Trust, Warnick, the Warnick Entity

Defendants, and the Doe Defendants), Count 19 (avoidance of transfers of compensation to

insiders under Revised Code of Washington § 19.40.011 *et seq.* and Minnesota Statutes

§§ 513.41 *et seq.*, against Mallory, the Mallory Trust, Warnick, the Warnick Entity Defendants,

and the Doe Defendants), Count 41 (avoidance of transfer of the BlueWave Payments under

Va. Code § 55-80 against the BlueWave Defendants, the BlueWave Transferee Defendants,

and the Doe Defendants), Count 43 (avoidance of transfer of the BlueWave Payments under

Texas Bus. & Com. Code §§ 24.001 *et. seq.*, Georgia Code §§ 18-2-70 *et seq.*, Alabama Code

§§ 8-9A-1 *et seq.*, West Virginia Code §§ 40-1A-1 *et seq.*, Revised Code of Washington

§ 19.40.011 *et seq.* and Minnesota Statutes §§ 513.41 *et seq.* against the BlueWave Defendants,

the BlueWave Transferee Defendants, and the Doe Defendants), Count 45 (avoidance of

transfer of the BlueWave Payments under S.C. Code § 27-23-10 against the BlueWave

Defendants, the BlueWave Transferee Defendants, and the Doe Defendants), and Count 49

(avoidance of obligations under the BlueWave Agreement under Va. Code § 55-80 against

BlueWave) (collectively, the "State Law Actual Fraudulent Conveyance Counts").

Under 11 U.S.C. § 544(b), a "trustee may avoid any transfer of an interest of the debtor

in property or any obligation incurred by the debtor that is voidable under applicable law by a

creditor holding an unsecured claim that is allowable under section 502 of this title . . . ."  11

U.S.C. § 544(b); *see also Arrowsmith v. Lemberg Law, LLC, et al. (In re Health Diagnostics*

*Laboratory, Inc.)*, APN No. 16-03252, 2017 WL 1194647, at *9 (Bankr. E.D. Va. Mar. 30, 2017) (citing *In re Meyer*, 244 F.3d 352, 355 (4th Cir. 2001)). Section 544(b) allows a trustee to stand in the shoes of the debtor's creditors and bring causes of action that the creditors could have brought if the debtor had not filed for bankruptcy. A trustee can recover a transfer that is avoidable under § 544 from "the initial transferee of such transfer . . . or any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

In Counts 5, 17, 41 and 49, the Liquidating Trustee brings causes of action under Virginia Code § 55-80. Virginia Code § 55-80 allows for the avoidance of transfers and incurred obligations made "with intent to delay, hinder or defraud creditors . . . ." Va. Code Ann. § 55-80. Fraudulent intent can be presumed if the "badges of fraud" are present. *See Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 589 (4th Cir. 2015) (citing *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277 (2011)). The knowledge of an officer or director may be imputed to a corporation under Virginia law. *See Atlantic Trust & Deposit Co. v. Union Trust & Title Corp.*, 111 Va. 69 S.E. 975, 977 (1911) ("There is no other way of bringing knowledge home to a corporation except through its officers and agents; and knowledge acquired by such officers or agents in transactions affecting their business and employment must be regarded as actual notice to the corporation.").

In Counts 7, 19, and 43, the Liquidating Trustee seeks to avoid transfers from HDL to certain Defendants under the law of certain states that have adopted the Uniform Fraudulent Transfers Act (the "UFTA"). These states include Texas, Georgia, Alabama, West Virginia, Washington, and Minnesota (collectively, the "UFTA States"). The fraudulent transfer acts of each of the UFTA States require the same showing for a fraudulent transfer as required under 11 U.S.C § 548. *See Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 666 (S.D. Tex. 2007);

*Fluarty v. Duet (In re Summit III, LLC)*, 2014 WL 1203211, at *3 (Bankr. N.D.W. Va. 2014) (addressing motion to dismiss arguments for West Virginia's UFTA and § 548 claims concurrently); *In re LendXFinancial, LLC*, 2012 WL 1597394, at *7 (Bankr. N.D. Ga. Mar. 19, 2012); *In re Bellingham Ins. Agency, Inc.*, 2011 WL 12873354, at *4 (W.D. Wash. Jan. 21, 2011); *In re Terry Mfg. Co., Inc.*, 363 B.R. 233, 236 (Bankr. M.D. Ala. 2007).

In Counts 9 and 45, the Liquidating Trustee seeks to avoid transfers from HDL to certain Defendants under South Carolina law.  South Carolina law allows for the avoidance of a transfer made with "intent or purpose to delay, hinder, or defraud creditors . . . ."  S.C. Code § 27-23-10(A).  Fraudulent intent can be presumed if one or more badges of fraud are present. *See First Citizens Bank and Trust Co. v. Park at Durbin Creek, LLC*, 419 S.C. 333, 340-41 (S.C. Ct. App. 2017).

In Count 11, the Liquidating Trustee seeks to avoid the transfers of the Shareholder Distributions from HDL to the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants under New York law.  New York allows for avoidance of "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  N.Y. Debtor and Creditor Law § 276. Fraudulent intent may be presumed if the badges of fraud are found.  *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir. 2005).

For the same reasons the Court addressed in considering the avoidance of intentional fraudulent conveyances under the Bankruptcy Code in connection with Counts 1, 13, and 37,[51] the Court finds that the State Law Actual Fraudulent Conveyance Counts have been adequately pled by the Liquidating Trustee.  The Liquidating Trustee has identified the various transfers

---

[51] *See supra* pgs. 24-27.

that he seeks to avoid in the Exhibits to his Complaint.  Under each of the State Law Actual Fraudulent Conveyance Counts, intent can be inferred if the "badges of fraud" are present.  As discussed above, the Court finds that the Liquidating Trustee has adequately pled four "badges of fraud."  The Court also finds that the immediate and mediate transferee liability was properly pled.

The Liquidating Trustee asserts causes of action for constructive fraudulent conveyances under the laws of various states in Count 6 (avoidance of Shareholder Distributions under Va. Code § 55-81 against the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants), Count 8 (avoidance of Shareholder Distributions under Texas Bus. & Com. Code §§ 24.001 *et. seq.*, Georgia Code §§ 18-2-70 *et seq.*, Alabama Code §§ 8-9A-1 *et seq.*, West Virginia Code §§ 40-1A-1 *et seq.*, Revised Code of Washington § 19.40.011 *et seq.* and Minnesota Statutes §§ 513.41 *et seq.* against the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants, Count 10 (avoidance of Shareholder Distributions under S.C. Code § 27-23-10 against the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants), Count 12 (avoidance of Shareholder Distributions under New York Debtor and Creditor Law §§ 273 and 274), Count 18 (avoidance of transfers of compensation to insiders under Va. Code § 55-81 against Mallory, the Mallory Trust, Warnick, the Warnick Entity Defendants, and the Doe Defendants), Count 20 (avoidance of transfers of compensation to insiders under Revised Code of Washington § 19.40.011 *et seq.* and Minnesota Statutes §§ 513.41 *et seq.*, against Mallory, the Mallory Trust, Warnick, the Warnick Entity Defendants, and the Doe Defendants), Count 31 (avoidance of Golias Double Payment under Va. Code § 55-81 against Tipton Golias), Count 32 (avoidance of Golias Double Payment under Texas Bus. & Com. Code §§ 24.001 *et seq.* against

Tipton Golias), Count 33 (avoidance of Golias Double Payment[52] under New York Debtor and Creditor Law §§ 273 and 274), Count 36 (avoidance of Mallory Payment under Va. Code § 55-81 against Mallory and/or the Mallory Trust), Count 42 (avoidance of transfer of the BlueWave Payments under Va. Code § 55-81 against the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants), Count 44 (avoidance of transfer of the BlueWave Payments under Texas Bus. & Com. Code §§ 24.001 *et. seq*., Georgia Code §§ 18-2-70 *et seq.*, Alabama Code §§ 8-9A-1 *et seq.*, West Virginia Code §§ 40-1A-1 *et seq*., Revised Code of Washington § 19.40.011 *et seq*. and Minnesota Statutes §§ 513.41 *et seq*. against the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants), Count 46 (avoidance of transfer of the BlueWave Payments under S.C. Code § 27-23-10 against the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants), and Count 50 (avoidance of obligations under the BlueWave Agreement under Va. Code § 55-81 against BlueWave) (collectively, the "State Law Constructive Fraudulent Conveyance Counts").

In Counts 6, 18, 31, 36, 42, and 50 (the "Virginia Constructive Fraudulent Conveyance Counts"), the Liquidating Trustee asserts causes of action against various Defendants under Virginia law.  Virginia Code § 55-81 allows for the avoidance of transfers or incurred obligation "which [are] not upon consideration deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent . . . ."  Va. Code Ann. § 55-81.  "Not upon consideration deemed valuable in law" has not been interpreted by the Virginia Supreme Court, but has been interpreted by the Fourth Circuit to mean "that something of value must be gained . . . [and] explicitly found that the consideration does not have to be reasonably equivalent to what is being given up."  *Wellington Apartment, LLC v. Clotworthy, et al. (In re Wellington Apartment, LLC)*, 350 B.R. 213, 245 (Bankr. E.D. Va. 2006) (citing *C-T of Virginia v. Euroshoe*

---

[52] The Golias Double Payment is defined as "the $7,300,000 paid to Tipton Golias by HDL on December 29, 2011."

*Associates*, No, 91–1578, 1992 WL 12307, at *1–3, (4th Cir. Jan. 29, 1992); *C-T of Virginia v.*
*Euroshoe Assoc.*, 765 F. Supp. 675 (W.D. Va. 1991)).  "Although the value and sufficiency of
that benefit is a question of fact, as long as something was gained, that is enough to prevent
avoidance of the transaction under Virginia Code § 55-81."  *Schnelling v. Crawford, et al. (In re*
*James River Coal Co.),* 360 B.R. at 167.   An entity is considered insolvent when it has
insufficient property to pay all of its debts.  *See Hudson v. Hudson*, 249 Va. 335, 340-41 (1995)
("A debtor is insolvent, within the meaning of Code § 55-81, when he has insufficient property
to pay all his debts. . . .   In order to prove insolvency, both the value of the debtor's assets and
the amount of his liabilities must be established. . . .") (internal citations omitted).

   While the Virginia standard of "not upon consideration deemed valuable in law" is a
considerably more stringent standard than "unreasonably equivalent value," it remains a
question of fact.   In Count 6, the Liquidating Trustee alleges that HDL did not receive
consideration deemed valuable at law from the Shareholder Defendants in exchange for the
Shareholder Distributions.  In Count 18, the Liquidating Trustee alleges HDL did not receive
consideration deemed valuable at law from Mallory or Warnick for the D&O Compensation
because the conduct of the officers caused HDL to incur significant liabilities.  In Count 31, the
Liquidating Trustee incorporates Count 29 for recharacterization of the March 1, 2010 Note and
the Golias Double Payment as equity.  Accordingly, the Liquidating Trustee asserts that HDL
did not receive consideration deemed valuable at law from Tipton Golias for the Golias Double
Payment.  In Count 36, the Liquidating Trustee alleges that HDL made the Mallory Payment to
Mallory without receiving consideration in return.  In Counts 42 and 50, the Liquidating Trustee
asserts that the BlueWave Agreement was an illegal contract and that precluded HDL from
receiving consideration deemed valuable at law from BlueWave.  The Court is satisfied that the

Liquidating Trustee has adequately pled that HDL was insolvent at the time of these transfers. The Court finds that the Liquidating Trustee has alleged facts sufficient to plead plausible causes of action under Virginia Code § 55-81.

In Counts 8, 20, 32, and 44, the Liquidating Trustee seeks to avoid transfers from HDL to certain Defendants under the laws of the UFTA States. The fraudulent transfer acts of each of the UFTA States require the same showing for a constructive fraudulent transfer as required under 11 U.S.C. § 548(a)(1)(B). *See Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 666 (S.D. Tex. 2007); *Fluarty v. Duet (In re Summit III, LLC)*, 2014 WL 1203211, at *3 (Bankr. N.D.W. Va. 2014) (addressing motion to dismiss arguments for West Virginia's UFTA and § 548 claims concurrently); *In re LendXFinancial, LLC*, 2012 WL 1597394, at *7 (Bankr. N.D. Ga. Mar. 19, 2012); *In re Bellingham Ins. Agency, Inc.*, 2011 WL 12873354, at *4 (W.D. Wash. Jan. 21, 2011); *In re Terry Mfg. Co., Inc.*, 363 B.R. 233, 236 (Bankr. M.D. Ala. 2007). For the reasons articulated in the Court's discussion of Counts 2, 14, 35, and 38, the Court is satisfied that the Liquidating Trustee has adequately plead plausible claims for constructive fraudulent conveyances.

In Counts 10 and 46, the Liquidating Trustee seeks to avoid transfers from HDL to certain Defendants under South Carolina law. South Carolina law recognizes a cause of action for constructive fraudulent conveyances. For a constructive fraud claim, a party must establish:

> (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*In re Genesis Press, Inc.*, 559 B.R. 445, 453 (Bankr. D.S.C. 2016) (interpreting S.C. Code § 27-23-10 to include a cause of action for constructive fraud) (internal citation omitted).

In Counts 10 and 46, the Liquidating Trustee alleges that HDL had general unsecured creditors at the time of the Shareholder Distributions and the BlueWave Payments. The Liquidating Trustee further alleges that the transfers of the Shareholder Distributions and the BlueWave Payments were voluntary and made to bank accounts located in South Carolina. Finally, the Liquidating Trustee adequately alleges that HDL was insolvent at the time of the Shareholder Distributions and the BlueWave Payments. The Court is satisfied that the Liquidating Trustee has met his pleading burden with respect to Counts 10 and 46.

In Counts 12 and 33, the Liquidating Trustee seeks to avoid transfers from HDL to certain Defendants under New York Debtor and Creditor Law §§ 273 and 274. New York allows for avoidance of transfers made without fair consideration by an insolvent debtor or by a debtor rendered insolvent thereby. *See* N.Y. Debtor and Creditor Law § 273 ("Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."). A trustee must show the debtor: "(1) conveyed the property to the transferee; (2) without fair consideration; and (3) thereby was rendered insolvent." *In re Flutie N.Y. Corp.,* 310 B.R. 31, 52 (Bankr. S.D.N.Y. 2004). "Fair consideration is given for property, or obligation (1) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (2) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property, or obligation obtained." *Id.* (citing N.Y. Debtor and Creditor Law § 272). New York law also allows for the avoidance of a transfer when a debtor is engaged in business and the transfer leaves the debtor undercapitalized. *See* N.Y. Debtor and

Creditor Law § 274 ("Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.").

Counts 12 and 33 recite plausible causes of action for constructive fraudulent conveyances. The Liquidating Trustee has adequately pled that HDL transferred an interest in property; HDL did not receive fair consideration for the transfer; and the transfer left HDL insolvent. The Court finds that the Liquidating Trustee has met his pleading burden in respect to Counts 12 and 33.

The Liquidating Trustee asserts causes of action under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3304, for the avoidance of actual and constructive fraudulent transfers in Counts 3 and 4 (avoidance of the distributions made to the Shareholder Defendants, the Mallory Trust, the Warnick Entity Defendants, and the Doe Defendants), Counts 15 and 16 (avoidance of compensation paid to Insider Defendants Mallory, the Mallory Trust, Warnick, the Warnick Entity Defendants, and the Doe Defendants), Count 30 (avoidance of the transfer of the Golias Double Payment to Tipton Golias), Counts 39 and 40 (avoidance of the transfer of the BlueWave Payments to the BlueWave Defendants, the BlueWave Transferee Defendants, and the Doe Defendants), and Counts 47 and 48 (avoidance of the obligations incurred under the BlueWave Agreement) (collectively, the "FDCPA Counts").

As a threshold matter, the Court must determine whether 28 U.S.C. § 3304 is "applicable law" for purposes of 11 U.S.C. § 544(b)(1). The Court finds the well-reasoned decision in *Hillen v. City of Many Trees, LLC, et al. (In re CVAH, Inc.)*, No. 14-00888-JDP, AP No. 15-06030-

JDP, AP No. 15-06031-JDP, AP No. 15-06046-JDP, AP No. 16-06014, 2017 WL 1684119

(Bankr. D. Idaho 2016) to be instructive.    Concluding that 28 U.S.C. § 3304 was such

"applicable law," the Court in *In re CVAH, Inc.* recognized that "a significant majority of the

courts that have considered the question agree that a bankruptcy trustee may utilize the FDCPA

under § 544(b)(1) . . . ."    *Id*. at *7.    The court conducted an extensive statutory analysis of 28

U.S.C. § 3304 in reaching its decision.    *See id.*    Neither the Bankruptcy Code nor 28 U.S.C.

§ 3304 impose any restrictions on a bankruptcy trustee's use of the statute to avoid transfers.    *See

id*. at *7-*9.    Further, the Supreme Court has held that the employment of an analogous term,

"applicable nonbankruptcy law," in 11 U.S.C. § 541(c)(2) "encompasses any relevant

nonbankruptcy law, including federal law . . . ."    *Id*. at *6 (quoting *Patterson v. Shumate*, 504

U.S. 753, 759 (1992)).    The Court concludes that 28 U.S.C. § 3304 is "applicable law" for

purposes of 11 U.S.C. § 544(b)(1).    The Liquidating Trustee may step into the shoes of the

United States under 11 U.S.C. § 544(b)(1) and utilize the transfer avoidance provisions of the

FDCPA.

    The elements for actual and constructive fraudulent conveyance actions under 28 U.S.C.

§ 3304(b)(1) are nearly identical to the elements for actual and constructive fraudulent

conveyance actions under § 548(a)(1) of the Bankruptcy Code.[53]    In the FDCPA Counts, the

---

[53] *Compare* 28 U.S.C. § 3304(b)(1) ("[A] transfer made or obligation incurred by a debtor is fraudulent as to a debt
to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the
debtor makes the transfer or incurs the obligation . . . (A) with actual intent to hinder, delay, or defraud a creditor; or
(B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor-- (i) was
engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were
unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably
should have believed that he would incur, debts beyond his ability to pay as they became due.") *with* 11 U.S.C.
§ 548 ("The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . if the
debtor voluntarily or involuntarily . . . (A) made such transfer or incurred such obligation with actual intent to
hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was
made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in
exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such
obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business
or a transaction, or was about to engage in business or a transaction, for which any property remaining with the

Liquidating Trustee alleges that the United States was an unsecured creditor at the time of the relevant transfers due to the liabilities that HDL was incurring as part of its illegal business practices.  The Liquidating Trustee has adequately pled the elements for actual and constructive fraudulent transfers.  The Court is satisfied that the Liquidating Trustee has met his pleading burden with respect to the FDCPA Claims.

In Counts 29 and 34, the Liquidating Trustee seeks to recharacterize loans made to HDL by Tipton Golias, and Mallory and the Mallory Trust as equity investments.  The Fourth Circuit has recognized that it is within the bankruptcy court's equitable powers to recharacterize loans made by shareholders to a corporation as equity investments.  *See Fairchild Dornier GmbH v. Official Comm. Of Unsecured Creditors (In re Donier Aviation (N. Am.), Inc.)*, 453 F.3d 225, 232-33 (4th Cir. 2006).  A bankruptcy court may consider the following factors when determining whether it should recharacterize a loan:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

*Id.* at 233.  The inquiry is highly fact dependent and none of the factors are dispositive.  *See id.*

The Court is satisfied that the Liquidating Trustee has met his pleading burden in stating a plausible claim for relief in Count 29.  The Liquidating Trustee alleges that a Note made March 1, 2010 payable to Tipton Golias (the "Golias Note") did not require the payment of any interest. The Golias Note did not have a fixed maturity date. The obligation to repay the Golias Note was

---

debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . . .").

based on the success of HDL's business.  No sinking fund was established for its repayment. The Liquidating Trustee alleges that the Golias Double Payment was used to repay the Golias Note. The Liquidating Trustee contends that the totality of the circumstances warrant the recharacterization of the transaction as an equity distribution.  Nothing prevents the Liquidating Trustee from recharacterizing the transaction merely because the loan was repaid.  Accordingly, the Liquidating Trustee has adequately pled an action for recharacterization.

In Count 34, the Liquidating Trustee alleges that the repayment of a Note dated February 4, 2014 executed in favor of Mallory and the Mallory Trust (the "Mallory Note") was dependent on the ability of HDL to generate sufficient funds.  The Mallory Note was subordinated to HDL's senior bank lender. No sinking fund was established for repayment of the Mallory Note. The Liquidating Trustee alleges that the Mallory Payment was used to repay Mallory Note.  The Liquidating Trustee contends that the totality of the circumstances warrant the recharacterization of the transaction as an equity distribution.

In Count 51, the Liquidating Trustee seeks to avoid and recover preference payments made on or within 90 days of the Petition Date from the D&O Defendants, the Galen Defendants, Bartlett, the Mallory Trust, the Warnick Entity Defendants, the Shareholder Defendants, Helena Laboratories, and the Doe Defendants.  Under section 547(b) of the Bankruptcy Code, a trustee must:

> (1) identify the nature and amount of each antecedent debt and each alleged preferential transfer by date, name of debtor/transferor, name of transferee, and amount of the transfer and (2) state such transfers (a) were made within 90 days or, if to an insider, within one year prior to petition date; (b) on account of antecedent debt; (c) while the debtor was insolvent; (d) allowed creditors to receive more than they would have received under liquidation; and, with respect to insiders, state that the transfer was (e) to, or for, benefit of insiders, and otherwise sufficiently pled insider status.

*Schnelling v. Crawford, et al. (In re James River Coal Co.)*, 360 B.R. at 168; s*ee also* 11 U.S.C. § 547(b). The Liquidating Trustee can recover a preference payment from an "initial transferee" or "the entity for whose benefit such transfer was made," or from an "immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550. The Court is satisfied that the Liquidating Trustee has pled each of these elements with respect to each of the Defendants.

In Count 52, the Liquidating Trustee seeks to avoid and recover preference payments made to insiders between 90 days and one year of the Petition Date from the D&O Defendants, the Galen Defendants, Bartlett, the Mallory Trust, the Warnick Entity Defendants, the BlueWave Defendants, the BlueWave Transferee Defendants, Tipton Golias, Helena Laboratories, and the Doe Defendants. In addition to the elements necessary to make out a *prima facie* case under Count 51, the Liquidating Trustee must also establish that the defendants named in Count 52 were "insiders" of HDL. *See* 11 U.S.C. § 547(b) ("[T]he trustee may avoid any transfer of an interest of the debtor in property . . . between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider . . . .").

Many of the Defendants argue in their Motions to Dismiss that they do not meet the definition of an "insider" under 11 U.S.C. § 101(31)(B), and thus Count 52 must be dismissed as to them. When a debtor is a corporation, the definition of "insider" includes the corporation's directors, officers, persons in control of the debtor, and relatives of the aforementioned. 11 U.S.C. § 101(31)(B). The Court has noted previously that the use of the word "includes" in the definition of the term "insider" renders the definition as a non-exhaustive list. *See id*. ("The term 'insider' *includes* . . . .") (emphasis added). The courts have adopted a "control" test for determining whether a person can be considered an "insider." The test in the Fourth Circuit is that "the alleged insider 'must exercise sufficient authority over the debtor so as to unqualifiably

44

dictate corporate policy and the disposition of corporate assets.'" *In re Starlight Group, LLC*, 531 B.R. 611, 635 (Bankr. E.D. Va. 2015) (citing *Butler v. David Shaw, Inc.*, 72 F.3d 437 (4th Cir. 1996) (quoting *Hunter v. Babcock (In re Babcock Dairy Co.)*, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986))).   In his Complaint, the Liquidating Trustee alleges facts as to each of the Defendants named in Count 52 that describes a relationship that allowed the Defendant to influence HDL's corporate policy and disposition of its assets.   As the Court must accept the Liquidating Trustee's asserted facts as true, dismissal is not warranted.

Scott Mallory argues that the transfers that were made to him as specifically identified on Exhibits D and E are each less than the $5,000 statutory minimum imposed by 11 U.S.C. § 547(c)(9) and thus Counts 51 and 52 should be dismissed as to him.   The Liquidating Trustee asserts that he has met the statutory minimum because he has alleged that Scott Mallory has liability under 11 U.S.C. § 550 for the preference actions alleged against Mallory and the aggregate amount of the preference actions exceed $5,000.   Section 547(c)(9) specifically states that the statutory minimum is based on the "aggregate value of all property . . . ."   11 U.S.C. § 547(c)(9).   As the aggregate value that Scott Mallory received is a question of fact, it is not appropriate to dismiss the preference counts against him at this stage of the proceedings.

In Count 75, the Liquidating Trustee seeks to disallow the claims and requests for payment of administrative expenses from the Mallory Defendants, Warnick, the Galen Defendants, BlueWave, Helena Laboratories, the Golias Family Shareholders, Petersen, Mayes, Tessler, Oates, and the Doe Defendants.

Under section 502(a) of the Bankruptcy Code, a creditor must file a claim in order to be paid from a bankruptcy estate.   *See* 11 U.S.C. § 502(a).   The claim is deemed an allowed claim as long as no objection is filed to it by a party in interest.   *See id.*   A party in interest can object to a

claim under one of the grounds set forth in section 502(b) of the Bankruptcy Code. *See id.*

§ 502(b).  A court must disallow a claim to the extent that an entity that has filed a claim has

property that is recoverable under sections 547 or 548 of the Bankruptcy Code. *See id.* § 502(d).

Additionally, a court must disallow a claim of an entity that is co-liable on a debt with the debtor

until the debt is no longer contingent. *See id.* § 502(e).

An entity may request payment of an administrative expense for actions it took that

benefited the debtor's estate. *See id*. § 503.  "Courts generally agree that 'an administrative

expense has two defining characteristics: (1) the expense and right to payment arise after the

filing of bankruptcy, and (2) the consideration supporting the right to payment provides some

benefit to the estate.'" *In re Health Diagnostic Laboratory, Inc.*, 557 B.R. 885, 893 (Bankr. E.D.

Va. 2016) (quoting *CIT Commc'n Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines

Corp.)*, 406 F.3d 229, 237 (4th Cir. 2005)).

The Court is satisfied that the Liquidating Trustee has met his pleading burden for Count

75.  Each of the Defendants named in Count 75 filed a proof of claim in the underlying

bankruptcy case.  Bankruptcy Rule 3007(b) permits an objection to the allowance of a claim to

be made in an adversary proceeding. *See* Fed. R. Bankr. P. 3007(b).  In the Complaint, the

Liquidating Trustee asserts actions for the avoidance of both fraudulent conveyances and

preferential transfers against all of the Defendants named in Count 75.

In Count 76, the Liquidating Trustee seeks to equitably subordinate the claims of the

Mallory Defendants, Warnick, the Galen Defendants, BlueWave, Helena Laboratories, the Golias

Family Shareholders, Petersen, Mayes, Tessler, Oates, and the Doe Defendants under section

510(c) of the Bankruptcy Code.  For a court to equitably subordinate a claim, three elements

must be met: "(1) the claimant engaged in inequitable conduct; (2) that conduct injured other

creditors; and (3) subordination is consistent with other bankruptcy law." *Anderson & Assocs.*

*PA v. S. Textile Knitters De Hond. Sewing Inc. (In re S. Textile Knitters)*, 65 F. App'x 426, 439

(4th Cir. 2003).

The Liquidating Trustee has pled all the elements for equitable subordination against all

of the Defendants in Count 76.  The thrust of the Liquidating Trustee's Complaint is that each of

these Defendants participated in and advanced HDL's fraudulent business model.   Such

participation is alleged to have injured creditors by causing HDL to incur significant liabilities

which made it impossible for HDL to pay its creditors.   The Court is satisfied that the

Liquidating Trustee has pled plausible causes of action for equitable subordination.

*Causes of Action under State Law*

In Counts 53, 54, 56, and 57, the Liquidating Trustee alleges statutory breaches of

fiduciary duty under Va. Code § 13.1-690 and common law breaches of fiduciary duty

(collectively, the "Breach of Fiduciary Duties Counts") against the D&O Defendants, Galen, and

Bartlett.   Specifically, the Liquidating Trustee alleges that these Defendants breached their

duties of care and loyalty by perpetuating HDL's fraudulent scheme despite warnings from

counsel and various other actions.   *See Byelick v. Vivadelli*, 79 F. Supp. 2d 610, 623

(E.D.Va.1999) ("It is well settled that '[a] Virginia corporation's directors and officers owe a

duty of loyalty both to the corporation and to the corporation's shareholders.'") (quoting *WLR*

*Foods v. Tyson Foods, Inc.*, 869 F. Supp. 419, 421 (W.D.Va. 1994)); *Glass v. Glass*, 228 Va. 39,

47, 321 S.E.2d 69, 74 (1984) ("Corporate officers and directors have a fiduciary duty in their

dealings with shareholders and must exercise good faith in such dealings."); *see also* Va. Code

§ 13.1-690 ("A director shall discharge his duties as a director, including his duties as a member

of a committee, in accordance with his good faith business judgment of the best interests of the

47

corporation."); *Willard v. Moneta Building Supply, Inc.*, 258 Va. 140, 151 ("[I]n Virginia, a director's discharge of duties is not measured by what a reasonable person would do in similar circumstances or by the rationality of the ultimate decision.  Instead, a director must act in accordance with his/her good faith business judgment of what is in the best interests of the corporation.").

The Liquidating Trustee alleges that despite the personal knowledge that the D&O Defendants, Galen, and Bartlett had of the regulatory framework for the healthcare industry, these Defendants pursued a business model for HDL that violated federal and state anti-kickback statutes.  Additionally, the D&O Defendants ignored warnings from outside doctors and their attorneys, insurance companies, HDL's general counsel, and HDL's outside counsel that HDL's business practices were high risk and violated state and federal law.  The Liquidating Trustee asserts that the D&O Defendants encouraged the practice of adding medically unnecessary tests to HDL's baseline services in order to generate higher fees.  The Liquidating Trustee further alleges that the D&O Defendants caused HDL to invest in companies that had no legitimate business purpose.  The Liquidating Trustee alleges specifically that Mallory usurped a corporate opportunity and failed to properly disclose the opportunity to HDL when she bought GeneNews limited stock and subsequently caused HDL to form a joint venture with GeneNews.  Finally, the Liquidating Trustee asserts that the D&O Defendants caused HDL to squander corporate assets by making excessive charitable contributions.

In their responses, the D&O Defendants, Galen, and Bartlett all argue that the Breach of Fiduciary Duties Counts should be dismissed because they are entitled to exculpation under Va. Code Ann. § 13.1-692.1(B).  The Court need not assess the merits of these arguments in the context of the Motions to Dismiss, as exculpation under Va. Code Ann. § 13.1-692.1(B) is an

affirmative defense. *See In re LandAmerica Fin. Group, Inc.,* 470 B.R. at 785. The Court would note, however, that Va. Code Ann. § 13.1-692.1(B) does not provide for the exculpation of officers or directors who "engaged in willful misconduct or a knowing violation of the criminal law . . . ." Va. Code Ann. § 13.1-692.1(B). The Complaint alleges that the D&O Defendants, Galen, and Bartlett did engage in such willful misconduct. If the Liquidating Trustee successfully proves these facts at trial, then the parties would not be entitled to exculpation. The Court is satisfied that the facts alleged by the Liquidating Trustee in Counts 53, 54, 56, and 57 state a plausible cause of action for statutory and common law breaches of fiduciary duty.

In Count 55, the Liquidating Trustee asserts a cause of action under the trust fund doctrine against the D&O Defendants, Galen, Bartlett, the Shareholder Defendants, the BlueWave Defendants, the BlueWave Transferee Defendants, the Major Sales Contractor Defendants, and the Doe Defendants.

The Fourth Circuit has held that under Virginia law, "the trust fund doctrine 'gives creditors an equitable right of recovery against shareholders who take assets from a dissolving corporation . . .'" and is a viable cause of action. *See Schnelling v. Crawford, et al. (In re James River Coal Co.),* 360 B.R. at 181 (citing *Rapids Constr. Co. v. Malone*, 139 F.3d 892, (4th Cir. 1998)). The "[trust fund] doctrine states that 'the assets of the corporation are subject to an equitable lien in favor of the creditors, and that such creditors may follow such assets, or the proceeds thereof, into whatsoever hands they can trace them and subject them to debts, except as against a bona fide purchaser for value.'" *Bank of Am. v. Musselman*, 222 F. Supp. 2d 792, 798 (E.D. Va. 2002) (quoting *Rapids Constr. Co. v. Malone,* 139 F.3d 892 (4th Cir. 1998) (quoting

*Ashworth v. Hagan Estates,* 165 Va. 151, 181 S.E. 381 (1935)); *Marshall v. Fredericksburg Lumber,* 162 Va. 136, 173 S.E. 553, 558 (1934)).

The Liquidating Trustee alleges that money was transferred from HDL directly to or can be traced to each of the Defendants named in Count 55. Given the alleged misconduct that occurred during HDL's operation, a viable equitable lien would attach in favor of HDL's creditors. Accordingly, the Court is satisfied that the Liquidating Trustee has met his pleading burden.

In Count 58, the Liquidating Trustee asserts a cause of action for aiding and abetting breach of fiduciary duty against the BlueWave Defendants, the Major Sales Contractor Defendants, Cobalt, and the Doe Defendants.

A cause of action for aiding and abetting breach of fiduciary duty has been recognized by the Fourth Circuit and Virginia courts. *See Schnelling v. Crawford, et al. (In re James River Coal Co.),* 360 B.R. at 174 (citing *Kieft v. Becker,* No. 194674, 2002 WL 481249 at *3 (Va. Cir. Ct. Jan. 31, 2002) (acknowledging claim for aiding and abetting breach of fiduciary duty) (citing *Tysons Toyota, Inc. v. Globe Life Ins. Co.,* 45 F.3d 428, 1994 WL 717598, at *3 (4th Cir. 1994)); *Sherry Wilson and Co., Inc. v. Generals Court, L.C.,* No. 21696, 2002 WL 32136374 at *1 (Va. Cir. Ct. Sept. 27, 2002) ("One who assists another to breach his fiduciary duty to the beneficiaries of a trust may be held jointly and severally liable for the losses sustained as a result of such breach") (citing *Patteson v. Horsley,* 70 Va. (29 Gratt.) 263 (1877)). A *prima facie* case for aiding and abetting breach of fiduciary duty can be made by proving the Defendants, with knowledge, offered substantial assistance to the directors in connection with the breaches of their fiduciary duties. *See id.*

The Liquidating Trustee alleges in the Complaint that the BlueWave Defendants, the Major Sales Contractor Defendants, Cobalt, and the Doe Defendants were the instrumentalities that HDL used, at the direction of the D&O Defendants, to perpetuate its fraudulent scheme. Accordingly, the Court is satisfied that the Liquidating Trustee has pled a viable cause of action against each of the Defendants named in Count 58.

The Liquidating Trustee asserts two conspiracy claims on behalf of the HDL estate. First, in Count 59 the Liquidating Trustee alleges a cause of action for common law conspiracy against the D&O Defendants, the BlueWave Defendants, the Major Sales Contractor Defendants, Cobalt, and the Doe Defendants. Second, in Count 60 the Liquidating Trustee brings a statutory business conspiracy claim under Va. Code §§ 182-499 *et seq.* against the D&O Defendants, the BlueWave Defendants, the Major Sales Contract Defendants, Cobalt, and the Doe Defendants. Common law conspiracy consists of two or more persons who combined to accomplish, by some concerted action, an unlawful purpose or some lawful purpose by unlawful means. *See Schnelling v. Crawford, et al. (In re James River Coal Co.),* 360 B.R. at 181 (citing *Rapids Constr. Co. v. Malone*, 139 F.3d 892, 1998 WL 110151 (4th Cir. 1998)). Virginia statutory conspiracy consists of two or more persons combining, agreeing, or mutually undertaking to willfully and maliciously injure another in his reputation, trade, business, or profession. *See id.* at 174-75 (citing *T.G. Slater & Son, Inc. v. The Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845–46 (4th Cir. 2004)).

The Liquidating Trustee pleads that each of the Defendants named in Counts 59 and 60 were connected in a web of agreements to advance the Illegal Business Practices of HDL. The Liquidating Trustee alleges that the perpetuation of HDL's Illegal Business Practices caused HDL to incur significant civil liabilities. The Liquidating Trustee alleges that given the

experiences of each of the Defendants in the healthcare field, they knew or should have known that HDL was engaging in Illegal Business Practices that violated the anti-kickback statutes. These allegations state a viable claim under Virginia law for both statutory and common law conspiracy.

In Count 61, the Liquidating Trustee brings an action for unlawful distributions under Va. Code §§ 13.1-653 and 13.1-690 against Mallory, Warnick, Galen, and Bartlett.  Va. Code § 13.1-653 prohibits distributions to shareholders if the corporation would not be able to pay its debts as they come due in the normal course of business; or the corporation's total assets would be less than its liabilities.  *See* Va. Code § 13.1-653(C).  Va. Code § 13.1-690 establishes the general standards of conduct for a director of a corporation.  Va. Code § 13.1-692 makes a director personally liable for distributions made when the director did not comply with the general standards of conduct for a director of a corporation.  *See* Va. Code § 13.1-692(A).

The Court has found that the Liquidating Trustee has adequately pled breach of fiduciary duty claims against Mallory, Warnick, Galen, and Bartlett and that HDL was insolvent. Accordingly, the Liquidating Trustee has met his pleading burden for unlawful distributions under Virginia law.

The Liquidating Trustee asserts a cause of action against the D&O Defendants, Galen and Bartlett for corporate waste in Count 62.  The Court has previously held that there is no such cause of action under Virginia law.  *See Schnelling v. Crawford (In re James River Coal Co.),* 360 B.R. at 175-76 ("No Virginia court has explicitly held that there exists a common law claim for corporate waste under Virginia law.  The Court views this claim as akin to the Trustee's claim for breach of fiduciary duty.").  Accordingly, the Court will grant the Motions to Dismiss as to Count 62.

52

The Liquidating Trustee asserts causes of action against the D&O Defendants, Galen and Bartlett for negligence and gross negligence in Counts 63 and 64.  The Liquidating Trustee alleges that the Defendants named in Counts 63 and 64 owed a duty of reasonable care not to negligently damage HDL.  The Liquidating Trustee alleges that while the Defendants were directors and/or officers of the Debtors they breached their duty of care.  Under Virginia law officers and directors are not held to a reasonable care standard applicable to negligence claims.  Rather, officers and directors must exercise their business judgment in the execution of their corporate duties.  *See* Va. Code § 13.1-690.  So long as officers and directors comply with the business judgment rule, there cannot be separate liability imposed against them for negligence or gross negligence.  *See, Willard v. Moneta Building Supply, Inc.*, 258 Va. At 151.  Accordingly, Counts 63 and 64 shall be dismissed.

In Counts 65 and 66, the Liquidating Trustee asserts claims founded on assumpsit and unjust enrichment against all Defendants.  "In order to state a cause of action for assumpsit under Virginia law, the Trustee need only allege that the defendants are in possession of money which in equity and good conscience does not belong to them."  *Schnelling v. Crawford, et al. (In re James River Coal Co.),* 360 B.R. at 176.  The Liquidating Trustee has alleged that given the experiences of each of the Defendants in the healthcare field, they knew or should have known that HDL was engaging in fraudulent and Illegal Business Practices that violated the anti-kickback statutes.  The Liquidating Trustee further alleges that the Defendants are in possession of money that can be traced to funds generated from HDL's fraudulent and Illegal Business Practices.  In equity and good conscience, the Liquidating Trustee maintains that the Defendants should not be permitted to retain the funds they received.  These allegations are sufficient to state a cause of action for assumpsit.

The elements for unjust enrichment include: (i) a benefit conferred on the defendant; (ii) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and, (iii) the defendant accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp.,* 276 Va. 108, 116 (2008). In the Complaint, the Liquidating Trustee alleges that HDL conferred a benefit on each Defendant in the form of money; each of the parties should have been reasonably expected to repay HDL because the parties were helping to further a fraudulent business scheme; and that each of the Defendants retained the benefit. Accordingly, the Court is satisfied that the Liquidating Trustee has met his pleading burden.[54]

In Count 74, the Liquidating Trustee seeks a determination that the BlueWave Agreement is illegal and unenforceable under Ga. Code Ann. § 13-8-1 and other applicable law. A court may award declaratory relief under 28 U.S.C. § 2201 when there is an "actual controversy," *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592-93 (4th Cir. 2004), and the Court finds that "(i) it will serve a useful purpose in clarifying and settling the legal relations in issue, and (ii) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation and citation omitted). "In a bankruptcy context, the court has authority to issue declaratory judgments on matters concerning the administration of the estate." *In re Abell*, 549 B.R. 631, 649 (Bankr. D. Md. 2016).

Under Georgia law, "[a] contract to do an immoral or illegal thing is void. If the contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal." Ga. Code Ann. § 13-8-1. In the case at bar, the Liquidating

---

[54] Counts 65 and 66 are not duplicative, as some Defendants maintain. *See Hong v. Kim*, 81 Va. Cir. 102, 105 (Va. Cir. Ct. 2010) (noting that "[i]n a cause of action for assumpsit the focus of the analysis is on the detriment to the Plaintiff, and in an action for unjust enrichment the focus of the analysis is on the benefit conferred on the Defendant.").

Trustee has alleged that certain former officers, directors, and shareholders with the assistance of

the co-founders of BlueWave intentionally and knowingly pursued a business model that was

fraudulent and violated various federal and state laws.   The Liquidating Trustee further alleges

that the BlueWave Defendants and the BlueWave Sales Representative Defendants were

instrumental in carrying out the fraudulent HDL scheme by marketing and inducing health care

providers to choose HDL's laboratory and testing services.   The Court is satisfied that the

Liquidating Trustee has pled a plausible action for declaratory relief.

*Assigning Creditor Causes of Action*

In the Complaint, the Liquidating Trustee asserts various causes of action that had

belonged to creditors and were assigned by those creditors to the Liquidating Trust.   The

Complaint asserts that these causes of action were assigned to the Liquidating Trust pursuant to

Section 6.16(a) of the Plan and the associated assignment agreements.   Aetna, Inc. ("Aetna"),

and Cigna Health and Life Insurance Company and Connecticut General Life Insurance

Company (collectively, "Cigna") are identified in the Complaint as two of the creditors that

assigned their claims to the Liquidating Trust.   The other 30 creditors that assigned their claims

to the Liquidating Trust are not specifically identified in the Complaint.[55]   The Liquidating

Trustee asserts that, excluding Aetna and Cigna, the claims of the unnamed Assigning Creditors

total $4,049,114.47.

The Fourth Circuit has recognized that a bankruptcy trustee does have standing to assert

claims from assigning creditors.   In *Bogdan*, the Fourth Circuit held that a chapter 7 trustee had

standing to assert claims of assigning creditors for three reasons.   *Logan v. JKV Real Estate*

*Servs., et al. (In re Bogdan)*, 414 F.3d 507 (4th Cir. 2005).   First, unlike the trustee in *Caplin v.*

*Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416 (1972), who attempted to assert claims

---

[55] Aetna, Cigna and the 30 unidentified creditors are hereinafter referred to as the "Assigning Creditors."

directly on behalf of the debtor's creditors for the creditors' exclusive benefit, the trustee in

*Bogdan* did not make any claim on behalf of creditors:

> By taking unconditional assignments from the creditors, the trustee, as assignee, is
> making his claim on behalf of Bogdan's estate, not on behalf of the mortgage
> lenders. The mortgage lenders will recover nothing directly from any recovery
> attained from the trustee's adversary proceeding against Bogdan's alleged
> coconspirators. The mortgage lenders will recover, if at all, like any other
> creditor of the estate, by sharing from the assets the trustee is able to collect on
> behalf of the estate.

*In re Bogdan*, 414 F.3d at 512.

In this case, the Assigning Creditors have assigned their claims to the HDL Liquidating

Trust. The Liquidating Trustee is pursuing these claims on behalf of the HDL Liquidating Trust

rather than the Assigning Creditors. Any recovery that the Liquidating Trustee might make on

these assigned claims in the case at bar will be distributed in accordance with the Plan.

Accordingly, the Court finds that the Liquidating Trustee has standing and can pursue the

assigned claims.

The Defendants contend that the Liquidating Trustee cannot assert claims on behalf of

the Assigning Creditors because tort claims are not assignable under Virginia law. *See* Va. Code

§ 8.01-26 ("Only those causes of action for damage to real or personal property, whether such

damage be direct or indirect, and causes of action *ex contractu* are assignable"). The

Liquidating Trustee counters that the assignment agreements were executed under New York

law, which allows for assignment of personal injury claims. *See generally Optimal Strategic*

*U.S. Equity Ltd. v. SPV OSUS Ltd.,* 2017 WL 900565, at *5 (N.Y. Mar. 6, 2017). Resolution of

the choice of law provisions contained in the applicable assignment agreements is a factual

determination that will need to be developed at trial.

56

Many of the Defendants seek to have the claims brought on behalf of the unidentified Assigning Creditors dismissed because the Liquidating Trustee did not disclose their identities in the Complaint.   The Liquidating Trustee contends that disclosure of the unidentified Assigning Creditors is not warranted because the parties can readily view the Plan and various assignment agreements on the Court's docket.   The federal pleading standards are designed to put defendants on notice of the claims being asserted against them so that the defendants can mount a defense against the claims.   *See Bracey v. Buchanan*, 55 F. Supp. 2d 416, 418 (E.D. Va. 1999) ("The purpose of pleadings in the federal system is to put the Defendant on notice as to the nature of the claims against him so that he may adequately prepare a defense.   [] While the pleadings need not be minutely detailed, they must provide enough factual details to allow the Defendant to discern exactly what act he has committed that the Plaintiff alleges is illegal.") (internal citation omitted).   The Defendants may not have received proper disclosure of the claims being asserted against them by the unidentified Assigning Creditors.   The omission of the names of the unidentified Assigning Creditors does not meet the notice requirement of Bankruptcy Rule 7012.   The Court will dismiss the claims being brought by the unidentified Assigning Creditors.   As Aetna and Cigna are clearly identified as Assigning Creditors, the Complaint will not be dismissed as to them.

In Counts 67 and 68, the Liquidating Trustee brings actions for fraud and constructive fraud on behalf of Cigna and Aetna under Virginia law against the D&O Defendants, the BlueWave Defendants, the Major Sales Contractor Defendants, the BlueWave Sales Representative Defendants, and the Doe Defendants.   The elements for actual fraud include: (i) a false representation, (ii) of a material fact, (iii) made intentionally and knowingly, (iv) with intent to mislead, (v) reliance by the party misled, and (vi) resulting damage to the party misled.

*See Richmond Metro. Authority v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (Va. 1998).

"[T]he elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino v. Consultant Engineering Serv., Inc.*, 251 Va. 289, 295 (Va. 1996).

The Court is satisfied that the Liquidating Trustee has pled a plausible cause of action for fraud and constructive fraud under Virginia law in Counts 67 and 68. The Liquidating Trustee alleges that the Defendants in these counts made false representations of material fact including without limitation, that the claims HDL presented to Aetna and Cigna were for medically necessary tests, that the amounts charged for the tests included a co-pay, co-insurance, or deductible amount that HDL intended to collect from patients, that HDL's business was conducted in accordance with the AKS and other healthcare laws, and that the representations regarding HDL's financial condition were accurate. The Liquidating Trustee alleges that these material misrepresentations were made intentionally in order to induce Aetna and Cigna to make payments to HDL, and in turn to BlueWave, and to extend unsecured credit to HDL for goods and services provided. The Complaint further alleges that Aetna and Cigna justifiably relied on the misrepresentations and were harmed by extending millions of dollars in payments made and unsecured credit extended. These alleged facts describe with particularity the actions taken by the Defendants, the misrepresentations that were made, and the harm it caused Aetna and Cigna.

In Counts 69 and 70 the Liquidating Trustee asserts tortious interference claims on behalf of Cigna against the D&O Defendants, the BlueWave Defendants, the Major Sales Contractor Defendants, the BlueWave Sales Representative Defendants, and the Doe

Defendants.  The Liquidating Trustee contends that this action is brought under Connecticut law.

The elements of a claim for tortious interference in Connecticut are: "(1) a business relationship

between the plaintiff and another party; (2) the defendant's intentional interference with the

business relationship while knowing of the relationship; and (3) as a result of the interference,

the plaintiff suffers actual loss."  *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, *12

(Conn. 2000) (citing *Solomon v. Aberman*, 196 Conn. 359, 364, 493 A.2d 193 (1985)).

The Liquidating Trustee alleges that the Defendants interfered with contracts between

Cigna and healthcare providers by encouraging healthcare providers to use HDL for lab testing,

even though HDL was outside of Cigna's insurance plans, and interfering with the cost sharing

component of the insurance contracts by waiving the collection of co-pays.  The Liquidating

Trustee alleges that the interference was intentional and as a result Cigna suffered the damages.

The Court is satisfied that the Liquidating Trustee has pled plausible causes of action under

Counts 69 and 70.

In Count 71 the Liquidating Trustee asserts actions for fraud, tortious interference

claims, civil conspiracy, and unjust enrichment on behalf of Aetna against the D&O Defendants

and the BlueWave Defendants.  The Court notes that the Aetna Complaint incorporated by the

Liquidating Trustee into the Complaint in the case at bar was removed from the District Court in

the Eastern District of Pennsylvania to this Court.  Prior to removal, the Aetna Complaint

survived a motion to dismiss filed by the BlueWave Defendants while the case was still pending

before the Eastern District of Pennsylvania.  The Court will adopt the well-reasoned

Memorandum Opinion issued by the District Court for the Eastern District of Pennsylvania.

Accordingly, the Court finds the Liquidating Trustee has met his pleading burden with respect to Count 71.[56]

In Counts 72 and 73, the Liquidating Trustee asserts claims for common law conspiracy and statutory business conspiracy under Va. Code §§ 182-499 *et seq.* on behalf of Aetna and Cigna against the D&O Defendants, the BlueWave Defendants, the Major Sales Contractor Defendants, the BlueWave Sales Representative Defendants, and the Doe Defendants. For the reasons articulated by the Court in its consideration of the same causes of action brought on behalf of the Debtors, the Court finds that the Liquidating Trustee has adequately pled causes of action for common law conspiracy and statutory business conspiracy claim under Va. Code §§ 182-499 *et seq.* and, accordingly, he has met his pleading burden for Counts 72 and 73.

### Conclusion

The Court finds that the Complaint complies with the pleading requirements set forth in the Bankruptcy Rules. The Liquidating Trustee has stated plausible causes of action for all of the counts set forth in the Complaint except Counts 62, 63, and 64. The Motions to Dismiss Counts 62, 63, and 64 will be granted. Additionally, the Court will dismiss the claims asserted on behalf of the Assigning Creditors that are not identified in the Complaint in Counts 67 through 73. The Court will grant the Liquidating Trustee leave to amend his Complaint and include the identity of the unidentified Assigning Creditors. The Court will deny the Motions to Dismiss as to all other claims and Counts.

---

[56] *See* Memorandum Opinion, *Aetna, Inc. v. Health Diagnostic Laboratory, Inc. et al.*, No. 2:15-cv-01868-RK (E.D. Penn. Oct. 17, 2016), ECF No. 29 (denying motions to dismiss incorporated Aetna Complaint).

A separate order shall issue.


ENTERED:  Aug 9 2017


/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE


Entered on Docket:  Aug 9 2017


61