# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISCTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| In re:  HEALTH DIAGNOSTIC LABORATORY INC., *et al.*,[1] | Case No. 15-32919-KRH |
| Debtors. | Chapter 11 (Jointly Administered) |

RICHARD ARROWSMITH, LIQUIDATING
TRUSTEE OF THE HDL LIQUIDATING TRUST

       Plaintiff,

v.

       Bankr. Ct. Adv. Proc. No. 16-03271-KRH

       Dist. Ct. Case Nos.   3:17-cv-399-HEH
                              3:17-cv-400-HEH
                              3:17-cv-409-HEH

LATONYA S. MALLORY, *et al.*,

       Defendants.

---

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

On September 16, 2016, Richard Arrowsmith, in his capacity as the Liquidating Trustee of the HDL Liquidating Trust (the "Liquidating Trustee"), initiated the above-captioned adversary proceeding (the "Adversary Proceeding") by filing a 76-count *Complaint* (as amended, the "D&O Complaint") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") against 103 named defendants, including former directors, officers, shareholders, and agents of Health Diagnostic Laboratory, Inc. ("HDL") and BlueWave Healthcare Consultants, Inc. ("BlueWave").[2]

---

[1]   The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are: Health Diagnostic Laboratory, Inc. (0119), Central Medical Laboratory, LLC (2728), and Integrated Health Leaders, LLC (2434).

[2]   BlueWave is an Alabama corporation that was co-founded by defendants Floyd Calhoun Dent III ("Dent") and Robert Bradford Johnson ("Johnson").

On March 15, 2017, BlueWave and twenty defendants affiliated with BlueWave[3] filed a

motion [ECF No. 192][4] to withdraw the reference and have the Adversary Proceeding litigated in

the United States District Court for the Eastern District of Virginia (the "District Court") rather

than the Bankruptcy Court.  On July 19, 2017, the District Court entered an *Order* [ECF No. 344]

(the "Order Denying Motion to Withdraw") denying the motion to withdraw the reference and

directing the Bankruptcy Court to issue proposed findings of fact and conclusions of law at the

conclusion of the pretrial phase of the Adversary Proceeding.  Specifically, the District Court

instructed the Bankruptcy Court to "recommend whether any motions for summary judgment of

non-core matters should be granted by the District Court and whether the reference should be

withdrawn for trial by jury."  Order Denying Mot. to Withdraw the Reference 1-2, ECF No. 344

at 1-2.

To streamline settlement efforts in this complex litigation, the District Court by *Order*

[ECF No. 315] dated June 12, 2017, referred the Adversary Proceeding to the Honorable David J.

Novak for mediation.  By its *Order* dated February 22, 2018, the Bankruptcy Court referred

approximately 1,300 related adversary proceedings (the "Avoidance Actions"), which were

---

[3]    On or around June 8, 2018, Defendants Blue Eagle Farming, LLC; H J Farming, LLC; Eagle Ray Investments, LLC; War-Horse Properties, LLLP; Blue Smash Investments, LLC; and Forse Investments, LLC (together, the "Johnson Entities") and Johnson, each filed or caused to be filed voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Alabama.  *See* Suggestion of Bankruptcy, ECF No. 628.  Those cases are being jointly administered as *In re Blue Eagle Farming, LLC*, Case No. 18-02395-TOM11 (the "Blue Eagle Farming Bankruptcy Case").  The Adversary Proceeding has been stayed as to Johnson and the Johnson Entities by operation of section 362(a) of the Bankruptcy Code.  The United States Department of Justice (the "DOJ") and the Liquidating Trustee have both filed proofs of claim in the Blue Eagle Farming Bankruptcy Case.  As one of the largest creditors, the Liquidating Trustee has asserted an active role in the administration of that case.  The claims asserted by the Liquidating Trustee against Johnson and the Johnson Entities will be resolved in the context of the Blue Eagle Farming Bankruptcy Case.  Accordingly, Johnson and the Johnson Entities are no longer involved in the Adversary Proceeding.

[4]    Unless otherwise indicated, references to ECF number shall refer to documents filed on the Bankruptcy Court's electronic docket in this Adversary Proceeding, Adv. Pro. No. 16-03271-KRH.

brought by the Liquidating Trustee against physicians and medical practices that transacted business with HDL and BlueWave, to Judge Novak for mediation.  *See* Order Directing Judicial Mediation, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 3758.  After more than twenty-two months, Judge Novak concluded his mediation efforts on May 10, 2019, having facilitated settlements in more than 1,200 Avoidance Actions.  *See* Order, ECF No. 876.  Judge Novak additionally facilitated, and the Bankruptcy Court approved, settlements between the Liquidating Trustee and key former officers and directors of HDL.  *See* Order, ECF No. 626; *see also* Order (I) Approving Settlement Agreement Between Arrowsmith & Warnick; & (II) Directing Payment of Proceeds of Certain Insurance Policies, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Arrowsmith*, Adv. Pro. No. 17-03029-KRH, ECF No. 130.

Thereafter, at the request of the remaining parties, the Bankruptcy Court referred the Adversary Proceeding to the Honorable Frank J. Santoro for further mediation between the Liquidating Trustee, the BlueWave Defendants,[5] the Carnaggio Defendants,[6] and the Golias Defendants.[7]  *See* Order, ECF No. 1296.  Judge Santoro facilitated settlements with the Carnaggio

---

[5]    The "BlueWave Defendants" are HisWay of South Carolina, Inc.; Cobalt Healthcare Consultants Inc.; AROC Enterprises LLC; Riverland Pines LLC; Crosspoint Properties LLC; Helm-Station Investments LLP; Lakelin Pines LLC; Trini D Island LLC; CAE Properties LLC; Royal Blue Medical Inc.; Blue Eagle Farm, LLC; and Forse Medical Inc. (the foregoing, collectively, the "Dent Entities"); BlueWave, and Dent.  For the avoidance of doubt, the BlueWave Defendants do not include Johnson or the Johnson Entities.  *See supra* note 3.

[6]    The "Carnaggio Defendants" are a group of former BlueWave salespeople and are comprised of Thomas Carnaggio, Kevin Carrier, Jerry Carroll, John Coffman, Jason Dupin, Julie Harding, Robert Lively, Heather Lockhardt, Charles Maimone, Kyle Martel, and Michael Samadani.

[7]    The "Golias Defendants" are Helena Laboratories Corporation and a group of former shareholders of HDL comprised of Tipton Golias, Joseph Golias, Donald Golias, Karla Falgout, Tipton Golias in his capacity as Trustee of the Wyndell L. Golias Voting Trust, Eric Petersen, David Mayes, John Tessler, and Pamela Oates.

Defendants and the Golias Defendants.[8]  As a result, the only claims remaining to be resolved in

the Adversary Proceeding are those pending against the BlueWave Defendants.

These matters now come before the Bankruptcy Court on the *Liquidating Trustee's Motion*

*for Partial Summary Judgment* [ECF No. 1040] (the "Summary Judgment Motion"), the

*Liquidating Trustee's Motion for Entry of an Order (I) Striking the Jury Demands Asserted by the*

*Defendants, (II) Directing that the Claims in the D&O Action and Tax Action Proceed Through a*

*Bench Trial, and (III) Recommending that the District Court Not Withdraw the Reference for Trial*

*by Jury* [ECF No. 993] (the "Motion to Strike"), the *Liquidating Trustee's Motion to Sever and*

*Stay Claims Against the Dent Subsequent Transferee Defendants* [ECF No. 984] (the "Motion to

Sever and Stay"), and the *BlueWave Defendants' Motion for Issuance of a Report and*

*Recommendation for Withdrawal of the Reference for Purposes of a Jury Trial* [ECF No. 1024]

(the "Motion to Withdraw the Reference" and, together with the Summary Judgment Motion, the

Motion to Strike, and the Motion to Sever and Stay, the "Motions").  The Liquidating Trustee filed

an opposition [ECF No. 1322] to the Motion to Withdraw the Reference.  The BlueWave

Defendants filed responses [ECF Nos. 1311, 1312, 1378] opposing the Motion to Strike, the

Motion to Sever and Stay, and the Summary Judgment Motion.  The Bankruptcy Court conducted

a hearing (the "Hearing") on the Motions on April 20, 2021, at which counsel for the Liquidating

---

[8]     On February 11, 2021, the Bankruptcy Court entered an order dated February 10, 2021, whereby the Bankruptcy
Court approved the Liquidating Trustee's settlement with the Golias Defendants.  Order Granting Mot. of
Liquidating Trustee for (I) Authority to Accept a Settlement Pursuant to Fed. R. Bankr. P. 9019(A); & (II) Related
Relief, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 5045.  On April 22, 2021, the
Bankruptcy Court entered an order approving the Liquidating Trustee's settlement with the Carnaggio
Defendants.  Order Granting Mot. of Liquidating Trustee for (I) Authority to Accept Settlement Pursuant to Fed.
R. Bankr. P. 9019(A); & (II) Related Relief, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF
No. 5121.  Pursuant to those settlements, the Golias Defendants and the Carnaggio Defendants have been
dismissed from the Adversary Proceeding.  *See* Stipulation of Dismissal of Golias Defs. with Prejudice, ECF No.
1449; Stipulation of Dismissal of Carnaggio Defs. with Prejudice, ECF No. 1457.

Trustee[9] and counsel for the BlueWave Defendants appeared.  For the reasons stated herein, the

Bankruptcy Court recommends that the Summary Judgment Motion be granted.[10]

## UNDISPUTED FACTS

After more than half a decade of related litigation in the Bankruptcy Court, the District

Court, and other courts across the Fourth Circuit, the circumstances at issue in the Adversary

Proceeding have been well documented.  *See, e.g.*, *United States v. Mallory*, 988 F.3d 730 (4th

Cir. 2021); *Arrowsmith v. Warnick* (*In re Health Diagnostic Lab'y, Inc.*), Adv. Pro. No. 17-04300,

2018 WL 4676339, 2018 Bankr. LEXIS 2953 (Bankr. E.D. Va. Sept. 27, 2018); *United States ex*

*rel. Lutz v. Berkeley HeartLab, Inc.*, Civil Action No. 9:14-230-RMG, 2017 WL 5033652, 2017

U.S. Dist. LEXIS 179876 (D.S.C. Oct. 31, 2017).  None of the facts set forth herein are in material

dispute.[11]

---

[9]  On June 24, 2020, the Bankruptcy Court entered an order granting the law firm of Cooley LLP leave to withdraw as counsel for the Liquidating Trustee in accordance with Local Bankruptcy Rule 2090-1(G) and substituting Hirschler Fleischer, P.C., as counsel of record in this matter.  *See* ECF No. 1425.

[10]  The causes of action addressed in the Summary Judgment Motion are constitutionally core proceedings insofar as they "would necessarily be resolved in the claims allowance process."  *See Stern v. Marshall*, 564 U.S. 462, 499 (2011); *see also Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 449-50 (E.D. Va. 2018) (holding a counterclaim to be constitutionally core when it shares common questions of fact and law with the creditor's proof of claim, and when it seeks to directly reduce or recoup the amount claimed).  While bankruptcy courts can enter final orders with respect to such "core" proceedings, 28 U.S.C. § 157(b)(1); *see MDC Innovations, LLC v. Hall*, 726 F. App'x 168, 170 (4th Cir. 2018), bankruptcy jurisdiction originates in and continues to reside with the District Court, *see* 28 U.S.C § 1334.  In order to circumvent any further procedural posturing by the remaining parties, the Bankruptcy Court recommends that the District Court, instead of the Bankruptcy Court, adopt these proposed findings of fact and conclusions of law and enter partial summary judgment against the BlueWave Defendants.  In such event, the District Court should then refer the Adversary Proceeding back to the Bankruptcy Court for final disposition of this Adversary Proceeding on the merits.

[11]  The Liquidating Trustee relies on the *Declaration of Richard T. Arrowsmith in Support of Liquidating Trustee's Motion for Partial Summary Judgment* [ECF No. 1043] (the "Arrowsmith Declaration") and the *Declaration of Richard Kanowitz in Support of Liquidating Trustee's Motion for Partial Summary Judgment* [ECF No. 1045] (the "Kanowitz Declaration").  The BlueWave Defendants have not filed an affidavit or declaration in relation to any of the Motions but instead rely on the *Declaration of Frank H. Griffin, IV in Support of the Golias Defendants' Statement of Disputed Facts in Opposition to the Plaintiff's Motion for Partial Summary Judgment* [ECF No. 1353] (the "Griffin Declaration") filed by the Golias Defendants, who were dismissed from this Adversary Proceeding prior to the Hearing.  *See* BlueWave Defs.' Resp. to Liquidating Trustee's Statement of Allegedly Undisputed Material Facts Supp. His Mot. Partial Summ. J. 2, ECF No. 1377 at 2.  As the Griffin Declaration

Founded in Richmond, Virginia, in 2008, HDL provided blood testing and laboratory services to physicians and other healthcare providers throughout the United States. *See* Kanowitz[12] Decl. Ex. 233 at 2, 5, ECF No. 1219 at 6, 9.  HDL began its blood testing operations in 2009.  *See id.* Ex. 238, ECF No. 1220 at 2-3.  Later that same year, HDL co-founders LaTonya Mallory ("Mallory") and G. Russell Warnick began negotiating with Dent and Johnson about forming a salesforce for HDL.  *See id.* Ex. 17 at 135:23-38:3, ECF Nos. 1063 at 7-8; 1064.  The parties' discussions resulted in a draft agreement that provided for BlueWave, as a third-party autonomous corporation, to represent HDL's sales efforts exclusively in Alabama, South Carolina, Mississippi, Tennessee, Georgia, Florida, North Carolina, Louisiana, and Texas.  *Id.* Ex. 210, ECF No. 1214 at 20.

The next month, in January of 2010, Dent and Johnson officially incorporated BlueWave.[13] The newly formed BlueWave immediately began to market HDL's blood testing services to physicians and their practices.  *Id.* Ex. 5 at 94:22-24, 96:11-23, 98:16-24, ECF No. 1054 at 7-9; Ex. 251, ECF No. 1232 at 2.  In April of 2010, HDL executed a *Sales Agreement* with BlueWave (the "BlueWave Agreement").  *Id.* Ex. 130, ECF No. 1154 at 2-14.  The BlueWave Agreement became effective retroactively to January of 2010, to coincide with the start of BlueWave's marketing efforts.  HDL appointed BlueWave for a period of at least ten years, "as its independent contractor to perform certain sales services for [HDL] as requested by [HDL], including the sale

---

concerns allegations pertaining to the Golias Defendants, it does not address many of the assertions relating to the BlueWave Defendants.

[12] Richard S. Kanowitz was granted leave to withdraw as counsel for the Liquidating Trustee on June 24, 2020.  *See supra* note 9.

[13] Dent was the chief operating officer and a 50% owner of BlueWave.  Kanowitz Decl. Ex. 5 at 14:6-10, ECF No. 1053 at 3.  Dent additionally formed the Dent Entities, which are owned by Dent and various members of his family.  *See* Kanowitz Decl. Ex. 5 at 14:21-26:14, ECF Nos. 1053, 1054.

of various laboratory tests and services of [HDL] to physicians and medical groups specializing in cardiology and other disease management specialties." *Id.* §§ 1, 7(a), ECF No. 1154 at 2, 6.

BlueWave's compensation for these services took two forms. First, BlueWave would receive "during the first five years of the Agreement . . . a monthly base fee" ranging from $53,750 in year one to $10,750 in year five. *Id.* § 4(a), ECF No. 1154 at 4. Second, HDL would pay BlueWave a percentage of its sales revenue as a commission. *Id.*, ECF No. 1154 at 3. This commission would start at 13.8% of revenue for the first eighteen months, then increase to 19.8% of revenue for another eighteen months, before ultimately leveling off at 16.8% of revenue for the remainder of the term of the BlueWave Agreement. *Id.*, ECF No. 1154 at 3. In addition to the compensation BlueWave was to be paid, the BlueWave Agreement provided for Dent and Johnson to become shareholders of HDL, with each receiving 29.4 shares of HDL's outstanding common stock.[14] *Id.* § 4(d), ECF No. 1154 at 4. The BlueWave Agreement required HDL to pay processing and handling, or so-called "P&H," fees to physicians in the amount of $18 to $21 per patient for blood samples that physicians submitted to HDL for testing. *Id.* § 3(b), ECF No. 1154 at 3. The BlueWave Agreement expressly contemplated the use of HDL's services with respect to Medicare and Medicaid accounts, as well as private insurance accounts. *Id.* § 3(e), ECF No. 1154 at 3. Further, the BlueWave Agreement "deemed [BlueWave] to be an independent contractor for all purposes of [the] Agreement and . . . [not] an agent, employee, or servant of [HDL]." *Id.* § 10, ECF No. 1154 at 7. Georgia law governed the BlueWave Agreement. *Id.* § 17, ECF No. 1154 at 9. The BlueWave Agreement was executed by Johnson, in his capacity as president of BlueWave, and Mallory in her capacity as president of HDL. *Id.* at 8, ECF No. 1154 at 8.

---

[14]    As of December 7, 2012, HDL made discretionary distributions to Dent on account of his ownership interest in HDL in an aggregate amount of $720,661.00. Arrowsmith Decl. Ex. 1, ECF No. 1044 at 2; *see* Kanowitz Decl. Ex. 225, ECF No. 1218 at 48-49.

From 2010 through 2014, HDL paid more than $48.9 million in P&H fees to physicians and other healthcare providers, in accordance with the BlueWave Agreement. *Id.* Ex. 30, at 37 tbl. 7, ECF No. 1066 at 167. BlueWave received commissions under the BlueWave Agreement during this same period totaling more than $220 million,[15] while Medicare and TRICARE, the federal health care plan for members of the military and their families, paid HDL approximately $538 million. *See id.* at 35 tbl. 5, ECF No. 1066 at 165; *Mallory*, 988 F.3d at 735. BlueWave, using the funds it initially received from HDL, made subsequent transfers to Dent and the Dent Entities, among others. *See* Arrowsmith Decl. Ex. 3, ECF No. 1044 at 80-92.

The onset of the BlueWave Agreement correlated with a period of exponential growth in HDL's business. From 2010 through 2012, HDL's annual revenue increased by more than six times, from $61.2 million in 2010 to $416.9 million in 2012. Kanowitz Decl. Ex. 30 at 32 tbl. 3, ECF No. 1066 at 162. In 2013 and 2014, HDL reported annual revenue of $375.3 million and $321.4 million, respectively. *Id.*, ECF No. 1066 at 162. While the BlueWave Agreement was in effect, BlueWave sales representatives were responsible for approximately 96% of HDL's revenue. *Id.* ¶ 91, ECF No. 1066 at 165.

In or around 2012, the DOJ began investigating whether the business practices set forth in the BlueWave Agreement violated the federal Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b. On January 7, 2013, the DOJ issued a subpoena to HDL, which required HDL to produce, among other items:

> 7.     All contracts, agreements, and arrangements between HDL and/or BlueWave Healthcare Consultants, Inc. (BlueWave) and physicians, physicians' practices, employees of physicians' practices, or any other health care providers,

---

[15]   HDL made transfers to BlueWave under the BlueWave Agreement in the aggregate amount of $220,336,247.91. *See* Arrowsmith Decl. Ex. 1, ECF No. 1044 at 2-3.

8

including, but not limited to, the collection, handling, and shipping or patient specimens or samples;

8.  A list of all compensation, rewards, incentives, and/or gifts provided to physicians, physicians' practices, employees of physicians' practices or any other health care provider by individual entity and year;

\*\*\*\*\*

24.  All contracts, agreements, or arrangements between HDL and BlueWave or any other similar company;

25.  Financial records relating to any compensation, rewards, incentives and/or gifts between HDL and BlueWave, or any similar company;

\*\*\*\*\*

29.  All internal communications, instructions, directives, training materials, policies, or procedures regarding HDL's compliance with . . . the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) . . . ;

30.  All documents and communication regarding any complaint, concern, inquiry, investigation, or review regarding a possible violation by HDL of any federal statute or regulation, including, but not limited to, . . . the Anti-Kickback Statute (42 U.S.C. § 1320a-7b(b)) . . . .

Kanowitz Decl. Ex. 140, ECF No. 1157 at 11-16.

BlueWave terminated the BlueWave Agreement on January 9, 2015, effective immediately. *Id.* Ex. 94, ECF No. 1148 at 31.  On March 31, 2015, HDL and the DOJ executed a settlement agreement (the "DOJ Settlement Agreement"), which resolved the DOJ's allegations that the P&H fees paid by HDL to physicians and medical practices violated the AKS.  *Id.* Ex. 130, ECF No. 1149 at 120-57.  The DOJ Settlement Agreement required HDL to pay to the government (i) fixed payments in an aggregate amount of $47 million plus interest accrued on the unpaid portion thereof at the rate of 2.25% per annum, paid quarterly from April 30, 2015, through

January 2, 2020; (ii) contingent payments if HDL achieved excess revenues as defined in the DOJ Settlement Agreement; and (iii) certain contingent payments in the event of a sale or merger involving HDL. *Id.* § 1(a)-(b), ECF No. 1149 at 123-25.  The DOJ Settlement Agreement provided that if HDL took any action related to bankruptcy within ninety-one days of the effective date of the DOJ Settlement Agreement, or March 31, 2015, the United States would have a valid claim in the amount of $100 million. *Id.* § 22, ECF No. 1149 at 139-40.

On June 7, 2015 (the "Petition Date"), sixty-eight days after the effective date of the DOJ Settlement Agreement, HDL commenced the above-captioned jointly administered bankruptcy cases (the "Bankruptcy Case") by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.  Voluntary Petition, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 1.

On December 14, 2015, BlueWave filed a proof of claim (the "BlueWave POC") in the Bankruptcy Case in the amount of $204,806,638.77.  Claim No. 1056, *In re Health Diagnostic Lab'y, Inc.,* Case No. 15-32919-KRH.[16]  In support of its claim, BlueWave referred to allegations recited in a pre-Petition Date amended complaint that it had filed in the United States District Court for the Northern District of Alabama against HDL for breach of the BlueWave Agreement. *Id.*; *see* Am. Compl., *BlueWave Healthcare Consultants, Inc. v. Health Diagnostic Lab'y, Inc.*, Case No. 5:15-cv-00884-MHH (N.D. Ala. June 3, 2015).  None of the other BlueWave Defendants has filed a proof of claim in the Bankruptcy Case.

---

[16]    Proofs of claim filed in the Bankruptcy Case are accessible via the Claims Register maintained by American Legal Claims Services, LLC at https://www.americanlegal.com/HDL/page/claim-regsiter. *See* Order Authorizing Appointment of American Legal Claims Services, LLC as Claims, Noticing & Balloting Agent, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 36.

On May 12, 2016, the Bankruptcy Court confirmed the *Modified Second Amended Plan of Liquidation Proposed by the Debtors* (the "Plan").[17]  The HDL Liquidating Trust was formed in accordance with the terms of the Plan.[18]  The Plan grants the Liquidating Trustee the power and charges the Liquidating Trustee with the duty to pursue claims on behalf of the creditors of HDL's estate.[19]  Accordingly, the Liquidating Trustee commenced this Adversary Proceeding on September 16, 2016.[20]

### The D&O Complaint

As to the BlueWave Defendants, the D&O Complaint seeks to (i) avoid various transfers made under the BlueWave Agreement pursuant to applicable provisions of the Bankruptcy Code, federal law, and state law; (ii) avoid various obligations under the BlueWave Agreement pursuant to applicable provisions of the Bankruptcy Code, federal law, and state law; (iii) hold the BlueWave Defendants liable under Virginia statutory and common law for aiding and abetting one or more breaches of fiduciary duty, conspiracy, negligence, gross negligence, assumpsit, unjust enrichment, fraud, and tortious interference; (iv) declare the BlueWave Agreement illegal and unenforceable pursuant to Georgia law; (v) disallow the BlueWave POC; and (vi) equitably subordinate the BlueWave POC.

---

[17]  *See* Order Confirming Debtors' Plan of Liquidation under Chapter 11 of the Bankruptcy Code, *In re Health Diagnostic Lab'y, Inc., et al.*, Case No. 15-32919-KRH, ECF No. 1095 (the "Confirmation Order").  The "Plan" refers to the version of plan attached to Confirmation Order as Appendix A.

[18]  *See* Plan § 6.4(a), *In re Health Diagnostic Lab'y, Inc., et al.*, Case No. 15-32919-KRH, ECF No. 1095 at 78.

[19]  Plan § 6.5(a)(12), *In re Health Diagnostic Lab'y, Inc., et al.*, Case No. 15-32919-KRH, ECF No. 1095 at 81-82.

[20]  On June 6, 2017, the Liquidating Trustee filed a complaint commencing *Arrowsmith v. Mallory*, Adv. Pro. No. 17-04300-KRH (as amended, the "Tax Complaint").  On February 7, 2018, the Bankruptcy Court consolidated the actions initiated by the D&O Complaint and Tax Complaint for purposes of joint administration.

The Summary Judgment Motion concerns only a discrete subset of these allegations.  The Liquidating Trustee is seeking partial summary judgment on the declaratory judgment count finding that the BlueWave Agreement is an illegal contract that is void as a matter of law.  Based upon that finding, the Liquidating Trustee seeks to disallow the BlueWave POC.  Finally, the Liquidating Trustee moves for partial summary judgment on counterclaims he has brought in connection with the BlueWave POC to avoid and recover pre-Petition Date payments made under the illegal BlueWave Agreement as fraudulent conveyances.

### The Qui Tam Litigation

The DOJ investigation was not the only legal battle in which HDL and BlueWave were embroiled.  Between 2011 and 2014, three relators filed a qui tam action in the United States District Court for the District of South Carolina (the "South Carolina District Court") against HDL, BlueWave, Mallory, Dent, and Johnson, alleging that the commissions paid to BlueWave violated the AKS and the federal False Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3733.  The United States intervened in the qui tam action in April of 2015.  Commencement of the Bankruptcy Case stayed the qui tam litigation in the South Carolina District Court as to HDL.  Following a twelve-day trial, a unanimous jury found Dent, Johnson, and Mallory liable for 35,074 false claims for services performed by HDL for which Medicare and TRICARE paid $16,601,591.  *See United States ex rel. Lutz v. BlueWave Healthcare Consultants, Inc.*, Civil Action No. 9:14-cv-00230-RMG, 2018 WL 11282049, at *1, 2018 U.S. Dist. LEXIS 119203, at *5 (May 23, 2018), *aff'd*, 988 F.3d 730 (4th Cir. 2021).  After trebling the damages and imposing civil penalties in accordance with the FCA, the South Carolina District Court entered judgment against Dent,

Johnson, and Mallory in the amount of $111,109,655.30 for these claims.[21] *Id.* at *8, 2018 U.S.

Dist. LEXIS 119203, at *25. Finding that "the Government provided sufficient evidence to show

that the commissions violated the [AKS] and accordingly the [FCA]," the Fourth Circuit affirmed

this judgment on February 22, 2021. *See Mallory*, 988 F.3d at 736 n.1.

## ANALYSIS

Summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive

determination' of a case." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317,

1322-23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1). Under Federal Rule of Civil Procedure ("Civil

Rule") 56(a), as made applicable hereto by Federal Rule of Bankruptcy Procedure ("Bankruptcy

Rule") 7056, the court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); Fed. R. Bankr. P. 7056. The party moving for summary judgment has the burden of

establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 321-23 (1986). In determining whether this burden has been met, the court will consider

all evidence in the light most favorable to the nonmoving party. *Charbonnages de France v. Smith*,

597 F.2d 406, 414 (4th Cir. 1979) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)

(per curiam)). "[O]nce the moving party has identified the absence of a genuine issue of material

fact, the non-moving party bears the burden of identifying specific facts that demonstrate the

---

[21]   Pursuant to the *Order on Motion for Order Pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9019 Approving (I) Settlement Between the Liquidating Trustee and United States of America; and (II) Authorizing Liquidating Trustee to Enter into Proposed Intercreditor Agreement with the United States of America* [*In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 4337], the DOJ and the Liquidating Trustee are parties to a Court-approved *Intercreditor Agreement*, which stipulates each party's respective entitlement to disbursements by or collections from Dent, the Dent Entities, Johnson, and the Johnson Entities. The United States is entitled to the first $9 million recovered. Once that threshold is reached, the United States and the Liquidating Trustee agree to divide recoveries equally, regardless of whether the efforts of the United States or the Liquidating Trustee led to the recovery. *See* Intercreditor Agreement ¶ 1, *In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 4337 at 7.

existence of a genuine issue for trial." *Hopkins v. Horizon Mgmt. Servs., Inc.*, 302 F. App'x 137, 139 (4th Cir. 2008) (citations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> The disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict. Thus, if the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment.

*Thompson Everett, Inc.*, 57 F.3d at 1323 (quoting *Anderson*, 477 U.S. at 249-50). "Neither conclusory allegations, speculative scaffolding of one inference upon another, nor the production of a 'mere scintilla of evidence' in support of a nonmovant's case suffices to forestall summary judgment." *Moody v. Arc of Howard Cnty., Inc.*, 474 F. App'x 947, 949 (4th Cir. 2012) (citations omitted).

By his Summary Judgment Motion, the Liquidating Trustee first seeks a declaratory judgment as to count 74 of the D&O Complaint that the BlueWave Agreement is violative of and unenforceable under applicable law. The federal Declaratory Judgment Act permits a district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting 28 U.S.C. § 2201(a)). The Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Declaratory judgment may be appropriate where, as here, "[t]here is a live and serious question" about the terms of a contract. *Id.* at 414.

It is well settled that the interpretation of a contract is "a question of law clearly within the competence of the courts." *Burgin v. Off. of Pers. Mgmt.*, 120 F.3d 494, 498 (4th Cir. 1997) (citing *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984)); *see Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007). Therefore, summary judgment is appropriate where, as here, "the contract is unambiguous on the dispositive issue." *Wash. Metro. Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Goodman v. Resol. Tr. Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)). In the case at bar, the BlueWave Agreement is governed by Georgia law. Kanowitz Decl. Ex. 130, at § 17, ECF No. 1154 at 9. Under Georgia law, "[a] contract to do an immoral or illegal thing is void." Ga. Code. Ann. § 13-8-1. Accordingly, the dispositive issue is whether the unambiguous terms of the BlueWave Agreement violated any applicable law such that it is void as a matter of law.

The AKS prohibits knowingly or willfully soliciting, receiving, offering, or paying

> any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320(a)-7b(b). This provision "cover[s] any arrangement where one purpose of the remuneration was to obtain money for the referral of services or to induce further referrals." *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 47 (D. Mass. 2011); *see United States v. Borrasi*, 639 F.3d 774, 782 (7th Cir. 2011); *see also United States v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000). This broad interpretation of the statute's scope is contrasted by a narrow interpretation of its safe harbor provisions, which include among them an exception for "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."

15

42 U.S.C. § 1320(a)-7b(b)(3)(B); *see, e.g.*, *Westmoreland*, 812 F. Supp. 2d at 47. As the Fourth Circuit recently concluded in its review of the South Carolina District Court judgment, "federal appellate courts have frequently, and indeed invariably, upheld [AKS] violations based on commission payments to [non-employee] third parties." *Mallory*, 988 F.3d at 738 (citing cases).

Additionally, the FCA imposes civil liability on "any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment of approval; [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). A claim may run afoul of the FCA as either "factually false" or "legally false." *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018). A factually false claim arises where "the claimant misrepresents what goods or services . . . it provided to the Government," while a legally false claim arises where "the claimant lies about its compliance with a statutory, regulatory, or contractual requirement." *Id.* (alteration in original). At the summary judgment stage, a plaintiff may prevail on an FCA claim by "provid[ing] evidence of at least one false claim." *Id.* at 99. Importantly, "liability under the [FCA] can be predicated on a violation of the [AKS]." *Westmoreland*, 812 F. Supp. 2d at 54.

The plain language of the BlueWave Agreement implicates both statutes. First, the percentage-based compensation under the BlueWave Agreement directly contravenes the AKS's prohibition on kickbacks. By its plain terms, the BlueWave Agreement expressly linked BlueWave's compensation to HDL's sales revenue from its blood testing operations, thereby incentivizing BlueWave to sell more blood tests on behalf of HDL. With each new blood test ordered, BlueWave's compensation increased. This is exactly the type of practice that the AKS was intended to prevent. *See Zimmer v. Nu Tech Med., Inc.*, 54 F. Supp. 2d 850, 863 (N.D. Ind. 1999) (finding percentage-based commission for sales and marketing of medical devices to be "the

type of conduct that the [AKS] was enacted to prevent and the type of conduct that might result in the parties being subject to prosecution and/or penalties"). Indeed, as the Fourth Circuit recently recognized, percentage-based and per-sale commissions have been found to violate the AKS time and time again. *See Mallory*, 988 F.3d at 738 (citing cases); *see also United States v. Vernon*, 723 F.3d 1234, 1253 (11th Cir. 2013) (upholding AKS conviction where pharmacy paid 45% of its profits to patient advocate for referrals); *United States v. Polin*, 194 F.3d 863, 864-65, 867 (7th Cir. 1999) (finding that practice of paying $50 to sales representative for each referral "squarely falls within the meaning and plain language of the [AKS]"); *United States v. Goldman*, 607 F. App'x 171, 173 (3d Cir. 2015) (affirming AKS conviction where physician was paid "$400 per referral, with an additional $150 for each patient who stayed longer than a month" in hospice center); *Zimmer*, 54 F. Supp. 2d at 858, 863-64 (finding AKS violation where supplier would receive percentage 20-25% of orthopedic product manufacturer's yearly dollar volume of sales).

This violation of the AKS was knowing and willful. Caselaw demonstrates that the statute requires merely that "the act was committed voluntarily and purposely." *Vernon*, 723 F.3d at 1256 (quoting *United States v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998)). Importantly, "the person need not be aware of the specific law or rule that his or her conduct may be violating." *Id.* The uncontroverted evidence shows that the parties executed the BlueWave Agreement voluntarily and purposely. The commission-based payment structure was negotiated by Mallory and Dent even prior to the formation of BlueWave as an entity. The terms of the BlueWave Agreement show a purposeful appointment of BlueWave as an independent salesforce on behalf of HDL and a purposeful agreement to compensate BlueWave accordingly. Indeed, as to BlueWave, section 19 of the BlueWave Agreement states that BlueWave "has executed this Agreement freely and voluntarily." Kanowitz Decl. Ex. 130, at § 19, ECF No. 1154 at 9. The BlueWave Agreement

was signed by the president of BlueWave and by the president and CEO of HDL. *Id.* at 8, ECF

No. 1154 at 8. These undisputed facts show that the BlueWave Agreement was executed

knowingly and willfully, as the AKS requires.[22] *See Zimmer*, 54 F. Supp. 2d at 863.

The BlueWave Agreement's terms do not strictly comply with any of the safe harbor

provisions of the AKS. The BlueWave Agreement clearly "deemed [BlueWave] to be an

independent contractor" of HDL and not an employee. Kanowitz Decl. Ex. 130 §§ 10, ECF No.

1154 at 7. This independent contractor designation precludes BlueWave from asserting the

protection of the safe harbor provision in section 1320a-7b(b)(3)(B), which applies only to

amounts "paid by an employer to an employee." 42 U.S.C. § 1320a-7b(b)(3)(B). Under the

BlueWave Agreement, BlueWave cannot be considered an employee for any purpose and,

therefore, cannot show strict compliance with the safe harbor provision. *Westmoreland*, 812 F.

Supp. 2d at 47 ("To receive protection, a business arrangement must fit squarely within a safe

harbor; substantial compliance is not enough, although compliance is voluntary and failure to

comply is not a per se violation of the statute."). As the BlueWave Agreement required percentage-

based commission payments to be made to a non-employee independent contractor, the District

Court should find that the unambiguous terms of the BlueWave Agreement violate the AKS.

The District Court should also find that the BlueWave Agreement violated the FCA. A

violation of the AKS can give rise to a legally false claim violative of the FCA. *See, e.g.*,

---

[22]   The BlueWave Defendants argue that summary judgment is not appropriate under the AKS and FCA because the
Liquidating Trustee has not proved "that HDL acted with scienter" in performing under the BlueWave Agreement.
BlueWave Defs.' Mem. Law in Opp. to the Liquidating Trustee's Mot. for Partial Summ. J. 13, ECF No. 1378 at
15. However, this argument fails because the Liquidating Trustee "is not required to prove that a prosecution
would result from performance under the Agreement, or that the government would be able to obtain a
conviction." *Zimmer*, 54 F. Supp. 2d at 863. Rather, "[i]t is enough to say that . . . any future performance under
the Agreement would appear likely to amount to knowing and willful action." *Id.* In any event, in this instance,
the government did successfully obtain a conviction as to Dent. Courts have routinely held "that the scienter
element need not be present to find that a contract violates the AKS." *MedPricer.com, Inc. v. Becton, Dickinson
& Co.*, 240 F. Supp. 3d 263, 274-75 (D. Conn. 2017) (citing cases).

*Westmoreland*, 812 F. Supp. 2d at 54.  If the District Court agrees that the unambiguous terms of the BlueWave Agreement violated the AKS, the sole outstanding issue with respect the FCA is whether a false claim actually arose under that agreement.  The undisputed evidence shows that at least 35,074 such claims were submitted to Medicare and TRICARE under the BlueWave Agreement, for which Medicare and TRICARE paid $16,601,591.  Kanowitz Decl. Ex. 61, at 1, ECF No. 1140 at 57; *BlueWave Healthcare Consultants, Inc.*, 2018 WL 11282049, at *1, 2018 U.S. Dist. LEXIS 119203, at *5.  The failure to comply with the AKS rendered these claims legally false under the FCA.  *See Greenfield*, 880 F.3d at 94.  As a result, the District Court should find that the BlueWave Agreement also violated the FCA.[23]

Under Georgia law, a contract to do an illegal act is void.  Ga. Code. Ann. § 13-8-1; *see Smith v. Saulsbury*, 649 S.E.2d 344, 347 (Ga. Ct. App. 2007).  For the reasons stated herein, the BlueWave Agreement was a contract to do an illegal act – i.e., to violate the AKS and the FCA.  The compensation provisions that run afoul of federal law are essential to the BlueWave Agreement as a whole, as they go to the consideration to be provided thereunder.  This is not an instance "where the illegality is only collateral or remotely connected to the contract."  *Id*.  The District Court should grant the Summary Judgment as to count 74 of the D&O Complaint and

---

[23]  This finding is supported by the South Carolina District Court judgment against Dent, which was recently affirmed by the Fourth Circuit.  *See Mallory*, 988 F.3d at 735-56.

> At trial, the Government contended that the volume-based commissions paid by HDL . . . to BlueWave and its sales contractors violated the [AKS] because these commissions constituted "remuneration" intended to induce sales representatives to sell as many tests as possible. . . . The Government argued that since Defendants knowingly entered into agreements to pay independent contractors based on volume, they violated the [AKS].  Because the statute provides that a claim that violates its terms also "constitutes a false or fraudulent claim" under the [FCA], the Government contended that this [AKS] violation also gave rise to liability under the [FCA].  The jury agreed.

*Id.*  The Fourth Circuit "affirm[ed] the judgment of the district court in all respects."  *Id.* at 735.

declare that the BlueWave Agreement is void and unenforceable pursuant to Georgia law. *See Zimmer*, 54 F. Supp. 2d at 863 ("The plaintiff is entitled to summary judgment: the Agreement is illegal and unenforceable because it involves an arrangement prohibited by [the AKS]."); *MedPricer.com*, 240 F. Supp. 3d at 275 ("The arrangement . . . violates the AKS, and thus is unenforceable.").

Next, as to count 75 of the D&O Complaint, the Liquidating Trustee seeks to disallow the BlueWave POC based on the illegality and unenforceability of the BlueWave Agreement.[24] Section 502(b)(1) of the Bankruptcy Code requires bankruptcy courts, upon objection, to disallow any claim that "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). Thus, "a claim against the bankruptcy estate will not be allowed in a bankruptcy proceeding if the same claim would not be enforceable against the debtor outside of bankruptcy." *In re Reed*, 624 B.R. 155, 169 (Bankr. E.D. Va. 2020) (quoting *Nicholson v. eCAST Settlement Corp.* (*In re Nicholson*), 602 B.R. 295, 303 (Bankr. M.D. Pa. 2019)) (alterations in original omitted). Because the BlueWave Agreement is void and unenforceable against HDL, the BlueWave POC may be disallowed in its entirety pursuant to section 502(b)(1). *See In re Lewis*, 517 B.R. 615, 622 (Bankr. E.D. Va. 2014) (disallowing claim based on unenforceable contract).[25] The District Court should sustain the Liquidating Trustee's

---

[24]    Bankruptcy Rule 3007(b) permits an objection to a proof of claim to be included in an adversary proceeding when combined with a demand for relief of a kind specified in Bankruptcy Rule 7001. Fed. R. Bankr. P. 3007(b). Under Bankruptcy Rule 7001(9), "a proceeding to obtain a declaratory judgment" must be brought as an adversary proceeding. Fed. R. Bankr. P. 7001(9). As such, the Liquidating Trustee was required to bring count 74 as an adversary proceeding and was permitted to include count 75 as part of his D&O Complaint in this Adversary Proceeding.

[25]    In the alternative, the Liquidating Trustee could avoid the obligations, if any, arising out of the BlueWave Agreement as fraudulent conveyances under section 544(b) of the Bankruptcy Code as alleged in count 48 of his D&O Complaint. *See infra* note 31 and accompanying text.

objection to the BlueWave POC and grant the Summary Judgment Motion as to count 75 of the D&O Complaint, disallowing the claim in its entirety as a matter of law.[26]

Finally, in counts 2[27] and 38[28] of the D&O Complaint, the Liquidating Trustee seeks to recover the pre-Petition Date transfers HDL made to the BlueWave Defendants under the void and unenforceable BlueWave Agreement (the "BlueWave Transfers") and to Dent in his role as a shareholder of HDL (the "Shareholder Distributions" and, together with the BlueWave Transfers, the "Pre-Petition Transfers") within two years of the Petition Date as constructively fraudulent conveyances under section 548 of the Bankruptcy Code. In counts 4,[29] 40,[30] and 48[31] of the D&O Complaint, the Liquidating Trustee seeks to recover the Pre-Petition Transfers made within six years of the Petition Date and HDL's obligations under the BlueWave Agreement as constructively

---

[26]    Because the Bankruptcy Court recommends disallowing the BlueWave POC in full, the Bankruptcy Court does not reach the issue of equitable subordination under section 510(c) of the Bankruptcy Code. *See In re Va. Broadband*, 521 B.R. 539, 563 (Bankr. W.D. Va. 2014) (considering equitable subordination after declining to disallow a legally "valid claim").

[27]    In count 2, the Liquidating Trustee asserts causes of action under section 548(a)(1)(B) of the Bankruptcy Code to avoid and recover distributions that HDL made to its shareholders, including Dent, and under section 550 of the Bankruptcy Code to recover from subsequent transferees. Am. Compl. ¶¶ 436-45, ECF No. 375 at 106-07.

[28]    In count 38, the Liquidating Trustee asserts causes of action under section 548(a)(1)(B) of the Bankruptcy Code to avoid and recover pre-Petition Date transfers that HDL made to the BlueWave Defendants under the BlueWave Agreement and under section 550 of the Bankruptcy Code to recover from subsequent transferees. Am. Compl. ¶¶ 782-91, ECF No. 375 at 154-56.

[29]    In count 4, the Liquidating Trustee uses section 544(b) of the Bankruptcy Code to assert causes of action under the FDCPA, 28 U.S.C. § 3304, to avoid and recover distributions that HDL made to its shareholders, including Dent, and under section 550 of the Bankruptcy Code to recover from subsequent transferees. Am. Compl. ¶¶ 456-66, ECF No. 109-10.

[30]    In count 40, the Liquidating Trustee uses section 544(b) of the Bankruptcy Code to assert causes of action under the FDCPA, 28 U.S.C. § 3304, to avoid and recover pre-Petition Date transfers that HDL made to the BlueWave Defendants under the BlueWave Agreement and under section 550 of the Bankruptcy Code to recover from subsequent transferees. Am. Compl. ¶¶ 802-12, ECF No. 375 at 157-59.

[31]    In count 48, the Liquidating Trustee uses section 544(b) of the Bankruptcy Code to assert causes of action under the FDCPA, 28 U.S.C. § 3304, to avoid the obligations HDL incurred under the BlueWave Agreement. Am. Compl. ¶¶ 879-88, ECF No. 375 at 170-71.

fraudulent conveyances under section 544 of the Bankruptcy Code and the Federal Debt Collection

Procedures Act (the "FDCPA"), 28 U.S.C. §§ 3001-3308.

Section 548(a)(1)(B) of the Bankruptcy Code empowers the Liquidating Trustee to avoid

any transfer or obligation of HDL that was made or incurred within two years of the Petition Date

if: (1) it resulted in a transfer of HDL's property or imposed an obligation on HDL; (2) HDL

received less than reasonably equivalent value; and (3) HDL was insolvent or made insolvent by

the transfer.  *See* 11 U.S.C. § 548(a)(1)(B).  "Reasonably equivalent value" means the value on

the date of the transfer in light of all of the circumstances.  *See Harman v. First Am. Bank of Md.*

(*In re Jeffrey Bigelow Design Grp., Inc.*), 956 F.2d 479, 484 (4th Cir. 1992) ("The focus is on the

consideration received by the debtor, not on the value given by the transferee." (citation omitted));

*Ivey v. Swofford* (*In re Whitley*), 463 B.R. 775, 785 (Bankr. M.D.N.C. 2012).  To determine if the

value is reasonably equivalent, the court looks at "the net effect of the transfers on the debtor's

estate, the funds available to unsecured creditors."  *In re Jeffrey Bigelow Design Grp., Inc*., 956

F.2d at 484.  The Liquidating Trustee maintains that HDL received no value from the BlueWave

Agreement because it was an illegal agreement that significantly contributed to the liability HDL

incurred.

Under section 544(b) of the Bankruptcy Code, a "trustee may avoid any transfer of an

interest of the debtor in property or any obligation incurred by the debtor that is voidable under

applicable law by a creditor holding an unsecured claim that is allowable under section 502 of

this title."  11 U.S.C. § 544(b); *see also Shaia v. Meyer* (*In re Meyer*), 244 F.3d 352, 355 (4th Cir.

2001)).  Section 544(b) allows a trustee to stand in the shoes of the debtor's creditors and bring

causes of action that the creditors could have brought if the debtor had not filed for bankruptcy.

This provision authorizes the Liquidating Trustee to use the FDCPA to avoid the Pre-Petition

Transfers as either constructively fraudulent or intentionally fraudulent as to the debt owed by

HDL to the United States.[32] *Alberts v. HCA Inc.* (*In re Greater Se. Cmty. Hosp. Corp.*), 365 B.R.

293, 304 (Bankr. D.D.C. 2006) ("Congress crafted § 544(b) to give the representative of the estate

the ability to avoid any transaction that any unsecured creditor of the estate could have avoided

as of the petition date.").

A transfer is constructively fraudulent as to the United States if the debt arose before the

transfer and "(A) the debtor makes the transfer or incurs the obligation without receiving a

reasonably equivalent value in exchange for the transfer or obligation; and (B) the debtor is

insolvent at that time or the debtor becomes insolvent as a result of the transfer."  28 U.S.C.

§ 3304(a)(1).  Section 544(b) of the Bankruptcy Code allows the Liquidating Trustee to "stand in

the shoes" of the governmental creditor and avoid any such transfers under the FDCPA made

within six years prior to the Petition Date.[33]  *See In re CVAH*, 570 B.R. at 832-36 (holding that

Chapter 11 trustee can invoke the FDCPA's six-year lookback period); *In re Tronox Inc.*, 503 B.R.

at 273-74 (same); *In re Alpha Protective Servs., Inc.*, 531 B.R. at 905-06 (same).

---

[32]    Although not argued by the parties, the Bankruptcy Court observes that "the majority of courts presented with the . . . issue have held that the FDCPA is 'applicable law' for the purposes of § 544(b)." *Vieira v. Gaither* (*In re Gaither*), 595 B.R. 201, 212 (Bankr. D.S.C. 2018) (first citing *Hillen v. City of Many Trees, LLC* (*In re CVAH*), *Inc.*, 570 B.R. 816, 823 (Bankr. D. Idaho 2017); then citing *Gordon v. Harrison* (*In re Alpha Protective Servs., Inc.*), 531 B.R. 889, 906 (Bankr. M.D. Ga. 2015); then citing *Tronox Inc. v. Kerr McGee Corp.* (*In re Tronox Inc.*), 503 B.R. 239 (Bankr. S.D.N.Y. 2013); then citing *Ebner v. Kaiser* (*In re Kaiser*), 525 B.R. 697, 711 (Bankr. N.D. Ill. 2014); and then citing *Mukamal v. Citibank N.A.* (*In re Kipnis*), 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016)).  As the FDCPA is "applicable law" under section 544(b), the Bankruptcy Court need not address the other state law fraudulent conveyance statutes that the Liquidating Trustee alleges are also "applicable" in counts 6, 8, 10, 12, 42, 44, 46, and 50 of the D&O Complaint.

[33]    The Liquidating Trustee is utilizing the provisions of the FDCPA because the FDCPA affords the Liquidating Trustee a longer six-year reach-back period for the avoidance and recovery of transfers and for the avoidance of obligations than does the two-year reach-back period provided under section 548(a) of the Bankruptcy Code.

In the case at bar, the DOJ holds an allowed unsecured claim in the amount of $40,644,852.50.[34]   Notwithstanding that additional government creditors may exist, the Liquidating Trustee may stand in the shoes of the DOJ for the purpose of his fraudulent conveyance claims against the BlueWave Defendants.   Therefore, the relevant inquiry with respect to those claims is whether the BlueWave Transfers and the Shareholder Distributions that were made in the six-year period prior to the Petition Date were fraudulent as to the DOJ within the parameters of the FDCPA.   For the reasons that follow, the District Court should find that they were.

There is no genuine dispute of material fact that HDL did not receive reasonably equivalent value for the BlueWave Transfers and for the Shareholder Distributions.   The BlueWave Defendants' theory of value rests on the purported legality of the BlueWave Agreement and the performance of BlueWave thereunder.   *See* BlueWave Defs.' Mem. Law in Opp. to the Liquidating Trustee's Mot. Partial Summ. J. 52-54, ECF No. 1378 at 54-56.   The illegality of the BlueWave Agreement belies any such theory and resolves this issue.   HDL could not have received any reasonably equivalent value from the BlueWave Transfers or the Shareholder Distributions[35] because the commissions paid to BlueWave under the BlueWave Agreement contravened applicable law and merely served to expose HDL to increasing liability.[36]   *See Armstrong v.*

---

[34]   This claim was allowed pursuant to a settlement agreement previously approved by the Bankruptcy Court following notice to all creditors and parties in interest, including the BlueWave Defendants.   *See* Order on Mot. for Order Pursuant to 11 U.S.C. §§ 105 & 502 Authorizing Liquidating Trustee to Enter into Proposed Agreement with the U.S. Dep't of Justice, Civil Division, to Allow (I) Prepetition Proof of Claim, & (II) Authorize Limited Waiver of Attorney-Client Privilege, Work-Product Protection, & Any Other Applicable Evidentiary Privileges, *In re Health Diagnostic Lab'y, Inc.,* Case No. 15-32919-KRH, ECF No. 2196.

[35]   *See supra* notes 14 & 15.

[36]   The BlueWave Agreement gave rise to BlueWave's compensation—in the form of base fees and percentage-based commissions—and Dent's ownership interest in HDL, which gave rise to the Shareholder Distributions. Kanowitz Decl. Ex. 130, at § 4, ECF No. 1154 at 3-4.   The illegality of the BlueWave Agreement means that the transfers to the BlueWave Defendants of this compensation and the transfer of shares to Dent did not have any corresponding value to HDL. The transfers are rendered unenforceable against HDL.   *See Wolkowitz v. Soll,*

*Collins*, No. 01 Civ. 2437(PAC), 2010 WL 1141158, at *30, 2010 U.S. Dist. LEXIS 28075, at *90

(S.D.N.Y. Mar. 24, 2010) ("Illegal consideration does not constitute reasonably equivalent

value."); *see also Tabas v. Lehman* (*In re Capitol Invs., Inc.*), 473 B.R. 838, 846 (Bankr. S.D. Fla.

2012) ("[W]hen the transaction is one that is absolutely prohibited by law it will rarely, if ever,

constitute reasonably equivalent value."). The Bankruptcy Court recommends that the District

Court find that HDL did not receive any reasonably equivalent value in exchange for the BlueWave

Transfers or for the Shareholder Distributions.

Using the balance sheet test, insolvency may be established under the Bankruptcy Code by

showing "the sum of the [debtor's] debts is greater than the sum of the assets, at a fair valuation,

exclusive of property transferred with actual fraudulent intent, and property that may be exempted

from the bankruptcy estate." *Huennekens v. Gilcom Corp. of Va.* (*In re SunSport, Inc.*), 260 B.R.

88, 116 (Bankr. E.D. Va. 2000) (quotation omitted); *see also* 11 U.S.C. § 101(32)(A). The

definition for insolvency under the FDCPA mirrors the standard provided by the Bankruptcy Code.

Insolvency occurs under the FDCPA, where "the sum of the debtor's assets is greater than all of

the debtor's assets at a fair valuation." 28 U.S.C. § 3302.

The Bankruptcy Code defines the term "debt" as a "liability on a claim." 11 U.S.C.

§ 101(12). The term "claim" is defined as a "right to payment, whether or not such right is

reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured, or unsecured." *Id.* § 101(5). Accordingly, a solvency

analysis must include all debts and liabilities, including those that are contingent, or those that

are the result of fraud, even if those liabilities do not appear on the company's contemporaneous

---

*Rowe, Price, Raffel & Browne, Inc.* (*In re Fink*), 217 B.R. 614, 623 (Bankr. C.D. Cal. 1997) (finding transfer
made pursuant to illegal contract avoidable as fraudulent transfer).

financial statements. *See Devan v. CIT Grp./Com. Servs., Inc.* (*In re Merry-Go-Round Enters., Inc.*), 229 B.R. 337, 343 (Bankr. D. Md. 1999) (rejecting balance sheet analysis that did not include contingent liabilities); *Canney v. Fisher & Strattner, LLC* (*In re Turner & Cook, Inc.*), 507 B.R. 101, 109 (Bankr. D. Vt. 2014) ("[I]t is reversible error to exclude a potential liability from the insolvency calculation merely because the liability is contingent or because the debtor disputes the claim").

Insolvency, under the balance sheet test, is typically proven using expert testimony. *See Bakst v. United States* (*In re Kane & Kane*), 479 B.R. 617, 630 (Bankr. S.D. Fla. 2012). The parties in the case at bar each rely on expert analysis regarding HDL's financial position.[37] The Kearns Report concluded that "HDL was insolvent and inadequately capitalized at all times" from January of 2010 through December of 2014, the period covered by the BlueWave Agreement and during which HDL made the Pre-Petition Transfers at issue here. Kanowitz Decl. Ex. 31 at 5, ECF No. 1066 at 195. This conclusion was based on a finding that the commission-based nature of the BlueWave Agreement exposed as much as 96% of HDL's revenue to liability under applicable law. *Id.* at 20, 53-54, ECF No. 1066 at 210, 243-244. The BlueWave Agreement functioned such that, with each dollar of sales that BlueWave generated, HDL's contingent liability likewise increased, perhaps as much as three-fold, which merely created a "progressively deepening insolvency" and rendered the BlueWave Agreement a "fundamentally uneconomic venture." *Id.* at 51, 54, ECF No. 1066 at 241, 244.

---

[37] The Liquidating Trustee relies on the expert report (the "Kearns Report") of Christopher J. Kearns, a managing director of Berkeley Research Group, LLC ("BRG"). Kanowitz Decl. Ex. 31, ECF No. 1066 at 190-278. The Liquidating Trustee also engaged Ernest N. Dixon, a managing director of BRG. *See id.* Ex. 30, ECF No. 1066 at 128-189. The BlueWave Defendants have not submitted their own expert report and instead rely on an expert report (the "Brown Report") prepared by Marc J. Brown ("Brown"), a managing director of AlixPartners, LLP engaged by the Golias Defendants, who have since been dismissed from the Adversary Proceeding. *Id.* Ex. 29, ECF No. 1066 at 39-126.

While the Brown Report concluded that HDL was solvent during the performance of the BlueWave Agreement, *id.* Ex. 29 at ¶ 49, ECF No. 1066 at 58, the Brown Report is flawed because it is predicated upon an erroneous assumption.  Brown was instructed by counsel to value HDL's contingent liabilities at zero.[38]  *Id.* at ¶¶ 133-34, ECF No. 1066 at 80-81.  The Brown Report is, therefore, inconsistent with the recommended finding that the terms of the BlueWave Agreement are illegal as a matter of law.  It is undisputed that virtually all of HDL's revenue was derived through the BlueWave Agreement.  Each dollar that HDL generated under the BlueWave Agreement created liability that was greater than the profit that dollar produced.  As a consequence, HDL had massive, unrecorded contingent liabilities.

It is well established that a solvency analysis under the FDCPA or the Bankruptcy Code must include a valuation of contingent liabilities.  *See In re Tronox Inc.*, 503 B.R. at 313 ("[T]he object of a solvency analysis is to assign a 'fair valuation' to all debts, with the term 'debt' defined as a liability on a claim, and 'claim' defined in the 'broadest possible sense' to include contingent, unmatured and unliquidated claims."); *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir. 1988) (Valuation of contingencies "has long been recognized in cases dealing with the question whether a firm is insolvent within the meaning of the Bankruptcy Code."); *Advanced*

---

[38]   The Brown Report states:

> I have been instructed by Counsel to assume that the proper contingent liability to apply at both December 7, 2012 and January 11, 2013 is zero for any DOJ-related potential contingent liability. . . . I have also been instructed to assume that the proper contingent liability to apply . . . is zero for any private insurer potential contingent liability.

Kanowitz Decl. Ex. 29 at ¶¶ 133-34, ECF No. 1066 at 80-81.  Brown testified to this effect.  *See id.* Ex. 3 at 7:5-19, ECF No. 1052 at 2.  The BlueWave Defendants do not dispute the contents of the Brown Report or Brown's testimony.

*Telecomm. Network, Inc. v Allen* (*In re Advanced Telecomm. Network, Inc.*), 490 F.3d 1325, 1335

(11th Cir. 2007) (discussing proper method for valuing contingent liabilities).

Courts determine the "present value of [a contingent] liability [by looking at] the expected

cost of the liability times the estimated chance of it ever occurring." *In re Advanced Telecomm.*

*Network, Inc.*, 490 F.3d at 1335. Where contingent liabilities are concerned, a fair valuation of

"zero dollars" is only appropriate for "exceedingly remote or unlikely liabilities." *Id.* The years

of litigation spawned by HDL's business practices suggest that this is not such a case. However,

"[w]hen a liability was contingent at the time of the challenged transfers but is reduced to judgment

before the court's insolvency determination, . . . a court may permissibly use the judgment amount

in valuing the contingent liability at the time of the transfers." *In re Turner & Cook, Inc.*, 507 B.R.

at 109. In the case at bar, the DOJ's contingent claim has now been allowed under section 502 of

the Bankruptcy Code. The contingent nature of the claim has been resolved.[39]

Such contingent liabilities must be included in the solvency analysis. *Accord In re Merry-*

*Go-Round Enters., Inc.*, 229 B.R. at 343; *In re Turner & Cook, Inc.*, 507 B.R. at 109. As the

Brown Report fails to take any of HDL's contingent exposure into account, it fails to present

evidence sufficient to make an issue as to the conclusions set forth in the Kearns Report.[40] The

---

[39]   *See supra* note 34 and accompanying text. Additional contingent liabilities were held by Cigna Health and Life Insurance Company ("Cigna") and Aetna Inc. ("Aetna"), both of which filed pre-Petition Date lawsuits against HDL alleging, inter alia, fraud, unjust enrichment, tortious interference with contract, and seeking recovery of overpayments made to HDL. Pursuant to the *Order Approving Settlement Agreement Between the HDL Liquidating Trust, Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company* [*In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 1263] and the Court-approved settlement agreement attached thereto, Cigna assigned its claims to the HDL Liquidating Trust and has an allowed claim in the Bankruptcy Case in the amount of $59 million. Pursuant to the *Order Approving Settlement Agreement Between the Official Committee of Unsecured Creditors and Aetna, Inc.* [*In re Health Diagnostic Lab'y, Inc.*, Case No. 15-32919-KRH, ECF No. 1071] and the Court-approved settlement agreement attached thereto, Aetna assigned its claims to the HDL Liquidating Trust and has an allowed claim in the Bankruptcy Case in the amount of $77.4 million.

[40]   The BlueWave Defendants concede that the two insolvency experts "essentially agree that, . . . HDL's solvency really comes down to one question, . . . : did HDL violate the AKS and the FCA (thereby incurring treble damages

Brown Report, being premised on a false assumption, lacks credibility and cannot be considered on summary judgment. *See, e.g.*, *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." (citing *E. Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329, 337 (4th Cir. 1986))); *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("The credibility of competing experts is a question for the jury only if the party with the burden of proof has offered enough evidence to sustain a verdict in its favor."). Based on the failure of the BlueWave Defendants to present credible evidence refuting the conclusions set forth in the Kearns Report, the Bankruptcy Court recommends that the District Court find that all of the Pre-Petition Transfers occurred while HDL was insolvent as the Kerns Report concludes.

The BlueWave Defendants dispute neither the occurrence nor the amounts of the Pre-Petition Transfers. *See* Arrowsmith Decl. Ex. 1, ECF No. 1044 at 2-3. All of the Pre-Petition Transfers occurred within the six-year reach-back period immediately preceding the Petition Date. The undisputed amount of the Shareholder Distributions that HDL made to or for the benefit of Dent was $720,661.00. *See* BlueWave Defs.' Resp. to Liquidating Trustee's Statement of Allegedly Undisputed Material Facts Supporting His Mot. for Partial Summ. J. ¶ 275, ECF No. 1377 at 105. As these Shareholder Distributions were made for less than reasonably equivalent value and while HDL was insolvent, the District Court should conclude that they are avoidable under both section 548(a)(1)(B) of the Bankruptcy Code and the FDCPA as rendered applicable by section 544(b) of the Bankruptcy Code. Accordingly, the Bankruptcy Court

_____

for every dollar of government revenue), and if so, when and with respect to which claims?" BlueWave Defs.'
Mem. Law in Opp. to the Liquidating Trustee's Mot. Partial Summ. J. 49-50, ECF No. 1378 at 51-52.

recommends that the District Court grant partial summary judgment in favor of the Liquidating Trustee on counts 2 and 4 of the D&O Complaint against Dent in the amount of $720,661.00, plus applicable interest.

Likewise, the BlueWave Defendants do not dispute that HDL transferred $220,336,247.91. to BlueWave under the BlueWave Agreement. *Id.* at ¶ 277, ECF No. 1377 at 105. As these payments were also made for less than reasonably equivalent value and while HDL was insolvent, the District Court should conclude that they are avoidable under both section 548(a)(1)(B) of the Bankruptcy Code and under the FDCPA as rendered applicable by section 544(b) of the Bankruptcy Code. Accordingly, the Bankruptcy Court recommends that the District Court grant partial summary judgment in favor of the Liquidating Trustee on counts 38 and 40 of the D&O Complaint against BlueWave in the amount of $220,336,247.91, plus applicable interest.

While the record is well developed with regard to the avoidance claims against Dent and BlueWave, that is not the case for the other BlueWave Defendants. The uncontroverted evidence shows that subsequent transfers to the Dent Entities did occur. *See* BlueWave Defs.' Resp. to the Liquidating Trustee's Statement of Allegedly Undisputed Material Facts Supporting His Mot. Partial Summ. J. ¶ 278, ECF No. 1377 at 105-06. These subsequent transfers of the avoidable Pre-Petition Transfers should be avoided, as well.[41] "[T]he concepts of avoidance and recovery are separate and distinct.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Sec.*), 501 B.R. 26, 30 (S.D.N.Y. 2013) (quoting *Woods & Erickson, LLP v. Leonard* (*In re AVI,*

---

[41] Section 550(a) of the Bankruptcy Code permits the Liquidating Trustee to recover property transferred to "any immediate or mediate transferee" of an avoided transfer. 11 U.S.C. § 550(a)(2).

*Inc.*), 389 B.R. 721, 733 (B.A.P. 9th Cir. 2008)).[42]   The universe and the amounts of the

subsequent transfers have not been fully developed.  *See* Arrowsmith Decl. Ex. 3, ECF No. 1044

at 80-92.  The parties need to engage in further judgment-related discovery to develop the record

as to the separate recovery claims of the Liquidating Trustee against the Dent Entities as

subsequent transferees in accordance with section 550 of the Bankruptcy Code.  If the District

Court grants the Summary Judgment Motion as recommended, the Adversary Proceeding should

then be referred back to the Bankruptcy Court for resolution of the recovery claims against the

subsequent transferees.  *See Angell v. Ber Care, Inc.* (*In re Caremerica*), 409 B.R. 737, 758

(Bankr. E.D.N.C. 2009) (bifurcating adversary proceeding involving both avoidance claims

under section 548 of the Bankruptcy Code and claims to recover subsequent transfers under

section 550 of the Bankruptcy Code).

## **CONCLUSION**

For the foregoing reasons, the Bankruptcy Court recommends that the District Court grant

the Summary Judgment Motion as set forth herein, including (i) entering a declaratory judgment

that the BlueWave Agreement is unenforceable as a matter of law; (ii) disallowing the BlueWave

POC in full; (iii) entering judgment against Dent in the amount of $720,661.00, plus applicable

interest, on account of the Liquidating Trustee's fraudulent conveyance claims in counts 2 and 4

of the D&O Complaint; and (iv) entering judgment against BlueWave in the amount of

$220,336,247.91, plus applicable interest, on account of the Liquidating Trustee's fraudulent

conveyance claims in counts 38 and 40 of the D&O Complaint.   The Bankruptcy Court

---

[42]   Actions to recover subsequent transfers under section 550 of the Bankruptcy Code, as the Liquidating Trustee asserts against the Dent Entities in the case at bar, may be brought within "one year after the avoidance of the transfer on account of which recovery . . . is sought."  11 U.S.C. § 550(f)(1).

recommends that the District Court refer the Adversary Proceeding back to the Bankruptcy Court

for final disposition in accordance with the District Court's Order Denying Motion to Withdraw.[43]

Pursuant to Bankruptcy Rule 9033(a), the Clerk shall serve a copy of the foregoing on the

Liquidating Trustee and the BlueWave Defendants.

Dated:  May 24, 2021                          /s/ Kevin R. Huennekens
                                             UNITED STATES BANKRUPTCY JUDGE

                                             Entered on Docket:  May 24 2021

---

[43]   In light of these recommendations, the Bankruptcy Court finds it appropriate to defer a ruling on a recommendation for the Motion to Withdraw the Reference, the Motion to Strike, and the Motion to Sever and Stay.  As a practical matter, if the District Court grants summary judgment as recommended herein, the issues remaining in this Adversary Proceeding may be sufficiently narrow as to obviate the need for such additional relief.